Valentine S. Hoy VIII, State Bar No. 121766
John T. Brooks, State Bar No. 167793
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
San Diego, California 92101-3372
Telephone No.: 619.236.1414
Fax No.: 619.232.8311

Attorneys for D.R. Horton, Inc., Western Pacific Housing, Inc., and DHI Mortgage Company, Ltd.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WILSON, REBECCA LORENZO, WAHEEDA KHAN, JORGE LOPEZ, and SUZIE KHUU, on behalf of themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>D.R. HORTON, INC., WESTERN PACIFIC HOUSING, INC. d/b/a/ D.R. HORTON, AMERICA'S BUILDINGER, DHI MORTGAGE COMPANY, LTD., L.P. and DOES 1-10,<br><br>Defendants. | Case No. 08 CV 592 BEN RBB<br><br>The Hon. Roger T. Benitez<br>Dept. 3<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION NO. 1: ALL DEFENDANTS' MOTION TO DISMISS ANTITRUST CLAIMS**<br><br>Date: June 9, 2008<br>Time: 10:30 a.m.<br>Dept.: 3<br><br>Complaint Filed: March 28, 2008 |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. RELATIONSHIP OF THIS BRIEF TO OTHER BRIEFS ..... 2

III. FEDERAL LAW EXPRESSLY PERMITS AND CAREFULLY REGULATES AFFILIATED LENDER ARRANGEMENTS ..... 3

IV. PLEADING STANDARDS: BELL ATLANTIC AND RULE 9(b) ..... 5

V. PLAINTIFFS FAIL TO ALLEGE A RELEVANT MARKET OR MARKET POWER ..... 6

- A. Elements of a Tying Claim ..... 6
- B. Plaintiffs Fail to Allege the Relevant Geographic Market ..... 8
- C. Plaintiffs Fail to Allege Market Power in any Market ..... 8

VI. PLAINTIFFS' ALLEGATIONS CONCERNING NON-REFUNDABLE DEPOSITS CANNOT SALVAGE THEIR TYING CLAIMS ..... 10

- A. The Court May Judicially-Notice Plaintiffs Purchase Contracts ..... 11
- B. Plaintiff Kahn Fails to State any Conduct Constituting Tying ..... 11
  - 1. The Closing Cost Discount ..... 11
  - 2. The Statement that She Was "Required" to Use DHI Mortgage ..... 12
- C. Plaintiff Lopez Fails to State any Conduct Constituting Tying ..... 13
- D. Plaintiff Lorenzo Fails to State any Conduct Constituting Tying ..... 14
  - 1. The Statement that She Was "Required" to Use DHI Mortgage ..... 14
  - 2. The Offer of An Alleged Illusory Discount ..... 14
- E. Plaintiff Wilson Fails to State Any Conduct Constituting Tying ..... 15
- F. Plaintiff Khuu Fails to State Any Conduct Constituting Tying ..... 15
  - 1. The Statement that She Was Required to Use DHI Mortgage ..... 15
  - 2. The Alleged Closing Cost Misrepresentation ..... 16

VII. CONCLUSION ..... 16

## TABLE OF AUTHORITIES


Page(s)

**CASES**

*Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 167 L.Ed.2 .......... passim

*Breaux Bros. Farms, Inc. v. Teche Sugar Co. Inc.*, 21 F.3d 83, 87 (5th Cir. 1994) .......... 9

*Brown Shoe Co. v. U.S.*, 370 U.S. 294 (1962) .......... 7

*Cel-Tech Communications, Inc. v. Los Angeles Cellular*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 .......... 11

*Conley v. Gibson*, 355 U.S. 41 (1957) .......... 5

*County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148 (9th Cir. 2001) .......... 7

*Credit Suisse Securities (USA) LLC v. Billing*, 127 S.Ct. 2383, 168 L.Ed.2 .......... 11

*Exxon Corp. v. Superior Court*, 51 Cal.App.4th 1672 (1997) .......... 7

*Freeman v. San Diego Ass'n of Realtors*, 77 Cal.App.4th 171 (1999) .......... 11

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006) .......... 7

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984) .......... 7, 9

*Korea Kumho Petrochemical v. Flexsys America LP*, 2008 WL 686834 .......... 10

*Mozart Co. v. Mercedes-Benz of North America, Inc.*, 833 F.2d 1342 (9th Cir. 1987) .......... 9, 10

*Newcal Indus. v. IKON*, 513 F.3d 1038 (9th Cir. 2008) .......... 7, 13

*Queen City Pizza v. Domino's Pizza*, 124 F.3d 430 (3d Cir. 1997) .......... 13, 15

*Tanaka v. University of Southern California*,
252 F.3d 1059 (9th Cir. 2001) .......... 7, 8

*Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) .......... 11

*Times-Picayune Publishing Co. v. United States*,
345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953) .......... 6

*Tower Air, Inc. v. Federal Exp. Corp.*,
956 F. Supp. 270 (E.D.N.Y. 1996) .......... 7

*TV Communications Network, Inc. v. Turner Network Television, Inc.*,
964 F.2d 1022 (10th Cir. 1992) .......... 7

*Vess v. Ciba-Geigy Corp.*
USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003) .......... 6

*Yeatman v. D.R. Horton, Inc.*,
2008 WL 1847087 .......... 3, 4

**STATUTES**

24 Code of Federal Regulations section 3500.7 .......... 4

24 Code of Federal Regulations section 3500.8 .......... 4

12 United States Code section 2601(b)(2) .......... 3

12 United States Code section 2607(c)(4) .......... 3

12 United States Code section 2607(d)(2) .......... 3

12 United States Code section 2607(d)(5) .......... 3

12 United States Code section 2616 .......... 11

California Business & Professions Code § 17200 .......... 2

California Business & Professions Code § 17500 .......... 2

Federal Rule of Civil Procedure 9(b) .......... 5, 6

# I.

# INTRODUCTION

This purported class action alleges that Western Pacific Housing, Inc., a subsidiary of D.R. Horton, Inc., improperly induced or required home buyers to use an affiliated mortgage company, DHI Mortgage Company, Ltd. Plaintiffs contend that such conduct constitutes per se illegal tying under the Sherman Act and Cartwright Act. The complaint fails to allege an antitrust tying claim for several reasons.

First, federal law not only permits the use of affiliated lenders, but expressly allows home builders to offer incentive discounts to home buyers to use builder-affiliated mortgage companies. The use of an affiliated lender can reduce the cost, uncertainty and delays associated with third party financing. Thus, the only fact that supposedly unites all the putative class members – that they all obtained their loans through DHI Mortgage – reflects conduct that is expressly contemplated and permitted by Congress.

Second, plaintiffs simply cannot allege the exacting elements of a tying claim. The sine qua non of a tying violation is the existence and abuse of *market power*. The housing industry, however, is composed of hundreds of local markets characterized by intense competition. Plaintiffs do not allege – and cannot plausibly allege – that Western Pacific has market power in the Stockton and San Diego home markets (where plaintiffs reside), let alone on a nationwide basis.

Third, plaintiffs' allegations of tying by deception and coercion rely on naked conclusions that are not only legally implausible but are contradicted by judicially-noticeable facts. Federal law closely regulates the early disclosure of loan costs to consumers precisely to ensure that they have a fair opportunity to shop around. The allegation that buyers were deceived about loan costs implies either that the federal regulatory scheme is inadequate or that defendants violated regulatory requirements (which is not alleged). Further, the allegation of coercion is also refuted by the terms of the very purchase contracts at issue. Those contracts, which the Court may judicially-notice, guaranteed plaintiffs the right to use the lender of their choice.

It also should not pass without mention that plaintiffs are represented by Patrick Missud, the proprietor of drhortonsucks.info and other websites devoted to vitriolic personal attacks on D.R. Horton and its officers. Missud has even taken to sending ranting diatribes to D.R. Horton's lawyers around the country on a daily basis.[1] The judicially-noticeable facts establish that the complaint, like Missud's daily invective and vitriolic websites, is long on hyperbole but short on actual facts.

In sum, plaintiffs are trying to skate past the pleading stage based on allegations that are conclusory at best and demonstrably false at worst. As the Supreme Court recently recognized, the burdens of discovery in modern antitrust litigation are simply too great for courts simply to say "let's wait for summary judgment." Conclusory allegations, allegations that are vague as to critical facts, and allegations that contradict the very contracts at issue – in sum, the very kinds of allegations on which plaintiffs rely here – simply do not suffice. The Court should accordingly dismiss plaintiffs' antitrust claims.[2]

## II.

## RELATIONSHIP OF THIS BRIEF TO OTHER BRIEFS

This Motion No. 1, brought on behalf of all defendants, addresses plaintiffs' Sherman Act and Cartwright Act claims.

All defendants have also filed a motion (Motion No. 2) to strike and/or dismiss plaintiffs' class allegations. Because Motion No. 1 provides useful context, the Court may find it most efficient to consider Motion No. 2 after Motion No. 1.

DHI Mortgage has filed a separate motion (Motion No. 3) to dismiss all claims against it based – among other things – on the fact that every act alleged in the complaints is alleged

---

[1] See, e.g., Missud correspondence and photograph attached to the Request for Judicial Notice filed concurrently herewith as Ex. H.

[2] The Court should also dismiss plaintiffs' first and second causes of action for alleged violations of California Business & Professions Code §§ 17200 and 17500. Defendants address these causes of action in the accompanying motion to strike, and incorporate that discussion by reference here. As set forth there, plaintiffs' purported claims under these statutes should be stricken due to plaintiffs' failure to plead the elements of a viable class action as required by Proposition 64.

against an entity *other than* DHI Mortgage. Again, because DHI Mortgage's motion builds on the arguments here, it can most efficiently be considered after reading Motion No. 1.

Finally, all defendants have filed a motion (Motion No. 4) to compel arbitration pursuant to the arbitration clause in each plaintiff's purchase agreement.

## III.

## FEDERAL LAW EXPRESSLY PERMITS AND CAREFULLY REGULATES AFFILIATED LENDER ARRANGEMENTS

It is curious that plaintiffs can allege a 25 page complaint about alleged tying of home sales and mortgages without once mentioning the federal law directly on point: the Real Estate Settlement Procedures Act ("RESPA").

One purpose of RESPA is "[t]o ensure a free, competitive market in residential real estate [and] to prevent tying arrangements, kickbacks, fee splitting, hidden fees" in connection with real estate transactions. *Yeatman v. D.R. Horton, Inc.*, 2008 WL 1847087, at * 1 (S.D. Ga. 2008); *see also* 12 U.S.C. § 2601(b)(2). RESPA has teeth: a plaintiff suing for RESPA violations may seek treble damages and attorneys' fees. 12 U.S.C. §§ 2607(d)(2), 2607(d)(5).

Yet, despite this federal statute designed to regulate the tying of home sales and mortgage services, the complaint is curiously silent about RESPA. The reason why is that the core conduct that plaintiffs are really complaining about – the affiliate relationship between Western Pacific (the home builder) and DHI Mortgage – is expressly *permitted* and carefully regulated under RESPA and its implementing regulations. 12 U.S.C. § 2607(c)(4).[3] The use of an affiliated lender can reduce the cost, uncertainty and delays associated with third party financing because such a lender can more efficiently and reliably interact with the builder. If plaintiffs could have alleged a violation of RESPA's affiliated lender regulations, presumably they would have. The fact that they haven't speaks volumes.

///

[3] In particular, RESPA expressly permits "affiliated business arrangements so long as (A) a disclosure is made of the existence of such an arrangement to the person being referred and . . . (B) such person is not required to use any particular provider of settlement services." 12 U.S.C. § 2607(c)(4).

Further, there is nothing wrong with Western Pacific offering a discount to its customers if they agree to use an affiliated mortgage company. *Yeatman v. D.R. Horton, Inc.*, 2008 WL 1847087 at *2 (S.D. Ga. 2008). Indeed, the Department of Housing and Urban Development ("HUD"), which is tasked with prescribing RESPA's implementing regulations, says this on its website:

> Question: A builder is offering to pay my closing costs or give me an upgrade package only if I agree to use his mortgage company. Is this legal under RESPA?
>
> Answer: Yes. While a builder cannot require you to use a mortgage company with whom he is affiliated, a builder is allowed to offer you a discount if you use a specific company. Under RESPA, the builder cannot charge you more for the home if you do not use his affiliated mortgage company.

http://www.hud.gov/offices/hsg/sfh/res/resconsu.cfm.

Moreover, RESPA and its implementing regulations impose a plethora of detailed disclosure obligations. Those include good faith estimates and HUD-prescribed settlement statements. *See* 24 C.F.R. §§ 3500.7, 3500.8. One of the purposes of these extensive early disclosure requirements is

> to take the surprise out of the settlement process. . . . By passing RESPA, the Congress intended that the consumer be given sufficient information at an early enough time to permit shopping in the marketplace for the best settlement services and costs.

Federal Regulation of Real Estate and Mortgage Lending § 2:1 (quoting Address by Dr. Charles Field, then director of the HUD office administering RESPA). But again, conspicuously, there are absolutely no allegations in the complaint of violations of these detailed disclosure obligations.

It appears, therefore, that plaintiffs are trying to take RESPA-compliant conduct and twist it into something they can call a Sherman Act violation. As discussed below, they have failed.

///

///

///

## IV.

## PLEADING STANDARDS: *BELL ATLANTIC* AND RULE 9(b)

Because the recent decision in *Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 167 L.Ed.2 929 (2007) materially changed and clarified the pleading standard for antitrust violations, it is important to review it here.

For 50 years, the liberal pleading standard in *Conley v. Gibson*, 355 U.S. 41 (1957) was often construed to permit all but the most egregiously deficient pleadings to survive the pleading stage. In *Bell Atlantic*, however, the Supreme Court concluded that the *Conley* rule – having been "questioned, criticized, and explained away long enough" – had finally "earned its retirement." *Bell Atlantic*, 127 S.Ct. at 1969.

The Supreme Court explained the pressing practical need, in light of the burden and expense of modern discovery, to require sufficient facts at the pleading stage:

> [T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases . . . . [I]t is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no "reasonably founded hope that the [discovery] process will reveal relevant evidence."

*Bell Atlantic*, 127 S.Ct. at 1967.

Consistent with the goal of closer pleading-stage scrutiny, *Bell Atlantic* announced new and more demanding standards plaintiffs must meet to adequately allege an antitrust claim:

First, a plaintiff cannot rely on a "bare assertion" or "conclusory allegation" of the elements of an antitrust violation. *Id.* at 1965-66. Rather, he or she must allege enough *specific facts* to plausibly suggest that an antitrust violation occurred:

> In applying these general standards to a § 1 [Sherman Act] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an [illegal antitrust] agreement was made.

*Id.* at 1965.

Second, facts that are "merely consistent with" a possible antitrust violation are not sufficient to meet the pleading standard. *Id.* at 1966. If the complaint alleges facts that could indicate an antitrust violation but that "could just as well be independent action," the complaint fails to state a claim. *Id.*

Third, the plausibility of an antitrust claim must not be judged in a vacuum, but must take into account existing law defining what conduct is or is not permitted. *Bell Atlantic*, 127 S.Ct. at 1965-66. Here, accordingly, plaintiffs' claims must be judged in the context of RESPA's extensive disclosure requirements that plaintiffs do not allege were violated – thus undermining the plausibility of plaintiffs' claims of tying or deception.

Further, in addition to the *Bell Atlantic* pleading requirements, the particularity requirements of Rule 9(b) also apply because plaintiffs' claims are predicated in large part on allegedly fraudulent or deceptive conduct. *See, e.g., Vess v. Ciba-Geigy Corp.* USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Rule 9(b) thus adds an additional layer of required detail, including requiring specific allegations of the "who, what, and when" of alleged misrepresentations.

Finally, plaintiffs cannot claim they need discovery to supply missing critical facts. As shown below, the missing allegations in the complaint all relate to facts that (if they existed at all) would be within plaintiffs' personal knowledge – such as *what exactly* was said to them by the unnamed sales agents and *when* those things were said Because plaintiffs do not need discovery to provide such facts, it is particularly appropriate to require them to plead those facts before proceeding to expensive nationwide discovery.

## V.

## PLAINTIFFS FAIL TO ALLEGE A RELEVANT MARKET OR MARKET POWER

### A. Elements of a Tying Claim

Plaintiffs purport to allege a "per se" illegal tying arrangement under both section 1 of the Sherman Act and the Cartwright Act. "[T]he essence of illegality in tying agreements is the wielding of monopolistic leverage; a seller exploits his dominant position in one market to expand his empire into the next." *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 611, 73 S.Ct. 872, 881, 97 L.Ed. 1277 (1953).

To establish an illegal per se tying arrangement, plaintiffs must prove: 1) a tie exists between two separate products or services that are sold in relevant markets; 2) the defendant

has sufficient economic power in the tying product market to affect the tied market; 3) the tying arrangement has an effect on a not-insubstantial volume of commerce in the tied product market; and 4) the defendant has an economic interest in the tied product. *County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1157-1158 (9th Cir. 2001).

Market power in the tying market is essential. "Buyers often find package sales attractive; a seller's decision to offer such packages can merely be an attempt to compete effectively – conduct that is entirely consistent with the Sherman Act." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984) (superseded by statute on other grounds as stated in *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006)). It is only when the seller uses *market power* to force the tied product on an unwilling consumer that a tie may be illegal. *Id.* Thus, "[t]he need to prove market power is a threshold consideration in an antitrust case and is the sine qua non of recovery." *Exxon Corp. v. Superior Court*, 51 Cal.App.4th 1672, 1681-1682 (1997).

Because market power is so essential to a tying claim, a complaint must define both (i) the relevant *product* market, and (ii) the relevant *geographic* market. *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 324 (1962); see also *Newcal Indus. v. IKON*, 513 F.3d 1038, 1045 n. 4 (9th Cir. 2008) ("[a]ntitrust law requires allegation of both a product market and a geographic market").[4]

Failure to adequately allege both the relevant product and geographic markets subjects a complaint to dismissal on the pleadings. *See, e.g., TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) (affirming district court's dismissal of claim for failure to plead a relevant market; proposed relevant market consisting of only one specific television channel defined too narrowly); *Tower Air, Inc. v.*

---

[4] The product market includes that "pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001). Here, plaintiffs appear to define the product market as "new homes." Defendants do not concede that "new homes" is an adequate product definition. New home sales compete directly against resale home sales, and thus the relevant market is the far larger market for all home sales. The Court need not reach this deficiency, however, to dismiss the complaint

*Federal Exp. Corp.*, 956 F. Supp. 270 (E.D.N.Y. 1996) ("[b]ecause a relevant market includes all products that are reasonably interchangeable, plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal").

**B. Plaintiffs Fail to Allege the Relevant Geographic Market**

As a preliminary but critically important matter, plaintiffs' market power allegations fail because they do not allege the relevant *geographic* market. The geographic market includes the area of "effective competition," or that area "where buyers can turn for alternative sources of supply." *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001).

While plaintiffs refer vaguely to the "relevant" market (Complaint, ¶ 63, line 23), they never try to define it geographically. There is one thing we know for sure, however: there is certainly not a *nationwide* market for homes, and even plaintiffs do not so allege. After all, homes in San Diego are not reasonably interchangeable with homes in Tulsa or Boston.

So, what is the relevant geographic market for the two plaintiffs (Khuu and Wilson) who purchased in San Diego? Is it mid-city San Diego? All of San Diego County? Likewise, what is the relevant geographic market for the remaining plaintiffs, who each purchased in Stockton? Plaintiffs never say.

This omission is no mere technical failure. Without defining the relevant geographic market, it is impossible to determine whether the defendants have *market power* in the relevant market – the lynchpin of any tying claim. Because market power depends on the geographic scope of the market, alleging the geographic scope is essential. For this threshold reason, plaintiffs have failed to adequately allege a tying claim.

**C. Plaintiffs Fail to Allege Market Power in any Market**

Further, even assuming for argument's sake that there were a nationwide market for home sales, plaintiffs still have not alleged any actual facts (as opposed to naked conclusions) showing market power.

///

The Ninth Circuit recognizes three possible sources of market power in a tying claim: (i) where the seller holds "a patent or similar monopoly," (ii) when "the seller's share of the market is high," and (iii) when "the seller offers a unique product that competitors are not able to offer." *Mozart Co. v. Mercedes-Benz of North America, Inc.*, 833 F.2d 1342, 1346 (9th Cir. 1987)

Here, plaintiffs do not allege a patent or similar monopoly. Instead, they appear to rely on market share and the alleged uniqueness of land:

> D.R. Horton has appreciable and substantial economic power in the market for the tying product. D.R. Horton, Inc., as the largest homebuilder in the United States, occupies a dominant position in the relevant market, and has substantial economic power with respect to new home buyers. The tying product is an inherently unique product in a market where there is a shortage of supply and for which there is no adequate substitute. (Complaint, ¶ 63, lines 21-25.)

This, however, is precisely the kind of conclusory allegation that *Bell Atlantic* rejects as insufficient.

First, absolutely no facts support the bare conclusion of a "dominant position" or "substantial economic power" in the alleged new home market. Indeed, the few market share facts that plaintiffs do allege affirmatively refute any inference of market power. Specifically, plaintiffs alleged that D.R. Horton sold 41,370 new homes (both single-family and attached) in 2007. (Complaint, ¶ 2.) U.S. Census Bureau data, however, establishes that the entire market for single family new homes alone in 2007 was over 770,000 (and much higher in earlier years). (*See* Request for Judicial Notice ("RJN"), Exs. A and B; *see also* RJN Ex. I [Builder Magazine data showing numerous geographic markets with no dominant market share held by any builder; D.R. Horton not even in top ten in 32 of 75 markets].)

The Census Bureau data means that D.R. Horton's market share is ***less than 6%.*** Indeed, because the Census Bureau number includes only single-family homes, the true market share is necessarily far less than that. Courts, however, have repeatedly held that market shares as high as 30% or more are insufficient to support an inference of market power.[5]

[5] *Jefferson* Parish, 466 U.S. at 12-14 (market share of 30% insufficient to establish market power); *Breaux Bros. Farms, Inc. v. Teche Sugar Co.*, Inc. 21 F.3d 83, 87 (5th Cir. 1994)

As one court recently held in applying *Bell Atlantic* to dismiss antitrust allegations:

> Although Plaintiff need not necessarily quantify [defendants'] market share with precision, Plaintiff must assert some facts in support of its assertions of market power that suggest those assertions are plausible.

*Korea Kumho Petrochemical v. Flexsys America LP*, 2008 WL 686834, * 9 (N.D. Cal., 2008). Here, where plaintiffs include no allegations supporting their conclusory assertion of market share – and where their allegations in fact demonstrate that defendants have only a small share of a highly fragmented market – plaintiffs have not come close to alleging the "sine qua non" of their tying claim.

Second, while plaintiffs allude to the unique nature of real estate, merely alleging that real estate is in some sense "unique" is not enough. Rather, plaintiffs must allege that D.R. Horton offers a "unique product *that competitors are not able to offer*." *Mozart Co.*, 833 F.2d at 1346 (9th Cir. 1987) (emphasis added). Plaintiffs do not so allege, nor could they plausibly do so. The Census Bureau numbers above – not to mention the numerous home development billboards dotting local freeways, and the commonly-known fact that home buyers also consider resale homes as an alternative to new homes – establish that numerous competitors can and do offer homes for sale.

Because plaintiffs have not alleged any of the three bases for market power nor even alleged what the relevant geographic market is, they have failed to state a tying claim.

## VI.

## PLAINTIFFS' ALLEGATIONS CONCERNING NON-REFUNDABLE DEPOSITS CANNOT SALVAGE THEIR TYING CLAIMS

Apparently recognizing the futility of alleging market power in a geographically fragmented market characterized by intense competition, plaintiffs rely heavily on allegations that defendants withheld information from them until after they were contractually "locked in" to using DHI Mortgage by virtue of non-refundable deposits. The conclusory "lock in" allegations, however, must be disregarded because they are refuted by the very terms of the

("Some circuit courts have used 30% as a rough benchmark for the minimum amount of market power necessary to give rise to a per se violation of antitrust law.")

contracts on which plaintiffs purport to rely (but which they conveniently do not attach to the complaint).

**A. <u>The Court May Judicially-Notice Plaintiffs Purchase Contracts</u>**

Where, as here, a complaint refers to the existence of a relevant contract but fails to attach it, the Court may take judicial notice of the contract. *See, e.g., No. 84 Employer – Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003) (when considering a 12(b)(6) motion to dismiss, "[u]nder the incorporation by reference doctrine, we also consider documents submitted by Defendants that were referenced in the complaint and whose authenticity has not been questioned"). Allegations that contradict the actual terms of the contract must be disregarded. *Freeman v. San Diego Ass'n of Realtors*, 77 Cal.App.4th 171, 178 n. 3 (1999).

In light of the actual contract terms explained below, plaintiffs' conclusory allegations of a "lock in" should be rejected.

**B. <u>Plaintiff Kahn Fails to State any Conduct Constituting Tying</u>**

Khan only makes two allegations supposedly supporting her tying claim, but neither is remotely sufficient to establish tying.

**1. <u>The Closing Cost Discount</u>**

Khan's first allegation is that Western Pacific offered her a $5,000 closing costs discount if she elected to use DHI Mortgage. (Complaint, ¶ 38.) To her credit, however, Khan does not allege that there was anything wrong with offering such a discount. To the contrary, as detailed above, RESPA expressly permits builders to offer discounts for using an affiliated lender. Any attempt to predicate antitrust liability on conduct expressly permitted by federal legislation is necessarily barred.[6]

---

[6] RESPA expressly preempts inconsistent state law claims, 12 U.S.C. § 2616, and also creates a safe harbor against UCL liability for all conduct RESPA expressly permits. *Cel-Tech Communications, Inc. v. Los Angeles Cellular*, 20 Cal.4th 163, 182, 83 Cal.Rptr.2d 548. Defendants have implied immunity from Sherman Act liability for conduct expressly permitted by a more specific federal regulatory statute such as RESPA. *Credit Suisse Securities (USA) LLC v. Billing*, 127 S.Ct. 2383, 2393, 168 L.Ed.2 145 (2007) (implied antitrust immunity).

**2. The Statement that She Was "Required" to Use DHI Mortgage**

Khan also alleges that – at some unspecified time – someone at Western Pacific told her that she would lose her deposit if she obtained her loan from Washington Mutual, her alleged lender of choice. (Complaint, ¶¶ 38, 40.)[7] She contends that because her deposit was allegedly "non-refundable," she was "locked-in" and had no choice but to use DHI. (Complaint, ¶¶ 64-65.)

This allegation is not remotely sufficient to state a tying claim. Why? Because it is contradicted by the very purchase contract that she claims locked her in. Khan's purchase agreement in fact guaranteed her the right to use the lender of her choice, and obligated her to use DHI Mortgage *only* if and when she knowingly committed to doing so after a 30-day "free shop" period. Specifically, Khan's purchase contract contains the following provisions:

1. The "Free Choice" Clause: The contract guarantees Khan had the express right to use any lender of her choice. (RJN, Ex. E at § 7.2(a), pg. KHAN000005 ["Nothing set forth herein shall compel Buyer to accept any financing approved by Seller's Approved Lender that is not acceptable to Buyer"].) Thus, while Khan was required to submit an application to DHI – a reasonable requirement ensuring that at least one loan would be available to Khan so she could timely close her purchase – nothing required her to accept a DHI Mortgage loan.

2. The 30-day "Free Shop" Period: Further, for a full 30 days after she signed the purchase agreement, Khan's deposit remained refundable. During that time, she was free to shop for a loan of her choice. If she could not find satisfactory financing in that time period – that is, if neither DHI Mortgage nor another lender offered satisfactory terms – she could simply walk away and receive a full refund of her deposit. (RJN, Ex. E at §§ 7.2, 7.3, pg. KHAN000005.)

3. The Lender Commitment Period: After 30 days, if Khan didn't exercise her right to walk away, she was required to "stop shopping" and commit to a particular lender of her choice. If Khan reneged on that commitment and tried to change lenders after 30 days,

[7] Khan attributes these statements to someone at "Horton," but defines "Horton" specifically to mean only Western Pacific. (Complaint, p. 1 line 6.)

however, Western Pacific had a contractual right to cancel the purchase agreement and retain the deposit. (RJN, Ex. E at § 7.5, pg. KHAN000005.)

Given these contract terms, the legal effect of the conclusory allegation that Khan was told she couldn't use Washington Mutual must be evaluated based on *when* the alleged statement was made. Although the analysis differs depending on the time, the result is the same: Khan has not stated a tying claim. In particular:

If Made During the Free Shop Period: If the alleged statement was made during the "free shop" period, Khan's conclusory allegation that she was contractually locked-in and thus forced to use DHI Mortgage contradicts the contract and must be disregarded. Under the contract, Khan had two options if some sales agent – contrary to the express terms of the contract – told her she had to use DHI Mortgage. She was (i) free to walk away entirely and have her deposit refunded in full, or (ii) equally free to proceed with Washington Mutual (if she had timely obtained unconditional loan approval) and insist on her contractual right to use the lender of her choice.

If Made During the Lender Commitment Period: Alternatively, if Khan tried to change to Washington Mutual from DHI Mortgage *after* the lender commitment period began, Western Pacific would have been entirely within its contractual rights to tell her that she could not make such a change without forfeiting her deposit. Enforcing such a contractual right cannot support a tying claim. *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 440 (3d Cir. 1997) (enforcement of contractual provision knowingly entered into cannot support a tying claim).[8]

**C. Plaintiff Lopez Fails to State any Conduct Constituting Tying**

Plaintiff Lopez's allegations are essentially identical to Khan's. Like Khan, he does not allege that he was misled or deceived about the cost of a DHI Mortgage loan, and the sole

[8] In unusual circumstances, improperly leveraging a contractual relationship might support an antitrust claim. *Newcal*, 513 F.3d 1038. However, plaintiffs allege no specific facts sufficient under *Bell Atlantic* to establish such unusual circumstances especially where, as here, the contract explicitly protects customer's freedom of choice and provides customers with the ability to "walk away" without penalty.

basis for his tying claim is that someone at Western Pacific – again at some unspecified point in time – told him he could not use a lender other than DHI Mortgage. (Complaint, ¶ 40.)

Like Khan's, Lopez's contract also contains the same pertinent "free shop" and "lender commitment" provisions. (RJN, Ex. F at § § 7.2, 7.3, pg. LOPEZ000005.) Lopez's tying claim accordingly fails for the same reasons as Khan's tying claim.

**D. <u>Plaintiff Lorenzo Fails to State any Conduct Constituting Tying</u>**

**1. <u>The Statement that She Was "Required" to Use DHI Mortgage</u>**

Like Kahn and Lopez, plaintiff Lorenzo alleges that some agent of Western Pacific – again at some unspecified time – told her she would lose her deposit if she used a lender other than DHI Mortgage. (Complaint, ¶ 36.) Like Kahn's and Lopez's, however, Lorenzo's purchase agreement also provided her with the "free shop" period and imposed the lender commitment only after 30 days. (RJN Ex. D at §§ 7.2, 7.3, pg. LOPEZ000005.) For all the same reasons, therefore, Lorenzo fails to state a tying claim.

**2. <u>The Offer of An Alleged Illusory Discount</u>**

Lorenzo adds one allegation not made by Khan and Lopez – namely, that she did not understand that the DHI Mortgage loan was more expensive than alternative mortgages even after the $5,000 discount she was given for using DHI Mortgage. She alleges that, not realizing that better terms were available elsewhere, she did not investigate whether she could obtain a better loan package from another lender. (Complaint, ¶ 36.)

This allegation, even if true, likewise doesn't come close to stating a tying claim. Lorenzo needs to establish that Western Pacific exercised *market power* to coerce her to use DHI Mortgage. All that Lorenzo alleges, however, is that DHI's mortgage was more expensive than other mortgages even after the $5,000 discount was applied. It is not an antitrust violation to be more expensive than a competitor. Moreover, Lorenzo was contractually entitled to shop around freely and compare mortgage costs. (RJN Ex. D at § 7.2(a), pg. LORENZO000010.) If she failed to do so, she may kick herself now, but she cannot turn her disappointment into a tying claim.

///

**E. <u>Plaintiff Wilson Fails to State Any Conduct Constituting Tying</u>**

Plaintiff Wilson's tying claim requires a different analysis. Unlike the other plaintiffs, he does not allege that Western Pacific ever told him that he had to use DHI Mortgage. Rather, he alleges that – in some unspecified way at some unspecified time – Western Pacific refused to cooperate with his efforts to obtain a loan from Bank of America. (Complaint, ¶ 34.)

Wilson's vague allegations likewise fall short of what is needed to state an antitrust claim. Like the other plaintiffs, Wilson's contract included a provision barring him from changing lenders after the lender commitment date. (RJN Ex. C at § 7.2, pg. WILSON000004.) Assuming for the sake of argument that a refusal to cooperate *before* the lender commitment date could support a tying claim, Western Pacific would have been entirely within its contractual rights to refuse to accommodate a switch to Bank of America *after* that time. Under *Queen City*, 124 F.3d at 440, Western Pacific's enforcement of that contractual right could not constitute tying.

Wilson, however, has failed to allege *when* the alleged refusal to cooperate occurred. Because Wilson does not allege whether the alleged conduct occurred before or after the lender commitment date, his allegations are equally consistent with entirely legal behavior as with any kind of prohibited tying. Under *Bell Atlantic*, therefore, Wilson has not alleged sufficient facts to get beyond the pleading stage. His tying claim should be dismissed without prejudice.

**F. <u>Plaintiff Khuu Fails to State Any Conduct Constituting Tying</u>**

**1. <u>The Statement that She Was Required to Use DHI Mortgage</u>**

Plaintiff Khuu alleges that – at some unspecified time – somebody at Western Pacific told her that she would lose her deposit if she used any lender other than DHI Mortgage. (Complaint, ¶ 42.) Just like Wilson, however, Khuu's contract required her to commit to a lender of her choosing after a certain date. (RJN Ex. G at § 7.2, pg. KHUU00005.) For the same reasons, it would have been entirely proper for Western Pacific to tell her that she could not switch from DHI Mortgage after that date. Khuu, however, fails to allege *when* the

alleged statement was made. Because Khuu's allegations are equally consistent with legal conduct as with anything improper, she has failed to plead enough facts to survive the pleading stage. *Bell Atlantic*, 127 S.Ct. at 1966.

### 2. The Alleged Closing Cost Misrepresentation

Khuu also alleges that Western Pacific represented that DHI's closing costs would be only $3,000, but that such costs turned out to be $7,000. (Complaint, ¶ 42.) This allegation, however, likewise does not state a tying claim. Even reading this allegation most favorably to Khuu, these allegations may allege fraudulent conduct (assuming scienter and other elements could be proven). But a tying claim is not a catch-all tort for any allegations of deceptive or unfair conduct. Rather, Khuu must allege facts showing that defendants had and abused *market power*. Because she has not done so, her tying claim should likewise be dismissed.

## VII.

## CONCLUSION

Plaintiffs have not alleged any facts showing the relevant geographic market, nor any facts showing market power in any market. Plaintiffs also rely on empty conclusory allegations and allegations directly refuted by judicially-noticeable facts. Such pleading is not sufficient to allege the exacting elements of a tying claim. The Court accordingly should dismiss the Sherman Act and Cartwright Act claims asserted in the third and fourth causes of action.[9]

DATED: May 5, 2008 LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: s/Valentine S. Hoy
Valentine S. Hoy
Attorneys for Defendants D.R. Horton, Inc., Western Pacific Housing, Inc., and DHI Mortgage Company, Ltd.
E-mail: vhoy@luce.com

101088811.11

[9] In addition, for the reasons set forth in the accompanying motion to strike, the Court should also dismiss and/or strike plaintiffs' claims under California's unfair competition and false advertising laws.

Valentine S. Hoy VIII, State Bar No. 121766
John T. Brooks, State Bar No. 167793
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
San Diego, California 92101-3372
Telephone No.: 619.236.1414
Fax No.: 619.232.8311

Attorneys for D.R. Horton, Inc., Western Pacific Housing, Inc., and DHI Mortgage Company, Ltd.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES WILSON, REBECCA LORENZO, WAHEEDA KHAN, JORGE LOPEZ, and SUZIE KHUU, on behalf of themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>D.R. HORTON, INC., WESTERN PACIFIC HOUSING, INC. d/b/a/ D.R. HORTON, AMERICA'S BUILDER, DHI MORTGAGE COMPANY, LTD., L.P. and DOES 1-10,<br><br>Defendants. | Case No. 08 CV 592 BEN RBB<br><br>The Hon. Roger T. Benitez<br>Dept. 3<br><br>**PROOF OF SERVICE**<br><br>Complaint Filed: March 28, 2008 |

I, the undersigned, declare as follows:

I am employed with the law firm of Luce, Forward, Hamilton & Scripps LLP, whose address is 600 West Broadway, Suite 2600, San Diego, California 92101-3372. I am over the age of eighteen years, and am not a party to this action.

On May 5, 2008, I served the following:

**ALL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION NO. 1: ALL DEFENDANTS' MOTION TO DISMISS ANTITRUST CLAIMS**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Norman B Blumenthal**
  norm@bamlawlj.com, bam@bamlawlj.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

☐ (No manual recipients)

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed at San Diego, California on May 5, 2008.

Tamara Siemers

101092070.1