Valentine S. Hoy VIII, State Bar No. 121766
John T. Brooks, State Bar No. 167793
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
San Diego, California 92101-3372
Telephone No.: 619.236.1414
Fax No.: 619.232.8311

Attorneys for D.R. Horton, Inc., Western Pacific Housing, Inc., and DHI Mortgage Company, Ltd.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WILSON, REBECCA LORENZO, WAHEEDA KHAN, JORGE LOPEZ, and SUZIE KHUU, on behalf of themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>D.R. HORTON, INC., WESTERN PACIFIC HOUSING, INC. d/b/a/ D.R. HORTON, AMERICA'S BUILDINGER, DHI MORTGAGE COMPANY, LTD., L.P. and DOES 1-10,<br><br>Defendants. | Case No. 08 CV 592 BEN RBB<br><br>The Hon. Roger T. Benitez<br>Dept. 3<br><br>**EXHIBITS TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTIONS TO DISMISS, MOTIONS TO STRIKE, AND MOTION TO COMPEL ARBITRATION**<br><br>**EXHIBIT G**<br><br>Date: June 9, 2008<br>Time: 10:30 a.m.<br>Dept.: 3<br><br>Complaint Filed: March 28, 2008 |

Defendants D.R. Horton, Inc., Western Pacific Housing, Inc., and DHI Mortgage Company, Ltd., hereby submit the following exhibits in support of their Request for Judicial Notice in Support of Motions to Dismiss, Motions to Strike, and Motion to Compel Arbitration:

Exhibit G

G. Purchase Agreement for plaintiff Khuu.

DATED: May 5, 2008

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: s/Valentine S. Hoy

Valentine S. Hoy
Attorneys for Defendants D.R. Horton, Inc., Western Pacific Housing, Inc., and DHI Mortgage Company, Ltd.
E-mail: vhoy@luce.com

101092369.1

# EXHIBIT G

Community: La Boheme
Residential Unit No: 2107

# PURCHASE AGREEMENT

# AND ESCROW INSTRUCTIONS

By and Between

Western Pacific Housing Inc., a Delaware corporation
("**Seller**")

AND

Susie Yen Khuu
("**Buyer**")

| |
|---|
| THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION. YOU SHOULD CONSULT LEGAL COUNSEL WITH ANY QUESTIONS ABOUT ANY OF THE PROVISIONS OF THIS CONTRACT. |



Buyer's Initials (SYK)

Jul. 31. 2007 9:14AM 12 760 809792 No. 1031 P. 3 P. 2

Jul. 31. 2007 9:14AM No. 1025 2

Buyer: Susie Yen Khuu / Subdivision: La Boheme / Lot&Block: 2107, / Address: 3957 30th Street #207 / Job#: 6657 40572107 (Printed by Patricia L. Sugiyama on 07/26/2007

Community: La Boheme

Residential Unit No: 2107

Purchase Agreement and Escrow Instructions

| | |
|---|---|
| **BUYER:**<br>Susie Yen Khuu<br>777 6th Ave #429<br>San Diego, CA 92101 | **SELLER:**<br>Westen Pacific Housing Inc., a Delaware corporation<br>5790 Fleet Street Suite 210<br>Carlsbad, CA 92008 |
| **ESCROW COMPANY:**<br>First American Title Company<br>11512 El Camino Real #350<br>San Diego CA 92130<br>Phone: (858) 509-2108 Fax: (858) 509-2105 | **TITLE COMPANY:**<br>First American Title Company<br>411 Ivy Street<br>San Diego CA 92101<br><br>DATE: 07/26/2007 |

1. AGREEMENT TO BUY AND SELL. Buyer's signature on this document and delivery of the Deposit to Seller constitutes an "Offer" to purchase the Property described below. Seller's signature on this document and unrestricted release of the Deposit to Seller constitutes "Acceptance" of the Offer. Upon Acceptance, Seller agrees to sell and Buyer agrees to purchase the Property on the terms and conditions set forth in this Purchase Agreement and Escrow Instructions ("Purchase Agreement").

2. ADDRESS OF PROPERTY

3957 30th Street #207 (Street) San Diego (City) CA (State) 92104 (Zip)

The residence is plan type 2 Bedroom (002F/") FP / Color Scheme ("Residence"). The Property is a (check only one):

[ ] Planned Development or Standard Subdivision:

Lot No. _____ of Tract No. _____, as shown on a Map recorded or to be recorded in the Official Records of _____ County, California.

[X] Condominium

Residential Unit No. 2107, an undivided interest in the Common Area and any Exclusive Use Easements shown on the Condominium Plan.

3. OCCUPANCY. Buyer does [X] does not [ ] intend to occupy the Property as his/her residence.

4. PURCHASE PRICE AND ESTIMATED CASH DUE AT CLOSING. Buyer shall pay the following:

a. Purchase Price $217,285.00

Note: The Purchase Price does not reflect options, upgrades, etc. which the parties may later agree upon.

| | | | |
|---|---|---|---|
| b. | Less: | Estimated New Loan Amount | 210,766.00 (handwritten; $0.00 struck) |
| c. | Equals: | Secondary Financing (if any) | .00 (handwritten) |
| | | | 6519.00 (handwritten; $217,285.00 struck) |
| d. | Equals: | Down Payment | $2,172.85 |
| e. | Plus: | Estimated Buyer Closing Costs, Prepaid Expenses and Impounds Due at Closing | $8,519.00 |
| f. | Less: | Deposit received from Buyer | 2172.85 (handwritten) |
| g. | Equals: | Total Estimated Cash Requirement from Buyer at Close Escrow | 6346.00 (handwritten; struck figure) |

The Deposit

5. DEPOSIT. "Deposit" includes all funds paid by Buyer that are applicable to the Purchase Price. Deposits will be held, and Deposits paid by check will be un-cashed, pending Acceptance. If there is no Acceptance, Buyer's Deposit shall be returned to Buyer. Upon Acceptance, if a Deposit check is returned for non-sufficient funds, Seller may, in its sole discretion, either deem this Purchase Agreement terminated, or seek replacement funds from Buyer. No interest shall be payable to Buyer on the Deposit. If Seller has posted a bond, cash deposit or other security instrument acceptable to the Department of Real Estate ("Security"), under the provisions of California Business and Professions Code Section 11013.2 or 11013.4 and Seller has obtained a final subdivision public report covering the Property, the Deposit shall be released by Escrow Holder to Seller at Seller's request, without further instruction from Buyer.

Escrow Procedures and Requirements

6. ESCROW.



Buyer's Initials SYK

Community: La Boheme
Residential Unit No: 2107

## Purchase Agreement and Escrow Instructions

| | |
|---|---|
| **BUYER:**<br>Susie Yen Khuu<br>777 6th Ave #429<br>San Diego, CA 92101 | **SELLER:**<br>Westen Pacific Housing Inc., a Delaware corporation<br>5790 Fleet Street, Suite 210<br>Carlsbad, CA 92008 |
| **ESCROW COMPANY:**<br>First American Title Company<br>11512 El Camino Real #350<br>San Diego, CA 92130<br>Phone: (858) 509-2108 Fax: (858) 509-2105 | **TITLE COMPANY:**<br>First American Title Company<br>411 Ivy Street<br>San Diego, CA 92101<br><br>**DATE:07/26/2007** |

1. AGREEMENT TO BUY AND SELL. Buyer's signature on this document and delivery of the Deposit to Seller constitutes an "Offer" to purchase the Property described below. Seller's signature on this document and unrestricted release of the Deposit to Seller constitutes "Acceptance" of the Offer. Upon Acceptance, Seller agrees to sell and Buyer agrees to purchase the Property on the terms and conditions set forth in this Purchase Agreement and Escrow Instructions ("**Purchase Agreement**").

2. ADDRESS OF PROPERTY

| Street | City | State | Zip |
|---|---|---|---|
| 3957 30th Street #207 | San Diego | CA | 92104 |

The residence is plan type 2 Bedroom (002F/*) F/* / Color Scheme ("**Residence**"). The Property is a (check only one):

[ ] Planned Development or Standard Subdivision:

Lot No. _____ of Tract No. _____, as shown on a Map recorded or to be recorded in the Official Records of _____ County, California.

[X] Condominium

Residential Unit No. 2107, an undivided interest in the Common Area and any Exclusive Use Easements shown on the Condominium Plan.

3. OCCUPANCY. Buyer does [X] does not [ ] intend to occupy the Property as his/her residence.

4. PURCHASE PRICE AND ESTIMATED CASH DUE AT CLOSING. Buyer shall pay the following:

a. Purchase Price $217,285.00

Note: The Purchase Price does not reflect options, upgrades, etc. which the parties may later agree upon.

| | | | |
|---|---|---|---|
| b. | Less: | Estimated New Loan Amount | $0.00 |
| c. | Equals: | Secondary Financing (if any) | 0.00 |
| d. | Equals: | Down Payment | $217,285.00 |
| e. | Plus: | Estimated Buyer Closing Costs, Prepaid Expenses and Impounds Due at Closing | $2,172.85 |
| f. | Less: | Deposit received from Buyer | $6,519.00 |
| g. | Equals: | **Total Estimated Cash Requirement from Buyer at Close Escrow** | $212,938.85 |

## The Deposit

5. DEPOSIT. "Deposit" includes all funds paid by Buyer that are applicable to the Purchase Price. Deposits will be held, and Deposits paid by check will be un-cashed, pending Acceptance. If there is no Acceptance, Buyer's Deposit shall be returned to Buyer. Upon Acceptance, if a Deposit check is returned for non-sufficient funds, Seller may, in its sole discretion, either deem this Purchase Agreement terminated, or seek replacement funds from Buyer. No interest shall be payable to Buyer on the Deposit. If Seller has posted a bond, cash deposit or other security instrument acceptable to the Department of Real Estate ("**Security**"), under the provisions of California Business and Professions Code Section 11013.2 or 11013.4 and Seller has obtained a final subdivision public report covering the Property, the Deposit shall be released by Escrow Holder to Seller at Seller's request, without further instruction from Buyer.

## Escrow Procedures and Requirements

6. ESCROW.



Buyer's Initials (______)

6.1 Opening of Escrow. Within 5 days after Acceptance, Seller shall deliver this Purchase Agreement to the Escrow Holder listed above for the purpose of opening an escrow ("Escrow"). Escrow Holder's additional instructions are attached as an Addendum. If any provision in the Escrow Instructions Addendum conflicts with any other provisions of this Purchase Agreement, the provisions in this Purchase Agreement control.

6.2 Buyer's Duty to Cooperate. Upon Acceptance, Seller will incur daily carrying and other costs attributable to holding the Property off the market. Accordingly, Buyer agrees to cooperate with Seller to use his/her best efforts and to diligently take any action necessary to timely close Escrow, including without limitation, by promptly cooperating in good faith with all time frames for performance under this Purchase Agreement, including all time frames for selecting options and providing all requested documents to lender, Escrow Holder and Title Company. Buyer acknowledges that Buyer's failure to so cooperate shall constitute a default under this Purchase Agreement.

6.3 Title Company and Escrow Holder. By Buyer's execution of this Purchase Agreement, Buyer and Seller have mutually agreed to use the Title Company and Escrow Holder designated on the first page of this Purchase Agreement.

6.4 Close of Escrow; Estimated Closing Date; Closing Date.

(a) Close of Escrow. The close of escrow shall occur upon the recordation of the Grant Deed (" Close of Escrow")

(b) Closing Date: Escrow shall close on ("Closing Date"):

[X] *[Check if Residence is already constructed]* ; or
[ ] *[Check if Residence is not completed]* The date set forth in the Closing Date Notice (as defined in Paragraph 6.4(c) below) to Buyer that the Residence is ready for occupancy. It is estimated that the Residence will be completed and that either a notice of completion will be filed or a certificate allowing occupancy of the Residence will be issued on 08/31/2007 ("Estimated Closing Date").

Due to the variables in the development of the Project, the date on which Escrow actually closes may be before or after the Estimated Closing Date. Seller agrees that it will complete construction in accordance with the standards set forth in **Paragraph 8.1** on or prior to the date set forth in **Paragraph 6.4(c)** below provided that Seller is in no event responsible for any delays due to events beyond Seller's control, including, without limitation, Acts of God, fire, earthquake, terrorist acts and inclement weather, shortages of labor or supplies, moratoria, inability to obtain permits or approvals, utility stoppage or shortages, financing shortages and delays caused by governmental agencies.

(c) Notice of Closing Date and Deliveries. Seller or Escrow Holder will notify Buyer (orally or in writing) of the date for the Close of Escrow at least 5 business days before the pending date for the Close of Escrow ("Closing Date Notice"). Buyer shall deliver to Escrow Holder all cash and all documents required to close Escrow no later than the required date for such deliveries set forth in the Closing Date Notice. Notwithstanding the foregoing, if Seller fails to achieve completion of the framing work necessary to complete the shell of the Phase 1 Module (to be described in the Condominium Plan) ("Threshold Completion") by the date which is twelve (12) months after the date of acceptance of this Agreement by Seller, then Buyer shall have the right to terminate this Agreement in accordance with the procedures set forth herein. For purposes of this Agreement, Seller shall be deemed to have satisfied this requirement if the project architect issues, as of the date set forth above, a statement that the Threshold Completion has been satisfied. If Seller has not achieved the Threshold Completion, Seller shall deliver written notice thereof to Buyer and Buyer shall have 15 days after receipt of such notice to elect to either terminate this Agreement and obtain a refund of Buyer's Deposit or waive its right to terminate. The failure of Buyer to deliver notice of termination within such 15 day period shall constitute Buyer's election not to terminate this Agreement. Upon the return of the Buyer's Deposit, Seller shall not have any further obligations to Buyer under this Purchase Agreement, unless Seller is then in default under its provisions. If Buyer fails to close Escrow by the Closing Date by reason of a default by Buyer, Seller may make a claim for liquidated damages in accordance with the provisions of Paragraph 10 of this Purchase Agreement. Buyer agrees to execute all other documents and to take all other actions as are necessary to close the Escrow in accordance with this Purchase Agreement.

(d) Delay in Escrow Closing. If this Escrow does not close upon the Closing Date specified in the Closing Date Notice due to Buyer's default, Seller will be harmed due to carrying costs for the Property. If Seller does not terminate this Purchase Agreement, Seller may agree to extend the Closing Date, in its sole and absolute discretion, on the condition that Buyer pay Seller's carrying costs in the amount of $200.00 per day ("Extension Payment"). If Seller approves an extension, Buyer shall deposit into Escrow the applicable Extension Payment, or at Seller's option, Buyer shall pay the Extension Payment at the Close of Escrow as extended by the agreement of Buyer and Seller. Acceptance of Extension Payments will not constitute a waiver by Seller of any default by Buyer in failing to close the Escrow, and Seller's rights to liquidated damages. Any Extension Payment made by Buyer shall not be applicable to the Purchase Price but, if paid prior to the Closing Date, shall be handled in the same manner as the Deposit and liquidated damages under Paragraph 10.

(e) Third Party Charges. If certain charges are incurred by Seller on Buyer's behalf and paid from the Deposit or other funds of Buyer held under this Purchase Agreement ("Third Party Charges"), such charges shall be handled in the same manner as the Deposit. Seller's estimate of the amounts of the Third Party Charges is set forth below. Because these amounts are estimates of what would be due upon termination of this Purchase Agreement prior to the Close of Escrow, these amounts may not be the actual amounts due at Close of Escrow.

| | |
|---|---|
| • Credit Report: (per report) | 100.00 |
| • Appraisal Fees: (per appraisal) | 350.00 |
| • Escrow Services: | 500.00 |
| • Preliminary title Report: | 300.00 |
| • Loan Processing Services: | 400.00 |
| • Homebuyer's Manual, if not returned | 100.00 |
| • Other: | 100.00 |
| ESTIMATED TOTAL | 1850.00 |



Buyer's Initials (SYK)

(f) Completion of Residence. Seller shall complete the Residence such that the Residence is ready for occupancy by Buyer within two (2) years after the date of Buyer's Offer, subject to extensions for circumstances reasonably beyond Seller's control as determined by California law. Notwithstanding any provision in this Purchase Agreement to the contrary, including but not limited to Paragraph 10.3, nothing herein shall limit Buyer's remedies if Seller defaults under this Paragraph 6.4(f).

**Financing and Loan Approval**

7. FINANCING PROVISIONS *[Check either Paragraph 7.1 or 7.2]*

7.1 [ ] Financing Not Required: Buyer will provide all cash to close Escrow without obtaining a loan. Within 5 days after Buyer signs this Purchase Agreement, Buyer shall submit to Seller proof satisfactory to Seller that Buyer now has, or will have prior to Close of Escrow, cash sufficient to close Escrow. Within 3 days after any request by Seller, Buyer shall also provide evidence that sufficient funds are available for Buyer to close Escrow.

7.2 [X] Financing Required: Buyer will apply and qualify for and obtain financing sufficient to close Escrow in the approximate **"Estimated New Loan Amount"** set forth in Paragraph **4(b)**, above **("New Loan")**. Buyer shall use his or her best efforts to qualify for and obtain institutional financing at the rates and terms available to Buyer.

(a) Loan Application. Within 5 days after Buyer's Offer, Buyer shall submit a completed loan application for the New Loan to DHI Mortgage, LTD., L.P. **("Seller's Approved Lender")** and a lender selected by Buyer **("Buyer's Lender")** , if any. Buyer shall advise Seller of the lender it has elected to use to close the Escrow prior to the applicable date set forth in Paragraph **7.2(b)** below. Buyer shall take all required steps to allow prompt processing of the application for the New Loan, including fully responding to any requests from the lender(s) for documents or information within 3 days. Nothing set forth herein shall compel Buyer to accept any financing approved by Seller's Approved Lender that is not acceptable to Buyer.

(b) Buyer To Obtain Loan Approval. ***[Check appropriate box]*** ("Loan Contingency Date"):
[X] **Estimated Closing Date is less than 60 days**: Within 20 days after the Offer, but not less than 20 days prior to the Estimated Closing Date, Buyer shall deliver to Seller written evidence satisfactory to Seller that Buyer has obtained final unconditional loan approval for the Estimated New Loan Amount.
[ ] **Estimated Closing Date is more than 60 days**: Within 20 days after the Offer, Buyer shall deliver to Seller written evidence satisfactory to Seller that Buyer has obtained conditional credit approval. Within 45 days after the Offer, Buyer shall deliver to Seller final unconditional loan approval for the Estimated New Loan Amount, subject only to the lender's approval of the value of the Property through an appraisal.

7.3 NO FINANCING CONTINGENCY. IT IS UNDERSTOOD AND AGREED THAT BUYER WILL OBTAIN ITS OWN FINANCING OF ALL OR A PORTION OF THE PURCHASE PRICE FOR THE PROPERTY. BUYER ACKNOWLEDGES THAT THE SALE AND PURCHASE OF THE PROPERTY IS NOT CONTINGENT UPON BUYER'S ABILITY TO OBTAIN FINANCING OF THE PURCHASE PRICE. BUYER EXPRESSLY ACKNOWLEDGES AND AGREES THAT SELLER HAS MADE NO REPRESENTATION OR WARRANTY TO BUYER, EXPRESS OR IMPLIED, AS TO THE AVAILABILITY OF FINANCING OR BUYER'S ABILITY TO QUALIFY FOR SUCH FINANCING; AND SELLER HAS NO RESPONSIBILITY TO PROVIDE OR OTHERWISE PARTICIPATE IN THE PROCUREMENT OF SUCH FINANCING.

Buyer's Initials ________ Buyer's Initials ________ Seller's Initials ________

7.4 Acknowledgment. Buyer acknowledges and agrees that while there is no financing contingency regarding Buyer's purchase of the Property, Seller will require Buyer to meet the deadlines and fulfill Buyer's obligations set forth in Paragraphs 7.1 and Paragraphs 7.1 and 7.2 above. Buyer's failure to meet the dates, deadlines and obligations set forth in Paragraphs 7.1 and 7.2 above, and any substitution of another lender for Buyer's Lender without Seller's consent, will be a default under this Agreement and will entitle Seller to unilaterally terminate this Agreement and retain Buyer's Deposit as provided in Paragraph 10 hereof. Upon any termination of this Agreement by Seller as provided herein, Buyer shall be deemed to have waived and released any right Buyer may have to purchase the Property and/or any claim or interest in the same, and all rights and obligations of the parties shall be terminated and of no further force and effect.

Buyer's Initials ________ Buyer's Initials ________ Seller's Initials ________

7.5 Authorizations Given By Buyer; Re-verification. Buyer, by execution of this Purchase Agreement, authorizes Seller to investigate Buyer's credit, including obtaining a credit report, authorizes Seller to disclose to the lender(s) information about Buyer, authorizes Seller to obtain information from the lender(s), including copies of all applications and other documents, and agrees to cooperate with Seller in obtaining information about the New Loan from the lender. Upon the request of Seller, Buyer shall provide to Seller written re-verification of its financing approvals or sufficiency of cash.

**Construction of The Residence**

8. CONSTRUCTION

8.1 Standard Residence. The Residence under construction shall be constructed in substantial conformance with the standard plan on file with and approved by the appropriate governmental authority. Seller is not building the Residence specifically for Buyer, nor to the precise specifications or design of any model home. The fixtures, furnishings, [landscaping] and other features shown in any model home are not included under this Purchase Agreement unless specifically set forth herein. Seller reserves the right to make any changes or substitutions to the standard plan specifications, construction, materials and fixtures which are substantially equal in utility and quality to the original plans and specifications, and which meet with the approval of the appropriate governmental authorities having jurisdiction, as Seller deems necessary or desirable, without Buyer's consent.

8.2 Occupancy. Buyer shall not be entitled to possession of the Property or receive keys to the residence until after the Close of Escrow.

8.3 Entry Upon Property. Prior to the Close of Escrow, Buyer shall not alter the Property or the Residence, install any

 Buyer's Initials ________

improvements on the Property, show or advertise the Property to prospective purchasers or tenants or place any signs at or near theProperty, without the prior written consent of Seller and compliance with all requirements of Seller with respect to such entry, including signing an entry permit. All upgrades to the Property prior to the Close of Escrow must be approved in writing by Seller and installed or constructed by Seller or its authorized agents, representatives or independent contractors. If Buyer alters the Property or the Residence prior to the Close of Escrow without written consent of Seller, Seller may immediately remove same and Buyer shall be liable for all damages caused by such unauthorized work and changes to the Property.

8.4 Limited Warranty; Disclaimer of Implied Warranties. Buyer has received samples of the following prior to signing this Purchase Agreement: (a) a homeowner's manual entitled **"10-4-1 Limited Homeowner's Manual and Customer Care Guide" ("Homeowner's Manual")** which contains Seller's 10-4-1 Limited Warranty (**"Limited Warranty"**); (b) manufacturer's warranties (some or all of which may be provided at the Walk-Through). **[FMA/VA Projects: If your purchase is FHA or VA financed, Seller will also provide its Residential Warranty.]** The Limited Warranty, manufacturer's warranties, and any other express written warranty provided to you by the Seller are referred to collectively as "the Warranties." The Warranties become effective upon Close of Escrow. Except for these Warranties, Seller does not make any other representations, promises or warranties concerning the Property, including, without limitation, warranties of merchantability, fitness for a particular purpose, quality of construction or otherwise, and to the fullest extent permitted by law Buyer waives all implied warranties relating to the Property.

I/WE HAVE READ AND UNDERSTAND THE FOREGOING PROVISIONS PERTAINING TO THE WARRANTIES AND ACKNOWLEDGE AND AGREE THAT EXCEPT AS PROVIDED IN THE WARRANTIES, SELLER DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, THAT THE PROPERTY WAS DESIGNED AND CONSTRUCTED IN A REASONABLY WORKMANLIKE MANNER, FITNESS FOR A PARTICULAR PURPOSE, AND MERCHANTABILITY.

Buyer's Initials    Buyer's Initials    Seller's Initials

8.5 Buyer Walk-Through. Prior to Close of Escrow, Seller will provide Buyer with at least 72 hours notice of the date the Property is available for orientation and inspection (**"Walk-Through"**). If Buyer fails to attend the Walk-Through, Seller may complete its own inspection of the Property and close escrow. If Buyer fails to attend the Walk-Through Buyer's later claims of reasonably observable deficiencies may be rejected by Seller as having occurred after Close of Escrow and therefore not Seller's responsibility. Seller reserves the right to perform such work after the Close of Escrow.

8.6 Optional Items and Upgrades. The selection and cost of all options and upgrades shall be set forth in an Addendum to this Purchase Agreement and/or in a separate agreement(s) between Buyer and Seller or an authorized third party provider. The availability and prices of options and upgrades are subject to change without prior notice. Seller reserves the right to add or delete any optional items from the Seller's list of optional items at any time without prior notice to Buyer. In addition, once certain stages of the construction process are complete (**"Cut-Off Dates"**), some options and upgrades increase in price or are no longer available. Information concerning these Cut-Off Dates and additional costs will be provided to Buyer upon request. Accordingly, Buyer shall select and pay for all options and upgrades when requested to do so by Seller. If Buyer selects options and upgrades but fails to make color, style or material selections prior to Seller's construction cut-off dates, Seller may either not install them, or install colors, styles and materials of Seller's choice. Seller will only supply options on Seller's approved list. If Buyer fails to make any options selections, Seller shall install standard items.

8.7 Destruction of the Property Prior to Close of Escrow. If the Property is destroyed or materially damaged, other than by Buyer's act or omission, prior to the Close of Escrow, then either Buyer or Seller may terminate this Purchase Agreement and the Deposit, less any applicable Third Party Charges, shall be returned to Buyer within 15 days thereafter.

8.8 Claims Under California Civil Code Section 895 et seq. California Civil Code Section 895 et seq. (the **"Statute"**) establishes residential construction standards and provides mechanisms for resolution of claims of violations of these standards.

(a) SB 800 Booklet. A booklet containing Sections 895 through 945.5 of the Civil Code (**"SB 800 Booklet"**), which includes the Statute has been provided to Buyer by Seller. You should read the Statute carefully and seek legal advice if you have any questions. By initialing below Buyer acknowledges that s/he has received and initialed a copy of the SB 800 Booklet.

Buyer's Initials    Buyer's Initials    Seller's Initials

(b) Notice of Claims. If Buyer or Buyer's successors (the **"Claimant"**) claim that the Property or the Residence violates any of the Standards, Claimant must provide notice to Seller's agent under Civil Code Section 912(e). The name and address of Seller's agent are available upon request from the California Secretary of State:

California Secretary of State
Special Filings
P.O. Box 942877
Sacramento, California 94277
or by telephone at (916) 653-3984

By initialing below, Buyer acknowledges and agrees that Seller has provided Buyer with access to the name and address of the contact person for notice of any claimed violations of the Standards.

Buyer's Initials    Buyer's Initials    Seller's Initials

 Buyer's Initials

(c) Statutory Non-Adversarial Procedures. Seller has elected to use the "non-adversarial procedures" which are set forth in the Statute at Sections 910 through 938. Seller has recorded or will record a notice of these procedures on the Property at or prior to the Close of Escrow. According to the terms of the Statute, the non-adversarial procedures will not apply if the Seller does not, or cannot comply with the requirements in the Statute. In such case, disputes will be resolved through mediation and, if that is not successful, then arbitration as provided in this Purchase Agreement.

Buyer's Initials ______ Buyer's Initials ______ Seller's Initials ______

(d) Receipt of Purchase Documents. Buyer acknowledges that it has received or may in the future receive certain documents in conjunction with Buyer's purchase of the Property, including, but not limited to, those referenced in the Receipt of Documents. Buyer agrees to keep and maintain all such documents, to provide any subsequent buyer with all such documents, as required by the Statute, and to instruct any subsequent buyer to provide to their subsequent buyers a complete copy of all documents.

(e) Affiliated General Contractor. Seller is using an affiliated general contractor, as described in Section 911 of the Statute ("General Contractor") to construct the Project. All deliveries, notices and elections set forth in this Section 8.8 are hereby deemed to apply to, and be made by General Contractor as well as Seller. All notices provided to the General Contractor shall be delivered to the address set forth in Paragraph 8.8(b) above.

Closing

9. CLOSING

9.1 Title. At the Close of Escrow, title to the Property shall be conveyed to Buyer subject to: (a) standard exceptions and exclusions of the Title Policy, (b) current real property taxes, special taxes and any assessments; (c) any declarations of covenants, conditions and restrictions; (d) all other reservations, covenants, conditions, restrictions, easements, rights and rights of way of record or placed of record prior to the Close of Escrow; (e) the New Loan in favor of Buyer's lender, if any; and (f) a Notice of Non-Adversarial Procedure under California Civil Code Section 912(f). Upon the Close of Escrow, Seller shall cause to be issued a standard coverage owner's policy of title insurance ("Title Policy") issued by the Title Company in Buyer's favor describing the Property and with coverage in the amount of the Purchase Price and containing the exceptions described above.

9.2 Prorations. Real property taxes, special taxes and assessments, including assessments for any homeowners association(s), shall be prorated between Buyer and Seller as of the Close of Escrow.

9.3 Buyer and Seller Closing Costs. Buyer and Seller shall pay the closing costs allocated below:

| Buyer | Seller | Closing Costs |
|---|---|---|
| [X] | [ ] | Escrow Fees |
| [X] | [X] | Title Policy |
| [ ] | [X] | City Transfer Taxes |
| [ ] | [X] | County Document Transfer Taxes |
| [X] | [ ] | Lender's Closing Costs and Charges |

Pre-Closing Disputes

10. LIQUIDATED DAMAGES; ARBITRATION.

10.1 Default by Buyer. If Buyer breaches or fails to perform any of its obligations under this Purchase Agreement, Seller may provide written notice of such breach or failure to Buyer and Buyer shall have 5 days from the date of such written notice to cure such breach, except that this provision shall not apply to extend the Closing Date. If Buyer fails to cure the breach within the 5 day period after Seller gives Buyer such notice, Seller may pursue its remedies for a Buyer's default.

10.2 BUYER'S BREACH; LIQUIDATED DAMAGES. IF BUYER DEFAULTS UNDER ANY TERMS OR PROVISIONS UNDER THIS PURCHASE AGREEMENT AND SUCH DEFAULT RESULTS IN THE FAILURE TO CLOSE ESCROW OR IF BUYER IS IN DEFAULT AND SUCH DEFAULT IS A MATERIAL BREACH OF THIS PURCHASE AGREEMENT, SELLER, IN ITS SOLE AND ABSOLUTE DISCRETION, SHALL BE RELEASED FROM ITS OBLIGATION TO SELL THE PROPERTY TO BUYER AND SHALL HAVE THE RIGHT TO UNILATERALLY TERMINATE THIS PURCHASE AGREEMENT. IN ADDITION, SELLER MAY PURSUE ANY REMEDY AT LAW OR IN EQUITY THAT IT MAY HAVE AGAINST BUYER ON ACCOUNT OF SUCH DEFAULT; PROVIDED, HOWEVER, THAT BY PLACING THEIR INITIALS HERE, BUYER ______ ______ AND SELLER ______ AGREE THAT:

(a) SELLER WILL BE DAMAGED AND WILL BE ENTITLED TO COMPENSATION FOR THESE DAMAGES, BUT SUCH DAMAGES WILL BE DIFFICULT TO DETERMINE AND BUYER DESIRES TO LIMIT THE AMOUNT OF DAMAGES FOR WHICH BUYER MIGHT BE LIABLE. IN ADDITION, BOTH BUYER AND SELLER WISH TO SAVE THE TIME AND MONEY INVOLVED IN A LAWSUIT OR ARBITRATION TO DETERMINE DAMAGES;

(b) AN AMOUNT NOT TO EXCEED THE DEPOSIT, SHALL CONSTITUTE LIQUIDATED DAMAGES PAYABLE TO SELLER IF BUYER DEFAULTS UNDER ANY TERMS OR PROVISIONS UNDER THIS PURCHASE AGREEMENT AND SUCH DEFAULT RESULTS IN THE FAILURE TO CLOSE ESCROW OR IF BUYER IS IN DEFAULT AND SUCH DEFAULT IS A MATERIAL BREACH OF THIS PURCHASE AGREEMENT;

(c) THE PAYMENT OF SUCH LIQUIDATED DAMAGES TO SELLER SHALL CONSTITUTE THE EXCLUSIVE REMEDY OF SELLER ON ACCOUNT OF ANY DEFAULT BY BUYER, EXCEPT FOR ANY RIGHTS WHICH SELLER MAY HAVE UNDER PARAGRAPH 6.4(D) OF THIS PURCHASE AGREEMENT; AND

(d) SELLER WAIVES ITS RIGHTS TO SPECIFIC PERFORMANCE OR OTHER DAMAGES.

(e) LIQUIDATED DAMAGES SHALL BE PAYABLE TO SELLER OUT OF BUYER'S DEPOSIT ACCORDING TO THE FOLLOWING PROCEDURES. TO MAKE A CLAIM OF BUYER'S DEFAULT AND DEMAND FOR LIQUIDATEDDAMAGES, SELLER SHALL GIVE WRITTEN NOTICE ("SELLER'S NOTICE") BY ANY MEANS AUTHORIZED FOR SERVICE BY CODE OF CIVIL PROCEDURE SECTION 116.340 TO ESCROW HOLDER AND TO BUYER THAT BUYER IS IN DEFAULT UNDER THIS PURCHASE AGREEMENT AND THAT ESCROW HOLDER DISBURSE BUYER'S DEPOSIT(S) TO SELLER UNLESS, WITHIN 20 DAYS OF RECEIPT OF THE SELLER'S NOTICE, BUYER NOTIFIES ESCROW HOLDER AND SELLER IN WRITING THAT BUYER OBJECTS TO THE DISBURSEMENT OF LIQUIDATED DAMAGES TO SELLER (THE "BUYER'S NOTICE"). IF SELLER HAS HAD THE USE OF ANY OF BUYER'S PURCHASE MONEY UNDER AUTHORITY OF A PURCHASE MONEY BOND, SELLER SHALL IMMEDIATELY UPON MAKING SELLER'S NOTICE AND DEMAND, DESCRIBED ABOVE, TRANSMIT TO THE ESCROW HOLDER AN AMOUNT EQUAL TO ALL OF THE DEPOSITS PAID BY BUYER. IF BUYER FAILS TO GIVE BUYER'S NOTICE WITHIN THE TIME REQUIRED: (I) ESCROW HOLDER SHALL PROMPTLY REMIT THE LIQUIDATED DAMAGES AMOUNT TO SELLER, AND (II) SELLER SHALL BE RELIEVED OF ANY OBLIGATION TO SELL THE PROPERTY TO BUYER.

10.3 SELLER'S BREACH; LIQUIDATED DAMAGES. IF SELLER DEFAULTS UNDER THIS PURCHASE AGREEMENT AND FAILS TO CURE SUCH DEFAULT WITHIN 5 DAYS AFTER NOTICE THEREOF FROM BUYER, AND SUCH DEFAULT RESULTS IN THE FAILURE TO CLOSE ESCROW, BUYER, IN ITS SOLE AND ABSOLUTE DISCRETION, SHALL HAVE THE RIGHT TO UNILATERALLY TERMINATE THIS PURCHASE AGREEMENT AND PURSUE ANY REMEDY AT LAW OR IN EQUITY THAT IT MAY HAVE AGAINST SELLER; PROVIDED, HOWEVER, THAT BY PLACING THEIR INITIALS HERE, BUYER ____________ AND SELLER ____________ AGREE THAT (A) UPON ANY SUCH DEFAULT BY SELLER, BUYER WILL BE DAMAGED AND WILL BE ENTITLED TO COMPENSATION FOR THESE DAMAGES, BUT SUCH DAMAGES WILL BE DIFFICULT TO DETERMINE AND SELLER DESIRES TO LIMIT THE AMOUNT OF DAMAGES FOR WHICH SELLER MIGHT BE LIABLE, (B) BOTH BUYER AND SELLER WISH TO SAVE THE TIME AND MONEY INVOLVED IN A LAWSUIT OR ARBITRATION TO DETERMINE DAMAGES, AND (C) UPON SUCH A DEFAULT BY SELLER, BUYER SHALL BE ENTITLED TO THE RETURN OF THE DEPOSIT PLUS AN ADDITIONAL AMOUNT PAID BY SELLER EQUAL TO THE AMOUNT OF THE DEPOSIT PAID BY BUYER UNDER PARAGRAPH 4(f) OF THIS PURCHASE AGREEMENT (COLLECTIVELY, "BUYER'S LIQUIDATED DAMAGES"). BUYER'S LIQUIDATED DAMAGES AND BUYER'S RIGHT TO TERMINATE THIS PURCHASE AGREEMENT SHALL CONSTITUTE BUYER'S SOLE AND EXCLUSIVE REMEDY FOR DAMAGES IN THE EVENT OF A DEFAULT BY SELLER WHICH RESULTS IN THE FAILURE TO CLOSE ESCROW AND BUYER SPECIFICALLY WAIVES ANY RIGHT TO BRING AN ACTION AGAINST SELLER FOR SPECIFIC PERFORMANCE. IF SELLER FAILS TO DEPOSIT AN AMOUNT EQUAL TO THE DEPOSIT PAID BY BUYER UNDER PARAGRAPH 4(g) WITHIN 20 DAYS AFTER RECEIPT OF BUYER'S NOTICE OF DEFAULT, THIS SECTION SHALL BE VOID AND OF NO EFFECT.

(a) NOTICE OF DEFAULT AND DEMAND FOR LIQUIDATED DAMAGES. BUYER SHALL GIVE WRITTEN NOTICE ("BUYER'S NOTICE") BY ANY MEANS AUTHORIZED FOR SERVICE BY CODE OF CIVIL PROCEDURE SECTION 116.340 TO ESCROW HOLDER AND TO SELLER THAT SELLER IS IN DEFAULT UNDER THE PURCHASE AGREEMENT AND THAT ESCROW HOLDER DISBURSE THE AMOUNTS DESCRIBED ABOVE TO BUYER UNLESS, WITHIN 20 DAYS OF RECEIPT OF THE BUYER'S NOTICE, SELLER NOTIFIES ESCROW HOLDER AND BUYER IN WRITING THAT SELLER OBJECTS TO THE DISBURSEMENT OF LIQUIDATED DAMAGES TO BUYER (THE "SELLER'S NOTICE"). IF SELLER FAILS TO GIVE SELLER'S NOTICE WITHIN THE TIME REQUIRED: (I) ESCROW HOLDER SHALL PROMPTLY REMIT BUYER'S LIQUIDATED DAMAGES AMOUNT TO BUYER, AND (II) BUYER SHALL BE RELIEVED OF ANY OBLIGATION TO PURCHASE THE PROPERTY FROM SELLER.

(b) NO CONSEQUENTIAL DAMAGES. IN NO EVENT SHALL SELLER BE LIABLE FOR ANY CONSEQUENTIAL DAMAGES AS A RESULT OF A DEFAULT BY SELLER UNDER THIS PURCHASE AGREEMENT.

10.4 ARBITRATION OF DISPUTES. If there is an objection to a claim under Paragraph 10.2, the Deposit shall only be disbursed to Seller as liquidated damages if there is a determination by a court of law that Buyer has defaulted under this Purchase Agreement or, if there is an objection to a claim under Paragraph 10.3, then Buyer's Liquidated Damages shall only be disbursed to Buyer if there is a determination by a court of law that Seller has defaulted under this Purchase Agreement; provided, however, that by initialing in the space provided below Buyer and Seller agree that the controversy, and the disposition of such funds deposited into the Escrow as provided in Paragraph 10.2 and 10.3 shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and subject to the following terms: (a) the fee to initiate the arbitration shall be borne by Seller; provided, however, that the costs of the arbitration shall be borne as determined by the arbitrator; (b) the arbitrator shall be neutral and impartial and shall be appointed within 30 days after Buyer or Seller gives written notice to Escrow Holder in compliance with Paragraph 10.2(e) or 10.3(a) above; (c) the arbitration shall be conducted in the County where the Property is located, unless the parties agree to another location; and (d) subject to any limitations on specific performance set forth above, the arbitrator shall be authorized to provide all recognized remedies available in law or equity for any cause of action that is the basis of the arbitration. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. If the dispute subject to the arbitration is whether a default has occurred under this Purchase Agreement and there is a determination by the arbitrator that a default has occurred,



Buyer's Initials (____________)

Escrow shall be cancelled and the rights and duties under this Purchase Agreement shall automatically terminate, including any duty by Seller to sell the Property to Buyer or obligation of Buyer to purchase the Property from Seller. Upon a determination of Buyer's default, the amount claimed as liquidated damages shall be disbursed as provided above, and any remaining Deposit shall be disbursed to Buyer; provided, however, that if the arbitrator determines that any dispute raised by Buyer as to the amount of liquidated damages claimed by Seller cannot be determined at the same time as the dispute regarding Buyer's default, the dispute as to the amount of liquidated damages shall be resolved by a subsequent arbitration in the same manner as described herein.

NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN PARAGRAPH 10.4 DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION. (CODE OF CIVIL PROCEDURE SECTION 1298).

Buyer's Initials ________ Buyer's Initials ________ Seller's Initials ________

**Post-Closing Disputes**

11. MEDIATION AND ARBITRATION OF POST-CLOSING DISPUTES. The parties want to promptly and efficiently resolve any controversy, claim or dispute between them asserted after the Close of Escrow. Accordingly, any and all disputes arising between Buyer and Seller (including any affiliated general contractor of seller as defined in California Civil Code Section 911) after the Close of Escrow concerning this Purchase Agreement or the Property ("Post-Closing Dispute"), which are not resolved under the Warranties or under the non-adversarial procedures in the Statute described in Paragraph 8.8 above, shall be resolved in accordance with the procedures set forth below. To provide for consistency with the Limited Warranty, to the extent that the provisions of this Paragraph are inconsistent with the provisions of any Declaration of Covenants, Conditions and Restrictions recorded against the Property by Seller, the provisions of his Paragraph shall control.

11.1 Mediation. Subject to Paragraph 11.2 below, and except for actions in small claims court or Post-Closing Disputes that have already been mediated, Buyer and Seller agree to submit all Post-Closing Disputes to mediation with Judicial Arbitration and Mediation Services ("JAMS"), prior to commencing arbitration. The cost of mediation shall be paid by Seller, but each party shall bear its own attorneys' fees and costs.

11.2 Arbitration.

(a) Agreement to Arbitrate. Subject to Paragraph 11.1 above, Buyer and Seller agree to resolve all Post-Closing Disputes exclusively through binding arbitration in the county in which the Property is located. This arbitration provision shall apply to Post-Closing Disputes of any kind or nature regardless of when, after the Close of Escrow, the Post-Closing Dispute first arose, or the nature of the relief sought.

(b) Waiver of Trial by Judge or Jury. By agreeing to resolve all Post-Closing Disputes through binding arbitration, Buyer and Seller each give up the right to have their respective claims and defenses decided by a judge or a jury. Instead all claims and defenses will be decided by the arbitrator, or by the appeal arbitrator(s), if applicable.

(c) Rules Applicable to All Cases. The arbitration will be conducted by JAMS in accordance with the JAMS rules ("JAMS Rules") then applicable to the claims presented, as supplemented by this paragraph. The following supplemental rules shall apply to all arbitration proceedings and shall govern in the event of a conflict between the rules set forth below and the rules of JAMS Rules.

(i) Qualifications and Appointment of Arbitrators. The arbitrator shall be neutral, impartial and either a retired judge or a member or former member of the California State Bar with at least 15 years experience as a practicing lawyer. The arbitrator shall be selected in accordance with the JAMS Rules, but no later than 60 days after a notice of claim is filed.

(ii) JAMS Fees; Attorney Fees and Costs. All fees charged by JAMS and the arbitrator shall be advanced by the Seller. If the Seller is the prevailing party in the arbitration, the arbitrator may, in his or her discretion and only to the extent permitted by law and the JAMS Minimum Standards of Procedural Fairness, direct the Buyer to reimburse the Seller all or part of the JAMS fee and arbitrator's fee advanced by the Seller. Each party shall bear its own attorneys fees and costs.

(iii) Preliminary Procedures. If state or federal law requires the Buyer or Seller to take steps or procedures before commencing an action in court, then the Buyer or Seller must take such steps or follow such procedures, as the case may be, before commencing the arbitration. For example, Post-Closing Disputes pursuant to California Civil Code Section 895 et. seq. as hereafter amended may be subject to the non-adversarial procedures set forth in California Civil Code Section 910 through 938, prior to the initiation of any arbitration or small claims court proceeding against Seller. In addition, nothing contained herein shall be deemed a waiver or limitation of the provisions of California Civil Code Sections 1368.4, 1375, 1375.05 or 1375.1.



Buyer's Initials ________

(iv) Participation by Other Parties. Buyer and Seller, to the extent either such party is defending a claim in the arbitration, may, if it chooses, have all necessary and appropriate parties included as parties to the arbitration.

(v) Rules of Law. The arbitrator must follow California substantive law, including statutes of limitations, but strict conformity with the rules of evidence is not required except that the arbitrator shall strictly conform to all laws relating to privilege and work product. The arbitrator shall be authorized to provide all recognized remedies available at law or equity for any cause of action.

(d) Additional Rules Applicable To Certain Cases. In any arbitration in which a claim of Buyer or Seller exceeds two hundred fifty thousand dollars ($250,000) in value, the following additional rules will supplement the JAMS Rules, and govern in the event of a conflict between the following rules and the rules set forth above, the JAMS Rules, or both.

(i) Qualifications of Arbitrator. In addition to the requirements of **Paragraph 11.2(c)** above, the arbitrator shall be a retired judge of the California Superior Court, a California Court of Appeal, or the California Supreme Court.

(ii) Rules of Law. The California Evidence Code shall apply.

(iii) Written Decision. Within 30 days after the hearing is closed, the arbitrator must issue a written decision. If either Buyer or Seller requests it, the arbitrator must issue a reasoned award.

(e) Procedure for Appeal of Certain Cases. In any arbitration in which a claim or arbitration award of Buyer or Seller exceeds five hundred thousand ($500,000) in value, Buyer and Seller hereby adopt and agree to the JAMS Optional Appeal Procedure. The following additional rules will supplement the JAMS Optional Appeal Procedure and govern in the event of a conflict between the following rules and the JAMS Optional Appeal Procedure.

(i) Right of Appeal. There shall be no right to appeal unless the oral evidence received by the arbitrator was preserved in a manner such that it can be converted to an accurate and reliable written transcript.

(ii) Appellate Panel. An appeal shall be decided by one neutral appeal arbitrator unless either party, within the time permitted for the appointment of the appeal arbitrator, elects to have the appeal decided by a panel of 3 appeal arbitrators. Any party who elects to have an appeal decided by a panel of 3 appeal arbitrators agrees to be solely responsible for the cost of having 2 additional appeal arbitrators. The sole appeal arbitrator, or at least one member of any panel of 3 arbitrators, shall have prior experience as a member of an appellate panel of the California Court of Appeal.

(iii) Issues on Appeal. The only issues that may be considered on appeal are: (1) the award of money was excessive; (2) the award of money was insufficient; (3) the arbitrator awarded non-monetary relief that was inappropriate; (4) a party who received non-monetary relief should have received other or additional relief. A majority of the appeal arbitrators may affirm the arbitration award or make any alternative award they find to be just, but they must not reject the arbitrator's decisions (a) that a particular party is entitled to relief of some nature or amount or (b) that a particular party is responsible to provide relief of some nature or amount.

(iv) Expenses and Costs on Appeal. The fees charged by JAMS and the appeal arbitrator(s) shall be advanced by the Seller, except as provided in **Paragraph 11.2(c)(ii)** above. The party who files the appeal must, at its sole expense, provide JAMS and all non-appealing parties with a certified copy of the hearing transcript, and must provide JAMS with copies of all documentary evidence and all other tangible evidence received by the arbitrator. If more than one party appeals, the appealing parties must share equally the cost of the transcript and copies of all other documentary and tangible evidence received by the arbitrator. The appeal arbitrators may, within 30 days of their determination award costs of the nature provided in the Federal Rules of Appellate Procedure. If the Seller is the prevailing party on appeal, the appeal arbitrator(s) may, in his, her or their discretion and only to the extent permitted by law and JAMS Minimum Standards Of Procedural Fairness, include all or part of the JAMS fee and arbitrator's fee advanced by the Seller in the award of costs on appeal.

(v) New Evidence. The appeal arbitrators must not receive new evidence. The appeal arbitrators must make their decision based only on the evidence that was presented to the arbitrator, except that the appeal arbitrators may visit any site involved in the Post-Closing Dispute.

(f) Federal Arbitration Act. Buyer and Seller acknowledge that because many of the materials and products incorporated into the home are manufactured in other states, this Purchase Agreement evidences a transaction involving interstate commerce and the Federal Arbitration Act (9 U.S.C. §1, et seq.) now in effect and as it may be hereafter amended will govern the interpretation and enforcement of the arbitration provisions of this Purchase Agreement.

(g) Final and Binding Award. The decision of the arbitrator or, if an appeal is heard, the decision of the appeal arbitrators, shall be final and binding. A petition to confirm, vacate, modify or correct an award may be filed in any court of competent jurisdiction in the county in which the Property is located, but the award may be vacated, modified or corrected only as permitted by the Federal Arbitration Act.

11.3 Agreement to Arbitrate BY INITIALING IN THE SPACE BELOW, BUYER AND SELLER AGREE TO HAVE ALL POST-CLOSING DISPUTES DECIDED BY NEUTRAL ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT AND THE CALIFORNIA ARBITRATION ACT, TO THE EXTENT THE CALIFORNIA ARBITRATION ACT IS CONSISTENT WITH THE FEDERAL ARBITRATION ACT, AND BUYER AND SELLER ARE GIVING UP ANY RIGHTS BUYER AND SELLER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW BUYER AND SELLER ARE GIVING UP THEIR RESPECTIVE JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THIS PURCHASE AGREEMENT. IF BUYER OR SELLER REFUSES TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, BUYER OR SELLER MAY BE COMPELLED TO ARBITRATE UNDER THE FEDERAL ARBITRATION ACT AND THE CALIFORNIA ARBITRATION ACT, TO THE EXTENT THE CALIFORNIA ARBITRATION ACT IS CONSISTENT WITH THE FEDERAL ARBITRATION ACT.

I/we have read and understand the foregoing and agree to submit disputes to binding arbitration.

Buyer's Initials   Buyer's Initials   Seller's Initials



Buyer's Initials (________)

12. ADDITIONAL PROVISIONS

12.1 No Contingency. The Close of Escrow is not contingent upon the sale of any residences or other property owned by Buyer.

12.2 Severability. If any portion of this Purchase Agreement is declared by any court of competent jurisdiction to be invalid, illegal or unenforceable, such portion shall be deemed severed from this Purchase Agreement, and the remaining parts of this Purchase Agreement shall remain in full force and effect.

12.3 No Waiver. Seller's waiver of any term or provision of this Purchase Agreement shall not be construed as a waiver of any other term or provision of this Purchase Agreement, or of any subsequent performance required under this Purchase Agreement.

12.4 Notices. With the exception of Seller's or Escrow Holder's notice to Buyer of the Closing Date, or as otherwise expressly provided for in this Purchase Agreement or by law, all notices, instructions, demands and other communications given hereunder shall be set forth in writing and shall be personally served or delivered, pre-paid, by a recognized overnight courier, addressed to the party's and/or Escrow Holder's address set forth on the signature page of this Purchase Agreement. All such written notices, instructions, demands and other communications shall be deemed delivered upon personal delivery, or 2 business days after deposit with an overnight courier, except that if Escrow Holder has attempted to deliver a notice and Buyer and/or Seller refuses to accept same, such party shall be deemed to have received such notice. Notices of construction defect claims under the Statute shall be served upon Seller at the address specified in Paragraph 8.8(b) above.

12.5 Successors and Assigns. This Purchase Agreement and the rights of Buyer hereunder may not be assigned, sold, transferred or hypothecated by Buyer voluntarily, involuntarily, or by operation of law without Buyer's first having obtained Seller's written consent, which may be withheld in Seller's sole discretion. This Purchase Agreement and the rights, duties and obligations of the parties shall be binding upon and shall inure to the benefit of the successors and assigns of Seller and, subject to the preceding sentence, to the heirs, executors, administrators, successors and permitted assigns of Buyer.

12.6 Counterparts. This Purchase Agreement may be signed in one or more counterparts, each of which independently shall have the same effect as if it were the original, and all of which together shall constitute one and the same Purchase Agreement.

12.7 Survival. All obligations referred to herein to be performed at a time or times after the Close of Escrow, all provisions hereof relating to a time after the Close of Escrow, and all representations and acknowledgments contained herein, shall survive the Close of Escrow and the delivery of Seller's Grant Deed.

12.8 Applicable Law. This Purchase Agreement shall be construed and enforced in accordance with the laws of the State of California, except where federal law is expressly made applicable.

12.9 Broker; Seller's Exclusive Agent. Buyer represents and warrants that, except for any cooperating broker identified on the "Disclosure Regarding Real Estate Agency Relationships" provided by Seller to Buyer, Buyer has engaged no broker or finder in connection with this transaction, and agrees to defend and hold Seller harmless from claims by any broker or finder inconsistent with this representation and warranty. Buyer is aware that Seller's salesperson is an agent of the Seller exclusively and acknowledges receipt of the Disclosure Regarding Real Estate Agency Relationships.

12.10 Time is of the Essence. Time is of the essence of this Purchase Agreement and failure of Buyer to perform within the time limits described above will allow Seller to terminate this Purchase Agreement.

12.11 Addenda. The Addenda that are checked below are incorporated into this Purchase Agreement and are part of this Purchase Agreement. Please read these carefully.

[X] Escrow Holder's General Escrow Instructions
[X] General Disclosure Addendum
[X] Project Specific Disclosure Addendum
[X] Common Intrest Subdivision
[ ] Condtional Public Report Addendum
[X] Notice of Affiliated Business Arrangement Addendum
[ ] Optional Items and Upgrades Addenum
[ ] Sale of Existing Residence (Contigency) Addendum
[ ] Addtional Terms &and Conditions Addendum
________________________________
________________________________

12.12 Entire Agreement. This Purchase Agreement contains the entire agreement between the parties and the entire escrow instructions between Escrow Holder and the parties. All prior statements and representations, whether oral or written, are hereby superseded by this Purchase Agreement. The terms of this Purchase Agreement may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. Buyer and Seller further intend that this Purchase Agreement shall constitute the complete and exclusive statement of its terms. No addition or modification of any terms of this Purchase Agreement shall be effective unless set forth in writing and signed by Buyer and Seller. No sales agent or representative of Seller has authority to modify the terms of this Purchase Agreement.

12.13 Buyer Remedy Regarding Disclosures. After acceptance of this Purchase Agreement, Seller may in good faith provide additional disclosures or corrected disclosures regarding the Property. If such disclosure is material, Buyer may, prior to Close of Escrow, terminate this Purchase Agreement and receive a refund of the Deposit, provided Buyer gives Seller written notice of termination within 3 days after delivery in person, by facsimile, or 5 days after mailing, of such additional or corrected disclosure.

12.14 Offer and Acceptance. Buyer acknowledges that Buyer has carefully read and understands each and every provision of this Purchase Agreement. Execution of this Purchase Agreement by Buyer and by Seller's sales agent or representative shall constitute only receipt for the Deposit and Offer, which offer shall not be binding unless accepted by Seller, as evidenced by the execution of this Purchase Agreement by a duly authorized officer of Seller. Seller reserves the right to refuse to accept such Offer for any reason whatsoever, at its sole and absolute discretion. Buyer acknowledges that Seller's sales agents and representatives are not authorized to accept this Offer, and that receipt of the Deposit by Seller's sales agent or representative shall not constitute an Acceptance of this Offer by Seller.



Buyer's Initials (SYK)(______)

12.15 Right of Buyer to Terminate Offer. Seller is hereby granting Buyer 3 days after the date of Buyer's signature set forth below to review this Purchase Agreement and all other documents set forth on the Receipt for Documents signed by Buyer concurrently with this Purchase Agreement. During this time Buyer may terminate its Offer under this Purchase Agreement and cancel any Escrow by delivering a notice of termination to Escrow Holder and Seller by recognized overnight courier addressed to the party's and/or Escrow Holder's address set forth on the signature page of this Purchase Agreement, or by or personal service. If Buyer elects to terminate its Offer and this Purchase Agreement, all of Buyer's deposits shall be refunded to Buyer within 15 days of such notice, any Escrow shall be canceled at Seller's expense and the parties shall have no further rights or obligations with respect to the Property under this Purchase Agreement. BUYER'S FAILURE TO DELIVER A NOTICE OF TERMINATION AS SET FORTH ABOVE SHALL CONSTITUTE BUYER'S ELECTION NOT TO TERMINATE THIS PURCHASE AGREEMENT UNDER THE PROVISIONS OF THIS PARAGRAPH 12.15.

AGENT'S RECEIPT FOR BUYER'S DEPOSIT
(AGENT'S SIGNATURE DOES NOT CONSTITUTE SELLER'S SIGNATURE OR ACCEPTANCE OF THIS PURCHASE CONTRACT)

Date: 07-26-07

[signature]
(Sales Agent's Signature)

BUYER

[signature]
(Signature)

(Signature)

(Signature)

(Signature)

Offer Date: 26 July 2007

BUYER'S PHONE NUMBERS

(Home) (626) 437-3838 (Work) (626) 437-3838 (Extn)

(Home) (Work) (Extn)

(Home) (Work) (Extn)

(Home) (Work) (Extn)

(Buyer's Fax No.)

BUYER'S DESIGNATED MAILING ADDRESS:
777 6th Ave #429
San Diego, CA 92101

BUYER'S E-MAIL ADDRESS:
susie.khuu@gmail.com

ACCEPTANCE BY SELLER

Western Pacific Housing Inc., a Delaware corporation

By: [signature]
Name: LORI MILLS
Title: ASST. VICE PRESIDENT

Acceptance Date: 7/30/07

SELLER'S DESIGNATED MAILING ADDRESS/PHONE:
5790 Fleet Street, Suite 210
(Street Address, No. / P.O. Boxes)
Carlsbad, California 92008
(City, State and Zip)

(Phone No.) (760) 929-1600
(Fax No.) (760) 929-1601

ACCEPTANCE BY ESCROW HOLDER

The undersigned hereby agrees to (i) accept the instructions contained in this Purchase Agreement, (ii) be the Escrow Holder under the Purchase Agreement for the fees therein described, and (iii) be bound by said instructions in the performance of its duties as Escrow Holder.

Dated: 9/25, 2007 By: [signature]
Escrow Officer



Buyer's Initials (SYK)

12.15 Right of Buyer to Terminate Offer. Seller is hereby granting Buyer 3 days after the date of Buyer's signature set forth below to review this Purchase Agreement and all other documents set forth on the Receipt for Documents signed by Buyer concurrently with this Purchase Agreement. During this time Buyer may terminate its Offer under this Purchase Agreement and cancel any Escrow by delivering a notice of termination to Escrow Holder and Seller by recognized overnight courier addressed to the party's and/or Escrow Holder's address set forth on the signature page of this Purchase Agreement, or by or personal service. If Buyer elects to terminate its Offer and this Purchase Agreement, all of Buyer's deposits shall be refunded to Buyer within 15 days of such notice, any Escrow shall be canceled at Seller's expense and the parties shall have no further rights or obligations with respect to the Property under this Purchase Agreement. BUYER'S FAILURE TO DELIVER A NOTICE OF TERMINATION AS SET FORTH ABOVE SHALL CONSTITUTE BUYER'S ELECTION NOT TO TERMINATE THIS PURCHASE AGREEMENT UNDER THE PROVISIONS OF THIS PARAGRAPH 12.15.

AGENT'S RECEIPT FOR BUYER'S DEPOSIT
(AGENT'S SIGNATURE DOES NOT CONSTITUTE SELLER'S SIGNATURE OR ACCEPTANCE OF THIS PURCHASE CONTRACT)

Date: 07-26-07

(Sales Agent's Signature)

BUYER

(Signature)

(Signature)

(Signature)

(Signature)

Offer Date: 26 July 2007

BUYER'S PHONE NUMBERS

| | | |
|---|---|---|
| (Home) (626) 437-3838 | (Work) (626) 437-3838 | (Extn) |
| (Home) | (Work) | (Extn) |
| (Home) | (Work) | (Extn) |
| (Home) | (Work) | (Extn) |

(Buyer's Fax No.)

BUYER'S DESIGNATED MAILING ADDRESS:
777 6th Ave #429
San Diego, CA 92101

BUYER'S E-MAIL ADDRESS:
susie.khuu@gmail.com

ACCEPTANCE BY SELLER

Western Pacific Housing Inc., a Delaware corporation

By:
Name: LORI MILLS
Title: ASST. VICE PRESIDENT

Acceptance Date: 7/30/07

SELLER'S DESIGNATED MAILING ADDRESS/PHONE:
5790 Fleet Street, Suite 210
(Street Address, No. / P.O. Boxes)
Carlsbad, California 92009
(City, State and Zip)

(Phone No.) (760) 929-1600
(Fax No.) (760) 929-1601

ACCEPTANCE BY ESCROW HOLDER

The undersigned hereby agrees to (i) accept the instructions contained in this Purchase Agreement, (ii) be the Escrow Holder under the Purchase Agreement for the fees therein described, and (iii) be bound by said instructions in the performance of its duties as Escrow Holder.

Dated: ____________, 20__ By: ____________
Escrow Officer

Community: La Boheme
Residential Unit No: 2107

# ADDENDUM TO PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS FOR LA BOHEME

## MODERATE INCOME AFFORDABLE HOUSING ADDENDUM

This Moderate Income Affordable Housing Addendum To Purchase Agreement and Escrow Instructions For La Boheme ("Moderate Income Addendum") is a part of the Purchase Agreement between the undersigned Buyer and Seller (the "Purchase Agreement") for the sale of the above referenced Condominium, which is referred to as the "Property" in the Purchase Agreement.

General Disclosure Regarding Affordable Housing. The home you are purchasing is located in the "La Boheme" condominium community. La Boheme is a balanced community that includes housing affordable to median and moderate income households. The affordable housing requirements are set forth in (i) Chapter 14, Article 2, Division 13 of the San Diego Municipal Code ("Inclusionary Ordinance"); and (ii) that certain Disposition and Development Agreement ("Affordable Housing Agreement") between Western Pacific Housing, Inc., a Delaware corporation ("Seller") and the Redevelopment Agency of the City of San Diego ("Agency") dated as of March 30, 2004, and filed in the Office of the Agency on April 13, 2004 as Document No. D-03752 / R-03752.

The purpose of the Affordable Housing Agreement is to make it possible for lower income households to purchase a home in La Boheme at a price that is affordable. 45 of the 224 homes in La Boheme are designated as "Affordable Units." The Affordable Units are broken down into two levels of affordability: (i) 23 of the homes will be affordable at or below 100% of area median income ("AMI") (the "Median Income Homes") for median income households ("Median Income Buyers") and (ii) 22 of the homes will be affordable at or below 120% of AMI (the "Moderate Income Homes") for moderate income households ("Moderate Income Buyers"). If you are signing this Moderate Income Addendum, then you are entering into a contract to purchase a Moderate Income Home and you must qualify as a Moderate Income Buyer.

In exchange for making La Boheme homes available to homebuyers at a below-market affordable price, Median Income Buyers and Moderate Income Buyers must sign a resale restriction agreement ("Resale Restriction") and a deed of trust in favor of the Agency ("Deed of Trust") in order to assure the continued affordability of La Boheme homes over a 45-year period. The major terms and conditions of the Affordable Housing Agreement, Resale Restriction and Deed of Trust are summarized below.

***Please note that the following is merely a summary of the major terms and conditions of the affordable housing requirements for La Boheme. You are advised to read all of the underlying documents referenced in this Addendum and to consult with an attorney in order to fully understand the relevant terms and conditions.***

1. Purchase Price. The price you are paying for your Moderate Income Home is below the market rate. Under the terms of the Affordable Housing Agreement, the price for each Moderate Income Home may not exceed the "Affordable Housing Cost." This means that the total housing costs (including your loan payments, property tax payments, special tax payments, and other categories of costs) cannot be less than 28% of the total annual income of your household as adjusted for family size.

Because of the complicated nature of this determination, the Agency will maintain procedures for calculating the Affordable Housing Cost on file and will make these procedures available upon request.

2. Eligibility. In order to purchase a Moderate Income Home at La Boheme, you must qualify as a "Moderate Income Household." This means the combined income of your household cannot be more than 120% of AMI.

3. Qualification and Re-Qualification. Your eligibility to purchase the Moderate Income Home at the Affordable Housing Cost will be verified by the Agency after you sign the Purchase Agreement and this Addendum. In addition, after you initially qualify as a Moderate Income Household, you must re-qualify at the Close of Escrow. If your income level or financial situation changes so that you fail to re-qualify, you will no longer be entitled to purchase the Moderate Income Home. If you fail to re-qualify, the Purchase Agreement and your rights under the Purchase Agreement, including this Addendum, will be terminated, and you will not have the right to purchase any home within the La Boheme community.

**Seller has no control over the qualification process and procedures, the income levels, and other requirements of the Agency. By initialing below, Buyer acknowledges that there is a risk that Buyer's household income, credit worthiness, or other financial factors may change prior to the Close of Escrow and, in such event, Buyer may fail to re-qualify to purchase the Moderate Income**

**Home and Buyer hereby assumes ~~such risk~~. In no event shall Seller be liable to Buyer for any such failure to re-qualify.**

SYK    Buyer's Initials    SYK    Buyer's Initials

4. 45-Year Resale Restriction. Under the terms of the Affordable Housing Agreement, your Moderate Income Home will be subject to a Resale Restriction that will be recorded against the Moderate Income Home at the Close of Escrow and will last for 45 years. The Resale Restriction is intended to ensure that your Moderate Income Home remains affordable during the entire 45-year period.

5. Financing. The Resale Restriction may only be subordinated to a loan you may obtain to finance the purchase of your Moderate Income Home. In addition, you cannot obtain any other loan with a deed of trust recorded against your Moderate Income Home without prior written approval of the Agency. This restriction will make it difficult to obtain financing from certain lenders and to refinance your Moderate Income Home in the future.

Buyer's Initials SYK SYK

6. Deed of Trust. You will be required to execute the Deed of Trust in favor of the Agency to secure the Resale Restriction, which will be recorded against your Moderate Income Home at the close of escrow.

7. Limitation on Transfers and Conveyances. The Resale Restriction prohibits you from selling, leasing, renting or otherwise assigning your Moderate Income Home without the express written consent of the Agency.

8. Maintenance Requirement; Inspection Rights. The Deed of Trust requires that you maintain your Moderate Income Home and related improvements in good condition and repair throughout your ownership.

9. Notice of Default Under Deed of Trust or Mortgage. You must file, in the Office of the Recorder of the County of San Diego, a request for a copy of any notice of sale or notice of default under any deed of trust against your Moderate Income Home.

10. Default Provisions; Remedies. If you attempt to sell or transfer the Moderate Income Home in violation of the Resale Restriction, the Agency may declare such transfer void and may also pursue other remedies against you, including a foreclosure of the Deed of Trust. This may result in your loss of your Moderate Income Home.

11. Notice of Intended Sale. If you intend to sell or transfer your Moderate Income Home, you must provide written notice to the Agency of such intent prior to signing any documents relating to the sale or transfer. You must provide the Agency with any information it reasonably requests. The Notice of Intended Sale must include the street address of your Moderate Income Home, the owners' full name(s), the name and existing address of the proposed purchaser, the income of the proposed purchaser with supporting documentation, and the terms of the proposed sale or transfer. The Notice of Intended Sale must be personally delivered or mailed to the Agency.

12. Eligibility of Subsequent Purchaser. Your Moderate Income Home may only be sold to another Moderate Income Household with an annual income that does not exceed 120% of area median income.

13. Limit on Resale Price. In order to ensure that your home remains affordable over the 45-year affordability period, the amount of money or other consideration you may receive for the sale or transfer of your home is limited to the Affordable Housing Cost (as defined above) for Moderate Income Unit. This means that you will not receive the benefit of any appreciation in the market value of your Moderate Income Home.

No sales representative, employee or agent of Seller has the authority to make any representation to Buyer that contradicts or is inconsistent with the information contained in this Moderate Income Addendum. Buyer acknowledges that no such representations have been made.

Buyer certifies that Buyer has read and fully understands the information and disclosures contained in this Addendum. Buyer acknowledges that the facts disclosed in this Moderate Income Addendum are important and do not constitute a complete list of all facts which should be considered by Buyer. All other provisions of the Purchase Agreement shall remain in force and effect, and this Moderate Income Addendum shall be incorporated into and be made a part of the Purchase Agreement.

BUYER:

SUSIE YEN KHUU
Buyer

[signature]
Buyer

AFFORDABLE HOUSING ADDENDUM 24464-02086-2060230.2



Buyer's Initials [initials] (________)

Community: La Boheme
Residential Unit No: 2107

# ADDENDUM TO PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS FOR LA BOHEME

## RESCISSION RIGHT ADDENDUM (AFFORDABLE HOUSING)

This Rescission Right Addendum to Purchase Agreement and Escrow Instructions For La Boheme ("Rescission Right Addendum") is a part of the Purchase Agreement between the undersigned Buyer and Seller (the "Purchase Agreement") for the sale of the above referenced Condominium, which is referred to as the "Property" in the Purchase Agreement.

1. **Affordable Units**. The Property Buyer is purchasing in the "La Boheme" condominium community is one of the units designated as an "Affordable Unit" pursuant to (i) Chapter 14, Article 2, Division 13 of the San Diego Municipal Code ("Inclusionary Ordinance"); and (ii) that certain Disposition and Development Agreement between Seller and the Redevelopment Agency of the City of San Diego ("Agency") dated as of March 30, 2004, and filed in the Office of the Agency on April 13, 2004 as Document No. D-03752 / R-03752, as amended by the First Implementation Agreement dated August 3, 2006, between Seller and the Agency ("Affordable Housing Agreement").

2. **Eligibility and Qualification**. Buyer must qualify to purchase the Property, and Buyer's eligibility must be verified by the San Diego Housing Commission ("Commission"). As of the date of the Purchase Agreement, the Commission had not yet verified Buyer's eligibility to purchase the Property.

3. **Right of Rescission**. BUYER MAY CANCEL THE PURCHASE AGREEMENT BY GIVING WRITTEN NOTICE TO SELLER ANY TIME BEFORE MIDNIGHT OF THE THIRD DAY FOLLOWING THE DATE BUYER ATTENDS THE COMMISSION'S "FIRST-TIME HOME BUYER" CLASS, AS EVIDENCED BY THE COMMISSION'S RECORDS. IF BUYER FAILS TO DELIVER A NOTICE OF TERMINATION WITHIN SUCH THREE-DAY PERIOD, BUYER SHALL BE DEEMED TO HAVE ELECTED NOT TO TERMINATE THIS AGREEMENT AND TO HAVE REAFFIRMED ALL OF THE TERMS AND PROVISIONS SET FORTH IN THE AGREEMENT.

No sales representative, employee or agent of Seller has the authority to make any representation to Buyer that contradicts or is inconsistent with the information contained in this Rescission Right Addendum. Buyer acknowledges that no such representations have been made.

Buyer certifies that Buyer has read and fully understands the information and disclosures contained in this Addendum. Buyer acknowledges that the facts disclosed in this Rescission Right Addendum are important and do not constitute a complete list of all facts which should be considered by Buyer. All other provisions of the Purchase Agreement shall remain in force and effect, and this Rescission Right Addendum shall be incorporated into and be made a part of the Purchase Agreement.

BUYER:

_______________________
Buyer

_______________________
Buyer

SELLER:
Western Pacific Housing Inc., a Delaware corporation

By: _______________________
Name: LORI MILLS
Title: ASST. VICE PRESIDENT

Project: La Boheme .PJ
Residential Unit/Lot: 2107

## PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS ADDENDUM

## ADDITIONAL TERMS AND CONDITIONS

This Purchase Agreement and Escrow Instructions Addendum (**"Addendum"**) is attached to and forms a part of the Purchase Agreement and Escrow Instructions (**"Purchase Agreement"**), executed between Buyer and Seller for the Property described in the Purchase Agreement. Any capitalized terms not otherwise defined herein shall have the meanings as set forth in the Purchase Agreement. If there is a conflict between the Purchase Agreement and the terms and provisions of this Addendum, the terms and provisions of this Addendum shall control.

Buyer and Seller agree to the following terms and conditions:

A. White Appliance Pkg (30" cook top w/ ceramic glass top, microwave/hood combo, 5 cycle dishwasher)
B. Standard Cabinets: Beech Wood Shaker Style and Standard White Tile Counters
C. Standard flooring as selected and installed by builder

All other terms and conditions of the agreement remain in full force and effect, subject to Seller's acceptance.

I/we agree to the additional terms and conditions set forth above.

**BUYER:**

Buyer

Buyer

**SELLER:**
Western Pacific Housing, Inc., a Delaware corporation

By:

Name: LORI MILLS
ASST. VICE PRESIDENT

Title:

Community: La Boheme
Residential Unit No: 2107

## ESCROW INSTRUCTIONS ADDENDUM

This Escrow Instructions Addendum ("Addendum") is attached to and forms a part of the Purchase Agreement and Escrow Instructions between Seller and Buyer (the "Purchase Agreement") for the purchase by Buyer of the Property described in the Purchase Agreement and constitutes instructions to the Escrow Holder identified on the first page of the Purchase Agreement. Any capitalized terms not otherwise defined in this Addendum shall have the meanings set forth in the Purchase Agreement.

1. GOOD FUNDS. In accordance with 12413.1 of the California Insurance Code, no title insurance company or controlled escrow holder can disburse funds from an escrow account until such funds have been collected, i.e., are "good funds". Consequently, the funds required from Buyer and any Lender to be deposited immediately prior to the Close of Escrow must be in the form of a wire transfer or cashier's check. Any other form of check deposited will be subject to a 3 to 7 day clearance period prior to the Close of Escrow and the disbursement of funds may delay the closing. If any check submitted to the Escrow Holder is dishonored for payment, Escrow Holder is authorized to notify all principals and/or their respective agents of such nonpayment.

2. ADDITIONAL FEES. Each party shall reimburse Escrow Holder for any special messenger, courier, express mail or bank wire fees incurred on their behalf. The fees agreed to be paid for Escrow Holder's services are for ordinary and usual services only, and should there be any extraordinary or unusual services rendered by Escrow Holder, the parties herein agree to pay reasonable compensation to Escrow Holder for same. The fees charged by Escrow Holder for services from third party providers may include a "mark up" over the direct cost of such services to reflect the averaging of direct, administrative and overhead charges of Escrow Holder for such services.

3. ADDRESS OF RECORD. All documents and funds due the parties are to be mailed to the addresses set out in the Purchase Agreement, unless otherwise instructed. Buyer's address following the Close of Escrow shall be deemed to be the new property address unless Escrow Holder is notified to the contrary by Buyer. Buyer and Seller's signatures on any documents and/or instructions pertaining to this Escrow indicate Buyer and Seller's unconditional approval of same. The parties authorize you to destroy these instructions and records in this Escrow at any time after 10 years from the date of Close of Escrow.

4. DEPOSIT OF FUNDS. All funds received in this Escrow shall be deposited with other escrow funds in an escrow trust account or accounts of Escrow Holder, with any financial institution insured by a federal agency of the United States Government ("Depository Institution"). The Depository Institution may be an affiliate of Escrow Holder. Any funds deposited in this Escrow are insured only to the limit provided by the Federal Deposit Insurance Corporation. The maintenance of such escrow accounts with some Depository Institutions may result in Escrow Holder's being provided with an array of bank services, accommodations or other benefits by the Depository Institution. Escrow Holder or its affiliates also may elect to enter into other business transactions with or obtain loans for investment or other purposes from the Depository Institution. Said funds will not earn interest unless the instructions otherwise specifically state that funds shall be deposited in an interest bearing account and Escrow Holder may charge a reasonable fee for establishing such an account. All disbursements shall be made by Escrow Holder's check unless otherwise instructed in writing. Escrow Holder is authorized to transfer any Buyer's funds on deposit under any reservation instrument executed by Buyer to this Escrow for credit to the Buyer's account.

5. NOTICE OF CANCELLATION. If for any reason this Escrow cannot be closed within the period of time set forth in the Purchase Agreement, Escrow Holder shall nevertheless close it as soon as possible thereafter unless notice of cancellation is given by either party. Any notice of cancellation affecting this Escrow, for whatever reason and whenever given, may be given only in writing delivered to Escrow Holder. On receipt of such notice, Escrow Holder shall within 3 business days mail one copy to the other party. Except for demand of cancellation pursuant to any liquidated damages provision in the Purchase Agreement, unless written objection thereto shall be received by Escrow Holder as provided in the Purchase Agreement, Escrow Holder is authorized to comply with any instructions in such notice and to cancel the Escrow upon payment of Escrow Holder's cancellation charges. In the event written objection is received within the time stated or in the event conflicting claims are made upon Escrow Holder in this Escrow, Escrow Holder may refuse to take further action hereunder and may interplead the parties in any court of competent jurisdiction, in which case Escrow Holder shall be entitled to its costs as further provided in **Paragraph 17** below.

6. PROPERTY TAX INFORMATION. The Property may be presently assessed with other property and that the real property taxes, special taxes and assessments may not be segregated by the time this Escrow closes. If the real property taxes, special taxes and assessments are segregated and a tax bill is issued for the Property prior to the Close of Escrow, at the Close of Escrow, Escrow Holder shall prorate the above-mentioned taxes based on the most-recent tax bill for the Property. If no segregated tax bill is issued for the Property prior to the Close of Escrow, then Escrow Holder shall prorate the same based upon Seller's determination of the amount of real property taxes, special taxes and assessments applicable to the Property for the then-current fiscal year, which Seller shall submit to Escrow Holder in writing prior to the Close of Escrow. All prorations and adjustments are to be made on the basis of a 30 day month. Escrow Holder and Seller are not liable or responsible for the accuracy or adequacy of the figures provided by Seller to be used for these proration purposes.

7. SUPPLEMENTAL TAXES. Any supplemental assessment billing will be sent to Buyer directly by the County Tax Assessor and will be in addition to the normal tax installments. Buyer shall have the sole responsibility for the payment of all taxes and assessments, if any, related to the period after the Close of Escrow shown on supplemental tax bill. The supplemental tax bill is payable in accordance with the instructions contained therein. If the supplemental taxes are not paid before the date they become delinquent, a penalty will be due. If Buyer has an impound account for tax purposes, Buyer is aware that monthly payment to such account may be increased to reflect the increase in tax liability as indicated on the supplemental tax bill. Escrow Holder is not responsible for determining if Buyer's Lender's request for impound funds is sufficient to include payment of contemplated supplemental taxes and it will be the responsibility of Buyer to contact its Lender with regard to payment of those supplemental taxes.

8. NO WITHHOLDING. Section 1445 of the INTERNAL REVENUE CODE provides that a transferee of a U.S. real property interest must withhold tax if the transferor (i.e., Seller) is a foreign person. Similarly, §§ 18622, 18805 and 26131 of the California REVENUE AND TAXATION CODE provide that a transferee of a California real property interest must withhold tax if the funds from the transferee are to be disbursed either to a transferor with a last known address outside of the State of California or to the financial intermediary of the transferor, if the transferor is a non-resident of California. To inform Buyer that withholding of tax is not required in connection with this transaction, Seller certifies that (a) Seller is not a foreign corporation, foreign partnership, foreign trust or foreign estate, and (b) Seller's known street address and its principal place of business are both within the State of California. Buyer and



Buyer's Initials (SYK)

Seller acknowledge that Escrow Holder has provided notice of these provisions, and, in light of the representations of Seller made herein, that Escrow Holder will take no action regarding the withholding.

9. AUTHORIZATION TO FURNISH COPIES. Escrow Holder shall furnish a copy of this Purchase Agreement, any amendments hereto, closing statements and/or any other documents deposited in the Escrow to Seller, to Buyer, the Lender, and/or Buyer's attorney, upon request of Seller, of Buyer, the Lender or Buyer's attorney, as the case may be.

10. INSURANCE POLICIES. In all matters relating to insurance, Escrow Holder may assume that each policy required to be obtained by Buyer is in force and that the necessary premium has been paid. Escrow Holder is not responsible for obtaining fire, hazard or liability insurance for Buyer, unless Escrow Holder has received specific written instructions to obtain such insurance prior to Close of Escrow from the Buyer or Buyer's lender.

11. TAXPAYER IDENTIFICATION NUMBER REPORTING AND DISCLOSURE. Federal law requires Escrow Holder to report Seller's taxpayer identification number ("TIN"), forwarding address, and the gross sales price to the Internal Revenue Service ("IRS"). To comply with the USA PATRIOT Act, certain taxpayer identification information (including, but not limited to, the TIN) may be required by Escrow Holder from certain persons or entities involved (directly or indirectly) in the transaction prior to closing. Federal and state laws require that certain forms include a party's TIN and that such forms or copies of the forms be provided to the other party and to the applicable governmental authorities. Parties to a real estate transaction involving seller-provided financing are required to furnish, disclose, and include the other party's TIN in their tax returns. Escrow Holder is authorized to release a party's TINs and copies of statutory forms to the other party and to the applicable governmental authorities in the foregoing circumstances. The parties agree to hold Escrow Holder harmless against any fees, costs, or judgments incurred and/or awarded because of the release of their TIN as authorized herein.

12. RETENTION OF FUNDS. If for any reason funds are retained in Escrow following the closing, Escrow Holder may deduct a monthly charge therefrom for its acting as custodian thereof. If there is no action taken on the Escrow within 6 months after the Close of Escrow, Escrow Holder's agency obligation shall terminate at Escrow Holder's option, and all documents, monies or other Items held by Escrow Holder in the Escrow shall be returned to the party or parties depositing the same, subject to Escrow Holder's obligation to retain the records set forth in **Paragraph 3**.

13. PRELIMINARY CHANGE OF OWNERSHIP FORM. Buyer is required to furnish a Preliminary Change of Ownership form with the Grant Deed and the County Recorder may charge a penalty if the form is not filed or is unacceptable. Escrow Holder will furnish the required form to Buyer, but will not accept responsibility for its acceptance or rejection.

14. ESCROW HOLDER NOT LIABLE. Escrow Holder shall not be liable for the sufficiency or correctness as to form, content, manner of execution or validity of any instruments or reports deposited in this Escrow or ordered by Escrow Holder as an accommodation to the parties, or as to identity, authority or rights of any person executing the same or for failure to comply with any of the provisions of any agreements or other instruments filed herein and referred to herein. Escrow Holder shall not be concerned with any matters relating to construction, warranties or other agreements made between Buyer and Seller over which Escrow Holder has no control and/or which agreements may survive Close of Escrow.

15. DEMANDS. Escrow Holder shall pay at the Close of Escrow, from Seller's funds, any demand for reconveyance, releases or satisfactions of any encumbrances of record and any taxes, payment and/or release which are necessary to place title in condition to close this Escrow.

16. SUPPLEMENTAL INSTRUCTIONS. Any amended, supplemental or additional escrow instructions shall be subject to the conditions contained in this Addendum and must be in writing signed by Buyer and Seller and delivered to Escrow Holder. Such supplemental instructions may be executed in counterparts.

17. CONFLICTING DEMANDS OR DISPUTES. If conflicting demands or notices are made or served upon Escrow Holder or any controversy arises between the parties hereto or with any third party growing out of or relating to this Escrow, Escrow Holder shall have the absolute right to withhold all further proceedings in this Escrow until receipt of satisfactory written notice of the settlement of the controversy by agreement of the parties hereto, or by final judgment of an arbitrator or court of competent jurisdiction and/or Escrow Holder may interplead the parties in any court of competent jurisdiction. All parties to this Escrow hereby jointly and severally promise and agree to pay promptly on demand, as well as to indemnify Escrow Holder and hold Escrow Holder harmless from and against, all litigation and interpleader costs, damages, judgments, attorney's fees, expenses, obligations and liabilities of every kind which, in good faith, Escrow Holder may incur or suffer in connection with or arising out of this Escrow unless Escrow Holder is found or adjudged to have engaged in willful misconduct or negligence. Buyer and Seller shall each bear their respective attorneys' fees and costs. Notwithstanding any of the foregoing provisions of this **Paragraph 17**, and in accordance with DRE Regulation 2791(c)(4)(C), only Seller and not Buyer shall indemnify and hold Escrow Holder harmless from any claim by Buyer arising out of payment of purchase money (as defined in DRE Regulation 2791(a)) to Seller pursuant to a waiver by Buyer of the right to a determination of default by a court or arbitrator.

ESCROW HOLDER CONDUCTS ESCROW BUSINESS UNDER CERTIFICATE OF AUTHORITY NO. 2549-4 ISSUED BY THE CALIFORNIA DEPARTMENT OF INSURANCE.





Buyer's Initials (______)

Community: La Boheme
Residential Unit No: 2107

## COMMON INTEREST SUBDIVISION ADDENDUM

This Common Interest Subdivision Addendum ("**Addendum**") is attached to and forms a part of the Purchase Agreement and Escrow Instructions executed between Buyer and Seller ("**Purchase Agreement**") for the Property described in the Purchase Agreement. Any capitalized terms not otherwise defined herein shall have the meanings set forth in the Purchase Agreement. If there is a conflict between the Purchase Agreement and the terms and provisions of this Addendum, the terms and provisions of this Addendum shall control.

1. HOMEOWNER ASSOCIATION(S). Buyer will become a member of the following homeowners association(s) ("Association(s)") at Close of Escrow:

Project Association: La Boheme Owners Association

Upon the recordation of Seller's Grant Deed, Buyer will automatically become a "Member" of the applicable Association(s) referenced above.

2. CAPITAL CONTRIBUTION(S). Buyer agrees at Close of Escrow to pay through escrow to the Association(s) the capital contribution(s) set forth in the CC&Rs (described below). These amounts are currently estimated to be equal to:

Project Association: $ 688.00 to $888.00 based on Square Footage

These amounts are subject to adjustment at the Close of Escrow if the amounts have been calculated based upon the amount of monthly assessments to the Association(s) if there are changes in the amount of assessments prior to the Close of Escrow.

These funds represent "start-up" funds for operating the common areas and/or property owned by the applicable Association and are not a prepayment of assessments or a part of the Purchase Price for the Property. Upon a subsequent resale of the Property by Buyer to another purchaser, Buyer will not obtain a refund of his or her Capital Contribution(s) from the Association(s).

3. ASSESSMENTS. Buyer will be required to pay the assessments of each Association and that such assessments shall be prorated between Buyer and Seller as of the Close of Escrow. Buyer acknowledges his or her understanding that the regular assessments are subject to change from time to time by the Association(s) Board(s) of Directors and the Association(s)' budgets may anticipate changes when new phases are brought into the project.

4 DECLARATIONS. The Property to be conveyed under the Purchase Agreement is subject to the Declaration of Covenants, Conditions and Restrictions ("**CC&Rs**") for each of the above described Associations.

5. CONDITIONS TO CLOSE. In addition to the conditions set forth in the Purchase Agreement, the Close of Escrow is subject to satisfaction of each of the following requirements, which are conditions precedent to Buyer's obligation to close Escrow under the Purchase Agreement:

5.1 Blanket Encumbrances. Any and all blanket encumbrances, as defined in Section 11013 of Business and Professions Code against the Property have been fully released and reconveyed. For purposes of compliance with Section 11013.2(a) of the Business and Professions Code, a release from a blanket encumbrance resulting from a deed of trust or mortgage against the Property shall require satisfaction of either of the following: (i) an instrument has been duly recorded unconditionally reconveying and releasing the Property from the lien or charge of such deed of trust; or (ii) the Buyer is notified that an agreement or demand constituting a release agreement as defined in Regulation 2791.1(b)(2)(A) has been duly deposited with the Escrow Holder and available to the Buyer on request for each such deed of trust, and the Buyer will be provided a policy of title insurance insuring the Buyer against loss by reason of each such deed of trust;

5.2 Notice of Completion or Bond. Seller has either (i) recorded a Notice of Completion, as defined in Section 3093 of the Civil Code, for the construction of all common facilities, improvements, landscaping and other structures situated on the Phase in which the Property is located, if any or (ii) has deposited with Escrow Holder a bond, cash deposit or other financial security in a form and in an amount acceptable to the Department of Real Estate together with appropriate instructions under the provisions of California Business and Professions Code Section 11018.5 to assure lien-free completion of the scheduled improvements which are not completed and paid for as of the date of furnishing the financial security to assure completion;

5.3 Maintenance Assessment Bond. In compliance with DRE Regulation 2792.9(a)(2), prior to the first close of an escrow for the sale of a Lot or Condominium in the Phase in which the Property is located, a Maintenance Assessment Bond in favor of the applicable Association(s) in an amount equal to 6 monthly installments of the Regular Assessments levied by the applicable Association(s) for each Lot or Condominium in this phase, has been deposited with Escrow Holder, together with a copy of Real Estate Form 643, executed by both Seller and Escrow Holder. Escrow Holder shall not release said Bond(s) until (a) escrows have closed on 80% of all Lots or Condominiums in the phase in which the Property is located; and (b) Escrow Holder has received a certified copy of a resolution of the Board of Directors of the applicable Association(s), adopted not less than thirty (30) days prior to its receipt, stating that Seller is not delinquent in the payment of any Assessments for which Seller is obligated;

5.4 Undivided Interest in Common Area. Buyer's undivided interest in the Common Area (if any) has been or is being conveyed to Buyer with title to the Property;

5.5 Subordination. The Title Company, as a condition of the Close of Escrow, will issue to Buyer an owner's policy of title insurance insuring that each monetary encumbrance of record, including but not limited to deeds of trust and mortgages, encumbering all or any portion of the Property and of the Project, will, immediately after closing, be subordinate to the Declaration(s) for the Association(s) described above, together with a Subdivision Map Act Endorsement No. 116.7.

5.6 Mechanics' Liens. The statutory period for recordation of any mechanic's liens against the Property has expired, or alternately Buyer is provided with a Policy of Title Insurance and endorsement, insuring Buyer against unrecorded mechanic's liens;

5.7 Conveyance of Association Property. If applicable, title to any "Association Property" for the applicable Phase has been conveyed free of liens to the Association; and

5.8 Notice of Non-Adversarial Procedure. Escrow Holder shall have confirmed that a Notice of Non-Adversarial Procedure under California Civil Code Section 912(f) covering the Property and, if applicable, any Association Property in the Phase in which the Property is located has been recorded.



Buyer's Initials (________)

Community: La Boheme
Residential Unit No: 2107

## NOTICE OF AFFILIATED BUSINESS ARRANGEMENT ADDENDUM

This Notice of Affiliated Business Arrangement Addendum (**"Addendum"**) is attached to and forms a part of the Purchase Agreement and Escrow Instructions (**"Purchase Agreement"**), executed between Buyer and Seller for the Property described in the Agreement. Any capitalized terms not otherwise defined herein shall have the meaning as set forth in the Agreement. If there is a conflict between the Purchase Agreement and the terms and provisions of this Addendum, the terms and provisions of this Addendum shall control.

From: Western Pacific Housing Inc., a Delaware corporation
dba D.R. Horton, America's Builder
5790 Fleet Street, Suite 210
Carlsbad, CA 92008
[SELLER]

This is to give you notice that **Seller** has a business relationship with:

DHI Mortgage Company, Ltd.
5790 Fleet Street, Suite 220
Carlsbad, CA 92008

D.R. Horton Insurance Agency, Inc.
301 Commerce Street Suite 500
Fort Worth, TX 76102

The nature of this business relationship is that these companies are corporate affiliates, each being wholly or partially owned by, or by a subsidiary of, the same parent corporation. Because of this relationship, this referral may provide **Seller** a financial or other benefit.

Set forth below is the estimated charge or range of charges for settlement services (Lender fees excluding third party fees). You are **NOT** required to use this company as a condition of your purchase of the Property from **Seller**. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| DHI Mortgage, LTD., L.P. | |
|---|---|
| **Service** | **Charge or Range** |
| Loan Origination Fee: | 0-1.5% of Loan Amount |
| Documentation Fee: | $0.00 - $330.00* |
| Underwriting Fee: | $0.00 - $430.00* |
| Loan Processing Fee: | $350.00 - $450.00* |

*These fees may vary depending upon whether the loan is originated or brokered by DHI Mortgage

**Note: A Good Faith Estimate of all settlement charges will be provided to you at or within three business days after loan application. You may be entitled to additional builder discounts paid by Seller for the purchase of a package of discounted settlement services as set forth in the Allowance for Closing Costs (and Options) Addendum to your Purchase Agreement.**

| D. R. Horton Insurance Agency, Inc. |
|---|
| **D.R. Horton Insurance Agency, Inc.** is a licensed insurance agent that offers policies of property insurance as agent for one or more insurance companies qualified to transact insurance business in the State of California. You will be provided a separate proposal or quote of the terms and conditions of any policy of insurance offered by **D.R. Horton Insurance Agency, Inc.** in which you express an interest. The quote will set out the estimated premium and other charges, or range of charges, by **D.R. Horton Insurance Agency, Inc.** for its insurance products or services. |

**ACKNOWLEDGMENT:**

I/we have read this disclosure form and understand that Seller is referring me/us to purchase the above-described settlement service(s) from **DHI Mortgage Company, Ltd.**, and **D.R. Horton Insurance Agency, Inc.**, and may receive a financial or other benefit as the result of this referral.

[signature] 26 July 2007
Buyer Date

_______________ _______________

Project: La Boheme .PJ
Residential Unit/Lot: 2107

## NOTICE OF ACCESS TO DATABASE REGARDING THE LOCATION OF SEX OFFENDERS DISCLOSURE ADDENDUM

This Purchase Agreement and Escrow Instructions Addendum (**"Addendum"**) is attached to and forms a part of the Purchase Agreement and Escrow Instructions (**"Purchase Agreement"**), executed between Buyer and Seller for the Property described in the Purchase Agreement. Any capitalized terms not otherwise defined herein shall have the meanings as set forth in the Purchase Agreement. If there is a conflict between the Purchase Agreement and the terms and provisions of this Addendum, the terms and provisions of this Addendum shall control.

This Notice Of Access To Database Regarding The Location Of Sex Offenders Disclosure Addendum ("Addendum") is attached to and forms a part of the Purchase Agreement and Escrow Instructions executed between Buyer and Seller ("Purchase Agreement") for the Property described in the Purchase Agreement. Any capitalized terms not otherwise defined herein shall have the meanings set forth in the Purchase Agreement.

The "Notice Of Access To Database Regarding The Location Of Sex Offenders Disclosure" contained in the General Disclosure Addendum attached as an addendum to the Purchase Agreement is hereby replaced by the following disclosure:

> **Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.**
>
> **Seller has not and will not check for any offenders in this area. It is your responsibility to check for offenders in the area in or around the Project.**





Buyer's Initials (______)

Buyer: Susie Yen Khuu / Subdivision: La Boheme / Lot&Block: 2107 / Address: 3957 30th Street #207 / Job#: 4057 40572107 / Printed by Patricia L Sugiyama on 07/26/2007

# Outside Lender Notice

| | | |
|---|---|---|
| TO: | Lender Name: | |
| | Loan Officer: | |
| | Lender Address: | |
| | Lender Phone #: | |
| | Lender Fax #: | |

| | | |
|---|---|---|
| FROM: | Western Pacific Housing, Inc., a Delaware corporation | ("Seller") |

| | | |
|---|---|---|
| Buyer: | Susie Yen Khuu | |
| Community: | La Boheme | Unit #: 2107 |
| Property Address: | 3957 30th Street #207 San Diego,CA 92104 | |
| Estimated Closing Date: | 08/31/2007 | Offer Date: 07/26/2007 |

In the event Buyer wishes to use an outside lender for the purchase of the Property, Buyer is hereby notified of the following contractual requirements regarding the financing of this purchase:

1. <u>Loan Application</u>. Buyer must submit a completed loan application to DHI Mortgage and to Buyer's lender within 5 days after Buyer's Offer.

2. **<u>If the Estimated Closing Date is less than 60 days after Buyer's Offer</u>:** Within 20 days of the Offer, but not less than 20 days prior to the Estimated Closing Date, Buyer must deliver to Seller written evidence satisfactory to Seller that Buyer has obtained final unconditional loan approval.

3. **<u>If the Estimated Closing Date is more than 60 days after Buyer's Offer</u>:** (1) Within 20 days of the Offer, Buyer must deliver to Seller written evidence satisfactory to Seller that Buyer has obtained conditional credit approval, and (2) Within 45 days of the Offer, Buyer must deliver to Seller final unconditional loan approval, subject only to the lender's approval of the value of the Property through an appraisal.

4. **<u>Components of Final Unconditional Loan Approval</u>.** Lender's final unconditional loan approval must be in writing, must state that Buyer's credit, assets and employment have been verified and must be provided by the bank or financial institution funding the loan.

5. **<u>Delay in Closing Escrow</u>.** As agreed by Buyer and Seller in Paragraph 6.4(d) of the Purchase Agreement, if Escrow does not close on the Closing Date due to Buyer's default (including, but not limited to, lender's failure to fund the loan on time), Seller may terminate the Purchase Agreement or Seller may agree to extend the Closing Date, in its sole and absolute discretion. If Seller approves an extension, Buyer shall pay Seller's carrying costs in the amount of $200 per day.

6. **<u>Cooperation with DHI Mortgage</u>.** In order for Seller to assess Buyer's ability to obtaining financing, Buyer agrees that nothing in this Outside Lender Notice shall void Buyer's contractual obligation to submit a completed loan application to DHI Mortgage and to cooperate fully with DHI Mortgage.

7. **<u>Buyer's Responsibilities</u>.** Buyer agrees to provide a copy of the Purchase Agreement and this Outside Lender Notice to Buyer's outside lender immediately. Buyer further agrees to notify Seller immediately in writing of Buyer's decision to use an outside lender and to provide the name of the lender to Seller.

8. **<u>General Provisions</u>.** Any capitalized terms not otherwise defined herein shall have the meanings as set forth in the Purchase Agreement. The Purchase Agreement remains in full force and effect between the parties and is not amended or superseded by any of the provisions of this Outside Lender Notice.

Buyers Signature: [signature] Seller: [signature]

Buyers Signature:________ Sales Agent's Signature: [signature]

3/20/07

Community: La Boheme
Residential Unit No: 2107

## FLOORING ADDENDUM

This Flooring Addendum ("**Addendum**") is attached to and forms a part of the Purchase Agreement and Escrow Instructions executed between Buyer and Seller ("**Purchase Agreement**") for the Property described in the Purchase Agreement. Any capitalized terms not otherwise defined herein shall have the meanings as set forth in the Purchase Agreement. If there is a conflict between the Purchase Agreement and the terms and provisions of this Addendum, the terms and provisions of this Addendum shall control.

### STANDARD OPTION

The Buyer may choose to have the standard flooring materials, as selected by Seller, installed by Seller's subcontractor at no additional cost to Buyer. Provided there is a choice, Buyer may select the color and/or type of the standard flooring materials to be installed in the Residence if Buyer makes such selection before the applicable cut-off date.

### UPGRADE OPTION

Buyer may choose to have "upgraded" flooring installed by Seller's flooring subcontractor. The "standard" flooring allowance will be subtracted from the cost of the "upgrade," and Buyer is responsible for paying the remaining balance. Various payment options may be available.

### ONLY AVAILABLE OPTIONS

The Standard Option and the Upgrade Option, as described above, are the only two flooring options available to Buyer. Buyer's entire Residence must contain flooring at Close of Escrow. If Buyer does not select an available flooring option before the applicable cut-off date, Buyer shall be deemed to have chosen the Standard Option, and Seller will install standard flooring materials in colors and types selected by Seller.

If Buyer wishes to install flooring that is not among the options offered by Seller or to have flooring installed by someone other than Seller's flooring subcontractor, Buyer may do so only after Close of Escrow. Buyer acknowledges that Seller will not be responsible for, nor will Seller repair, any damage to the Residence caused by a flooring contractor hired by Buyer after the Close of Escrow.

Buyer acknowledges and agrees that Seller will not increase the Purchase Price of the Property to include the flooring purchased by Buyer from any source other than Seller or Seller's flooring subcontractor. Similarly, Buyer acknowledges and agrees that Seller will not increase the Purchase Price of the Property to include any other items purchased by Buyer from any source other than Seller (including, but not limited to, window coverings, landscaping, appliances and swimming pools).





Buyer's Initials (SYK)

Community: La Boheme
Residential Unit No: 2107

## DISCLOSURE REGARDING USE OF OCCUPANCY ADDENDUM

THE UNDERSIGNED BUYER ("BUYER") ACKNOWLEDGES THAT BUYER HAS BEEN INFORMED OF THE FOLLOWING FACTS CONCERNING BUYER'S PURCHASE OF BUYER'S RESIDENCE ("RESIDENCE") AND HAS INVESTIGATED THEM TO BUYER'S SATISFACTION AND HAS RECEIVED A COPY OF THIS NOTIFICATION FOR BUYER'S RECORDS.

The conditional and/or final public report for the Project stated that Seller would incorporate an "Occupancy and Principal Residence Agreement" as an addendum to the purchase agreement utilized in the sale of residences in the Project ("Occupancy Addendum"). By signing the Occupancy Addendum, purchasers within the project represented to Seller, among other things, that they intended to occupy the unit or lot as their principal residence for a minimum of one year from the close of escrow for such residence. As Seller may have previously disclosed to you, even while the Occupancy Addendum was in use, Seller could not guarantee that the Project would be entirely owner-occupied. In addition, Seller had no obligation to enforce the Occupancy Addendum.

Seller has now elected to discontinue using the Addendum. This means that among other things, Seller will not ask buyers to represent that they will occupy the property as their primary or secondary residence, or that they will not attempt to enter into any agreement for the lease, sale or other transfer of the property which would result in the failure to occupy the property as their primary or secondary residence for a minimum of one year from the close of escrow. Because Seller will no longer ask buyers to make these representations, there is a possibility that there may be fewer owner-occupied residences within the Community.

By signing below, you are acknowledging that you have read, reviewed and approved of the contents of this Disclosure Regarding Use of Occupancy Addendum.

Residence No 2107

| | |
|---|---|
| [signature]<br>Buyer's Signature<br><br>Susie Yen Khuu<br>Print Name | 26 July 2007<br>Date |
| Buyer's Signature<br><br>Print Name | Date |





Buyer's Initials [initials]

Khuu

# WESTERN PACIFIC HOUSING INC., a DELAWARE CORPORATION
# AGENT REGISTRATION & REFERRAL FEE AGREEMENT

Today's Date: 7-22-06 Community: La Boheme

Thank you for introducing your client, Susie Khuu ("Buyer"), to our Community. D. R. Horton, America's Builder, ("Developer") appreciates the opportunity to do business with you ("Referring Agent"). As consideration for introducing Buyer, Developer hereby agrees that Referring Agent is entitled to a referral fee ("Referral Fee"), provided that all of the terms and conditions set forth in this Agent Registration & Referral Fee Agreement ("Agreement") are fully satisfied. Developer and Referring Agent hereby agree as follows:

1. Registration Conditions. This Agreement shall have no force and effect unless all of the following "Registration Conditions" are true: (a) "Today's Date" (above) is Buyer's first visit to this Community; (b) Referring Agent accompanies Buyer on Today's Date; (c) Referring Agent and Buyer complete this Agreement *in its entirety*, and sign it within 48 hours of Today's Date; (d) Referring Agent holds a current California Real Estate License;

2. Term of Registration. Upon satisfying all Registration Conditions, Referring Agent and Buyer will be registered for a period of 60 days from Today's Date ("Registration Period").

3. Referral Fee. If and only if Buyer enters into a "Purchase Agreement" with Developer for a home in the Community ("Property") during the Registration Period and Buyer closes escrow on the Property, then Developer will pay Referring Agent the Referral Fee in effect as of the date that Buyer executed the Purchase Agreement. If Buyer executes a Purchase Agreement today, Developer will pay a Referral Fee of an amount equal to 6 % of the purchase price, as stated in Paragraph 4.a of the Purchase Agreement.

Referring Agent acknowledges and agrees that Developer may change or eliminate the amount of its Referral Fee at any time, in Developer's sole and absolute discretion. Referring Agent is entitled to a Referral Fee only if a Referral Fee is in effect as of the date Buyer executes a Purchase Agreement, and all of the terms and conditions of this Agreement are fully satisfied.

4. Payment of Referral Fee. The Referral Fee will be paid to Referring Agent from escrow, generally within seven (7) business days after the close of escrow. If Referring Agent is employed by a real estate brokerage firm ("Broker"), the Referral Fee will be paid to Broker, rather than to Referring Agent. If Referring Agent leaves the employ of Broker prior to payment of a Referral Fee, Referring Agent agrees to look solely to Broker for the payment of the Referral Fee and to indemnify, defend and hold harmless Developer for the payment of the Referral Fee directly to Broker.

5. No Effect on Purchase Price. The payment of a Referral Fee has no effect on the purchase price for the Property paid by Buyer. The purchase price for the Property for a buyer represented by a real estate agent is the same as the purchase price for a buyer not represented by a real estate agent.

6. General. This Agreement may be signed in counterparts, each of which shall have the same effect as if it were the original, and all of which shall constitute one Agreement. This Agreement shall be construed and enforced in accordance with California law. This Agreement contains the entire agreement between the parties, and all prior statements and representations, whether oral or written, are superseded by this Agreement. No addition or modification of this Agreement shall be effective unless it is in writing and signed by the Referring Agent, Buyer and Developer.

By signature below, Referring Agent, Buyer and Developer acknowledge and agree to all terms and conditions of this Agreement.

Buyer's name: Susie Khuu

Buyer's address: 777 6th Ave. City San Diego Zip 92101

Buyer's home phone: 626-437-3838 Buyer's work phone: ( )

Referring Agent: Paul R. Guess Agent's phone: 760 639-4663

Broker: Prudential Calif. Realty Broker phone ( )

Broker address: 527 Encinitas Blvd City Encinitas CA Zip 92024

Broker's License #: 01127312 Broker's Federal ID#: 330403442

Buyer's Signature: [signature] Date: 7/22/07

Buyer's Signature: Date:

Referring Agent's Signature: [signature] Date: 7/22/07

Developer's Signature: [signature] Date: 7/30/07

Revision 5/26/05



Agent Registration Form (Percent of Price).doc