Valentine S. Hoy VIII, State Bar No. 121766
John T. Brooks, State Bar No. 167793
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
San Diego, California 92101-3372
Telephone No.: 619.236.1414
Fax No.: 619.232.8311

Attorneys for D.R. Horton, Inc., Western Pacific Housing, Inc., and DHI Mortgage Company, Ltd.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WILSON, REBECCA LORENZO, WAHEEDA KHAN, JORGE LOPEZ, and SUZIE KHUU, on behalf of themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>D.R. HORTON, INC., WESTERN PACIFIC HOUSING, INC. d/b/a/ D.R. HORTON, AMERICA'S BUILDINGER, DHI MORTGAGE COMPANY, LTD., L.P. and DOES 1-10,<br><br>Defendants. | Case No. 08 CV 592 BEN RBB<br><br>The Hon. Roger T. Benitez<br>Dept. 3<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION NO. 2: ALL DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Date: June 9, 2008<br>Time: 10:30 a.m.<br>Dept.: 3<br><br>Complaint Filed: March 28, 2008 |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. PLEADING STANDARDS FOR CLASS ALLEGATIONS .......... 2

III. PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO ESTABLISH A PREDOMINATE COMMON QUESTION OF LAW OR FACT .......... 4

A. Plaintiffs' "Common Issue" Allegations are Boilerplate Conclusions .......... 5

B. The Specific Fact Allegations In the Complaint Confirm That Plaintiffs' Liability Theories Necessarily Trigger A Host of Individual Issues That Dwarf Any Common Questions .......... 6

1. Closing Cost Misrepresentations .......... 7

2. "Illusory" Discounts .......... 9

3. Plaintiff Wilson's "Refusal to Deal" Claim .......... 11

4. The "Deposit Forfeiture" Theory .......... 12

C. The Need to Prove Causation and Reliance Individually Also Precludes Class Treatment .......... 14

IV. NO FACTS ARE ALLEGED TO SUPPORT PLAINTIFFS' DEMAND FOR A NATIONWIDE CLASS .......... 14

V. ALTERNATIVELY, THE COURT SHOULD REQUIRE PLAINTIFFS TO PROVIDE A MORE DEFINITIVE STATEMENT WITH RESPECT TO THE CLASS ALLEGATIONS .......... 15

VI. CONCLUSION .......... 16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 167 L.Ed.2 .... 3, 4

*Canon U.S.A., Inc. v. Superior Court*, 68 Cal.App.4th 1 (1998) .... 2

*Caro v. Proctor & Gamble*, 18 Cal.App.4th 644 (1993) .... 4

*Cattie v. Wal-Mart Stores*, 504 F. Supp. 2d 939 (S.D. Cal. 2007) .... 14

*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447 .... 4

*Clark v. Watchie*, 513 F.2d 994 (9th Cir. 1975) .... 13

*Daar v. Yellow Cab Co.*, 67 Cal.2d 695 (1967) .... 3

*Four Navy Seals & Jane Doe v. AP*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005) .... 15

*Frieman v. San Rafael Rock Quarry*, 116 Cal.App.4th 29 (2004) .... 6

*Gartin v. S&M NuTec LLC*, 245 F.R.D. 429 (C.D. Cal. 2007) .... 4, 9, 10

*Gonzalez v. P&G Co.*, 247 F.R.D. 616 (S.D. Cal 2007) .... 3, 4, 8, 14

*Goodman v. Kennedy*, 18 Cal.3d 335 (1976) .... 11

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996) .... 7

*Hall v. Time Inc.*, 158 Cal. App. 4th 847 (2008) .... 14

*Kay v. Wells Fargo & Co. N.A.*, 2007 WL 2141292 (N.D. Cal. 2007) .... 2

*Laster v. T-Mobile United States, Inc.*,
407 F. Supp. 2d 1181 (C.D. Cal. 2005)........ 14

*Lockheed Martin Corp. v. Superior Court*,
29 Cal. 4th 1096 (2003)........ 4

*Newell v. State Farm General Ins. Co.*,
118 Cal.App.4th 1094 (2004)........ 2

*Osborne v. County of Riverside*,
385 F. Supp. 2d 1048 (C.D. Cal. 2005)........ 16

*Queen City Pizza v. Domino's Pizza*,
124 F.3d 430 (3d Cir. 1997)........ 13

*Raullerson v. City of El Cajon*,
2008 U.S. Dist. LEXIS 18324 (S.D. Cal. 2008) ........ 15

*Sav-on Drugs Stores, Inc. v. Superior Court*,
34 Cal.4th 319 ........ 3

*Silva v. Block*,
49 Cal.App.4th 345 (1996)........ 2

*Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
482 F.2d 880 (5th Cir. 1973)........ 13

*St. Paul Fire & Marine Ins. Co. v. American Bank*,
33 F.3d 1159 (9th Cir. 1994)........ 11

**STATUTES**

12 United States Code section 2601........ 1

California Business & Professions Code section 17200 ........passim

California Business & Professions Code section 17203 ........ 3

California Business & Professions Code section 17204 ........ 3, 14

California Business & Professions Code section 17500 ........ 1, 14

California Business & Professions Code section 17535 ........ 3

California Code of Civil Procedure section 382 ........ 3

Federal Rule of Civil Procedure 12(e) ........ 16

Federal Rule of Civil Procedure 23 .......... 2, 3
Federal Rule of Civil Procedure 23(b)(3) .......... 4, 9
Federal Rule of Civil Procedure 23(d)(4) .......... 2

# I.

# INTRODUCTION

The case is not, and cannot be, premised on common documents, policies or procedures, because those must pass muster under an intensive regulatory scheme known as the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. The complaint tries to pick a path around the regulatory perimeter to avoid preemption, implied immunity and safe harbor defenses that would spring from the RESPA statute and regulations. Whether the five individual plaintiffs can ultimately avoid those defenses remains to be seen.

For purposes of this motion, however, it is clear that plaintiffs' effort to skirt RESPA-based defenses has forced them to choose a deception-based liability theory that necessarily leads to a swamp of thousands of unknown individual oral representations by nameless sales agents -- a veritable quagmire. Whether a particular agent made an actionable statement to a putative class member on a particular day in the last four years across the State of California or the United States is a matter of individual proof, on a case-by-case basis. And according to plaintiffs, defendants and their affiliated companies sold over 40,000 homes in just one of those four years.

Given the nature of the claims asserted, it comes as no surprise that plaintiffs have failed to allege facts sufficient to establish the basic requirements for class certification, including a predominant common question of law or fact. Quite the contrary, plaintiffs' class theory is based on the unsupported conclusion that defendants' business "practices" violate the law. But that sweeping generalization is belied by the varying and fact-specific nature of the allegations pled with respect to the five named plaintiffs. Indeed, those allegations show that there is no "common thread" that justifies class treatment.

This pleading failure is not a mere technical defect that can be cured at plaintiffs' leisure after the parties have incurred hundreds of thousands of dollars in legal expense. Under the Proposition 64 amendments to California Business & Professions Code § 17200 or § 17500, plaintiffs must plead and prove the elements for class certification in order to pursue the state law unfair competition and false advertising claims on behalf of others. Further,

absent viable class allegations, plaintiffs have no basis to pursue treble damages under antitrust law on behalf of all D.R. Horton customers across the country.

For these and other reasons detailed below, plaintiffs' class allegations should be stricken from the complaint. Alternatively, the Court should order plaintiffs to provide a more definitive statement of their class claims.

## II.

## PLEADING STANDARDS FOR CLASS ALLEGATIONS

While the issue of class treatment is commonly resolved through a plaintiff's motion for certification, in an appropriate case, courts can and should strike class action allegations at the pleading stage. This authority derives directly from Rule 23, as recent cases confirm:

> Class allegations can, however, be stricken at the pleading stage. Rule 23(d)(4) provides that "the Court may make appropriate orders ... requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent person, and that the action proceed accordingly."

*Kay v. Wells Fargo & Co. N.A.*, 2007 WL 2141292, 2 (N.D. Cal. 2007); *see also, Newell v. State Farm General Ins. Co.*, 118 Cal.App.4th 1094, 1101 (2004) ("trial courts properly and routinely decide[ ] the issue of class certification on demurrer") (quoting *Silva v. Block*, 49 Cal.App.4th 345, 349 (1996)).

Striking class allegations is appropriate where alleged liability clearly depends on facts individual to each class member:

> If the ability of each member of the class to recover clearly depends on a separate set of facts applicable only to him, then all of the policy considerations which justify class actions equally compel the dismissal of such inappropriate actions at the pleading stage.

*Newell*, 118 Cal.App.4th at 1101-1102 (internal citations and quotations omitted). Where the unsuitability of class treatment is apparent from the pleadings, "there is no need to incur the expense of an evidentiary hearing or class-related discovery." *Canon U.S.A., Inc. v. Superior Court*, 68 Cal.App.4th 1, 5 (1998).

There are compelling legal as well as practical reasons why in this case the Court should require plaintiffs to plead facts sufficient to support class claims. Here, the lead causes

of action in the Complaint are claims under the Unfair Competition Law (California Business & Professions Codes §17200, *et seq.*, ("UCL") and False Advertising Law (California Business & Professions Codes §17500, *et seq.*, ("FAL").

Under the Proposition 64 amendments to both statutes, a plaintiff seeking to pursue "representative" claims (i.e., claims on behalf of third parties) must plead and prove the requirements for class certification. Specifically, under Bus. & Prof. Code § 17203 (as amended), a plaintiff asserting representative claims under UCL statute must, among other elements, comply with Code of Civil Procedure section 382, the California class action statute. Proposition 64 imposes the same requirement for FAL claims. Cal. Bus. & Prof. Code § 17535; see also *Gonzalez v. P&G Co.*, 247 F.R.D. 616, 625 (S.D. Cal 2007) (Proposition "amended section 17203 of the UCL and 17535 of the FAL such that a private person "may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of [Section 17204 or Section 17535] and complies with Section 382 of the Code of Civil Procedure [which specifies class action requirements]").[1]

Thus, the failure to plead sufficient facts to warrant class treatment precludes the assertion of UCL or FAL claims on behalf of third parties. As detailed below, plaintiffs have utterly failed to allege facts sufficient to support class certification of these claims.

The same is true with respect to the federal and state antitrust claims asserted in the Complaint. Courts now recognize the practical need for examination of pleading in expensive litigation, such as an antitrust case with nationwide pretensions, to protect defendants against unnecessary expense whenever appropriate. The expense of antitrust discovery, in particular, was the driving factor in the Supreme Court's recent decision abrogating *Conley v. Gibson* and establishing new and higher pleading standards. *Bell Atlantic Corp v. Twombly*, 127 S.Ct.

///

[1] Among other things, Code of Civil Procedure § 382 requires plaintiffs to plead and prove (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. *Sav-on Drugs Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 326. These elements are substantially equivalent to the class certification requirements under Fed.R.Civ.Proc. 23. *See v. Yellow Cab Co.*, 67 Cal.2d 695, 709 (1967).

1955, 167 L.Ed.2 929 (2007). Here, where plaintiffs attempt to allege a nationwide antitrust class action, such concerns of expense and burden apply in spades.

As detailed below, plaintiffs' own allegations establish that alleged liability in this case depends on a separate set of facts necessarily requiring individual proof for each putative class member. Because plaintiffs fail to allege any facts suggesting that the case could be litigated on a class basis, the Court should strike plaintiffs' class allegations.

## III.

## PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO ESTABLISH A PREDOMINATE COMMON QUESTION OF LAW OR FACT

A crucial element for class treatment is the demonstrated existence of one or more common questions of law or fact. Where, as here, the complaint seeks to recover monetary relief on behalf of a putative class, plaintiffs must allege facts demonstrating the asserted common questions ***predominate*** over any individual issues raised by the asserted claims. Fed. R. Civ. Proc. 23(b)(3); *Gonzales v. P&G Co.*, 247 F.R.D. 616, 620, 622 (S.D. Cal. 2007); *Washington Mutual Bank v. Superior Court*, 24 Cal.4th 906, 913 (2001). In practical terms, that means "each member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." *Lockheed Martin Corp. v. Superior Court*, 29 Cal. 4th 1096, 1106-1107 (2003), quoting *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 460 ; *see also Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 435-37 (C.D. Cal. 2007).

Plaintiffs must allege ***facts*** to establish this critical requirement. Conclusory allegations that defendants engaged in a "course of conduct" affecting class members are insufficient. *Caro v. Proctor & Gamble*, 18 Cal.App.4th 644, 667 (1993); *see also Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 1965-66, 167 L.Ed.2 929 (2007) (conclusory allegations insufficient to satisfy pleading standards).

Here, plaintiffs offer little more than conclusory boilerplate on the common question element. Further, the factual allegations provided with respect to the named plaintiffs confirm that no common question of law or fact has been alleged, let alone one that predominates over the myriad individual questions triggered by plaintiffs' claims.

**A. <u>Plaintiffs' "Common Issue" Allegations are Boilerplate Conclusions</u>**

One would search in vain to find allegations of fact in the complaint that, if proved true, would demonstrate the existence of a predominant common question. Paragraph 50(c), which purports to set out the common questions, is no more than a lip service attempt to satisfy this critical requirement. Indeed, upon examination, that paragraph actually undermines plaintiffs' class pretensions.

Subpart (c)(1) of paragraph 50 – in which plaintiffs purport to list the supposedly common questions making class treatment appropriate – alleges that the supposedly "common" question is:

> "Whether Defendants' multifaceted scheme to cheat to compete by coercing members of the Class to accept the mortgage product of Horton Mortgage constituted an unlawful, unfair and/or deceptive business practice."

But whether defendants' conduct was illegal (i.e., whether defendants "cheated") depends entirely on the individual circumstances of each purchase and sale transaction. Plaintiffs describe the alleged misconduct as a "multifaceted scheme." That is an inapt euphemism for five unique sets of facts, each of which must be independently considered because liability will depend in each case on who said what to whom and when. (See discussion, *infra*).

Here, defendants' conduct was illegal only if a sales agent made a particular oral statement to a particular buyer at a particular time and the buyer relied to his or her detriment on that statement. There is no allegation that the purchase agreements are illegal, that the practice of offering discounts was illegal, that the good faith closing cost estimates required by RESPA were uniformly inaccurate, or that any similar facts exist that would permit the court to find liability on a classwide basis without examining each transaction.

Subparagraph (c) 2) and (c) 3) of paragraph 50 merely describe the common remedies plaintiffs hope the court will order. They do not present the type of common questions that

justify class treatment. *See Frieman v. San Rafael Rock Quarry,* 116 Cal.App.4th 29, 36 (2004)(rejecting argument that plaintiffs' desire to pursue UCL claim for disgorgement of profits warranted class treatment; noting that "... [the] desire for a particular remedy is not itself a reason for certification ...").

Subparagraph (c) 4) is a naked conclusion: "Whether Defendants' conduct constituted an illegal tying arrangement in violation of the Sherman Antitrust Act and/or the Cartwright Act." The conclusion adds nothing to the "factual" allegations of subparagraph (c) 1), which as discussed above, does not plead a predominant common question.

**B. <u>The Specific Fact Allegations In the Complaint Confirm That Plaintiffs' Liability Theories Necessarily Trigger A Host of Individual Issues That Dwarf Any Common Questions</u>**

The detailed fact allegations with respect to the named plaintiffs undercut plaintiffs' conclusory assertion that "common questions" exist. Although each plaintiff alleges that he or she somehow ended up being "locked in" to using only DHI Mortgage, each plaintiff relies on a very different set of facts to establish the alleged financial incarceration.

Specifically, two plaintiffs (Khuu and Wilson) allege that oral misrepresentations by sales agents lured them in, but the others don't. Three plaintiffs contend they were offered "illusory discounts," but only one of these (Lorenzo) alleges she was actually misled. Plaintiff Wilson asserts yet a different theory not asserted by any other plaintiff – namely, that defendants refused to cooperate with his chosen lender. Finally, four plaintiffs (but not Wilson) claim defendants "threatened" to cancel their purchase contracts if they refused to use DHI Mortgage for financing. Yet, as explained below, these so-called "threats" could only be actionable (if at all) depending on the timing of when the alleged statements were made, given the schedule set forth in plaintiffs' purchase contracts.

Suffice to say, even as between the named plaintiffs the so-called "common" question of allegedly illegal conduct rests on varying theories of liability and supporting allegations. Multiply these factual differences by the tens of thousands of individual transactions plaintiffs propose to litigate en masse, and it is clear that class treatment and due process are incompatible here. Perhaps most significantly, the unique facts alleged with respect to the

named plaintiffs demonstrate – on the face of plaintiffs' own complaint – that all of plaintiffs' liability theories are not amenable to class-wide proof. In particular:

**1. Closing Cost Misrepresentations**

Two of the five plaintiffs – Khuu and Wilson – predicate liability in whole or part on the allegation that Western Pacific misrepresented the closing costs of a DHI mortgage. Khan alleges that the closing costs were represented to be only $3,000, but turned out to be $7,000. (Complaint, ¶ 42.) Wilson alleges that he was initially told closing costs would be $6,000, but later learned they would be $12,000. (Complaint, ¶ 34.) Khuu alleges that she relied on the incorrect estimate by not seeking another lender, and Wilson claims that he relied by not seeking another lender until it was too late to change lenders. (Complaint, ¶¶ 42, 34.)

A claim based upon misrepresentations may be susceptible to class-wide proof where the allege misrepresentation was made in a writing given to all class members – or, at a minimum, was part of a standardized sales presentation. Plaintiffs, however, do not allege written misrepresentations, and the complaint itself demonstrates that the alleged closing costs misrepresentations were *not* part of any uniform course of conduct. Three of the five plaintiffs – Lorenzo, Khan, and Lopez – do not even allege that closing costs were misrepresented to them. (Complaint, ¶¶ 36, 38, and 40.) The failure of these three plaintiffs to allege any misrepresentation conclusively establishes that alleged closing cost misrepresentations were *not* common to the class. Each class member would have to individually prove that a misrepresentation was made to him or her. So, even if Khuu and Wilson could prove a misrepresentation as to themselves, that would prove nothing as to any other member of the putative class.

As one court has noted, it is "particularly unwise" to permit a class action based on allegedly fraudulent representations. *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 656 (C.D. Cal. 1996). Proving such a claim "requires plaintiffs to show that the misrepresentations to each class member were the same or substantially similar" and thus "would require the Court to hear from every single plaintiff . . . because variations in the defendant's misrepresentations may actually preclude class treatment in certain situations." *Id.* Here, where the complaint

itself demonstrates that the alleged misrepresentations were *not* made to each class, the Court need not await discovery to conclude that the required commonality is missing.

Further, even apart from the lack of commonality as to the existence of misrepresentations, Khuu's and Wilson's closing costs misrepresentation theory raises a host of additional individual issues. That is, even where a misrepresentation could be proven, a plaintiff would also have to prove: (i) the misrepresentation was part of an *intentional plan* to lure them into using DHI Mortgage (rather than a simple mistake or an explainable deviation between an early estimate and the later actual cost), (ii) they *relied* on the misrepresentation and such reliance *caused* them not to search (or not to timely search) for another lender, and (iii) they could in fact have succeeded in finding a loan on better terms if they had searched for another lender.[2]

Plaintiffs have not alleged any facts showing these elements are susceptible to class-wide proof. Quite the contrary. Even if Khuu or Wilson proved that a misrepresentation to them was intentional, that they relied on it, and that it caused them to get a worse deal than they otherwise could have gotten, that would not prove anything as to representations made to John of Oxnard or Jane of Des Moines.

Indeed, the complaint itself again proves the lack of commonality. Specifically, two of the other plaintiffs – Khan and Lopez – admit that they sought out another lender precisely because they thought the quoted costs for DHI mortgage were too high. (Complaint, ¶¶ 38, 40.) That is, they did *not* rely on closing cost representations by failing to seek alternate financing. These admissions illustrate that the reliance component of Khuu's and Wilson's claims are *not* common to all class members.

Accordingly, the closing cost misrepresentation theory of liability cannot be litigated on a class basis. *See Gonzalez v. P&G Co.*, 247 F.R.D. 616, 623 (S.D. Cal. 2007) (denying class certification in a section 17200 case premised on purported misrepresentations to the

[2] Defendants do not concede that Khuu's or Wilson's misrepresentation allegations, even if true, state a tying claim. Rather, as shown in the accompanying motion to dismiss, the allegations could amount, at most, to a claim for common law negligent or intentional misrepresentation.

class members and explaining: "The Court find that there are significant individualized issues related to proof of reliance. . . . Class members may have relied on different representations, while some may not have relied on, or even have been exposed to, any of the allegedly false representations."); *Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 436-37 (C.D. Cal. 2007) (denying class certification in section 17200 case where putative plaintiffs would not necessarily have all relied on the same representations and disclosures: "The Court concludes that Plaintiff's fraud claim requires numerous issues of individual proof. As a result, Plaintiff has failed to establish that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members' as required by Rule 23(b)(3). . . . [T]he Court finds that individual issues predominate the reliance inquiry. Most significantly, Plaintiff has alleged various misrepresentations by Defendant. As a result, different class members may have relied on different representations. Moreover, some class members may not have relied on – or have even been exposed to – any representation. Indeed, this case involves a 'a veritable quagmire of tough factual questions which can only be resolved by individual proof.'").

**2. <u>"Illusory" Discounts</u>**

Three plaintiffs – Lorenzo, Khan and Lopez – predicate liability at least in part on the allegation that Western Pacific offered supposedly "illusory" discounts to entice them to use DHI Mortgage. Again, even assuming any of these three plaintiffs could prove they were offered an illusory discount, they seek to advance an entirely different theory of deception than Khuu or Wilson. Rather than alleging an affirmative misrepresentation of the amount of closing costs, these plaintiffs contend that Western Pacific *concealed* facts from them.

Yet, two of these plaintiffs (Khan and Lopez) admit that they understood from the beginning the "true" facts about the discounts. (Complaint, ¶¶ 38, 40.) Only plaintiff Lorenzo claims to have been misled and sustained harm as a result of the alleged concealment. Specifically, she contends that Western Pacific offered her a $5,000 discount on the closing costs if she used DHI Mortgage – but without informing her that she could get a better deal

///

elsewhere without the discount. She allegedly relied by not seeking out a loan elsewhere. (Complaint, ¶¶ 36.)

Even assuming, for the sake of argument, that Lorenzo could prove all these things, she still would not have proved a classwide claim based on the offering of "illusory" discounts. Again, the proof lies in the complaint itself. Neither Khuu nor Wilson alleges a similar offer, so obviously they cannot recover under an "illusory discount" theory. Further, while Khan and Lopez allege that they were offered closing costs discounts, both of them admit that they were *not* misled and did *not* rely. Rather, both Khan and Lopez admit that they realized that they could get a better deal elsewhere – even with the discount offered on the DHI mortgage – and accordingly did shop around. (Complaint, ¶¶ 38, 40.)

Just as with the affirmative misrepresentation theory, these admissions establish that two essential elements of any "illusory discount" theory of liability – the offer of a discount and reliance on the offer – are *not* common to all class members. So, even if Lorenzo could prove liability as to herself, that would prove nothing as to any other member of the putative class.

Further, even if the Court could somehow magically identify every putative class member who (i) was offered a closing costs discount, and (ii) didn't shop around because he or she thought the closing costs discount was a great deal, that would not extricate the Court from the quagmire. That is because Lorenzo's concealment theory also requires her to prove that (i) Western Pacific had a legal duty, *under the circumstances of her case*, to inform her she could get a better deal elsewhere, (ii) she *in fact* could have gotten a better deal elsewhere, and (iii) the other deal would have been sufficiently better that she would have taken the trouble to pursue it. *See Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 435-36 (C.D. Cal. 2007) (denying class certification where issues of causation and damages would vary from plaintiff to plaintiff). These are "tough factual questions which can only be resolved by individual proof." *Id.* at 436-37.

None of these elements is susceptible to class-wide proof, for several reasons. First, ordinarily there is no duty to disclose, and so a claim grounded in concealment requires proof

of a fiduciary relationship or other special facts giving rise to a duty to disclose. *See, e.g.*, *Goodman v. Kennedy*, 18 Cal.3d 335, 346-47 (1976). Accordingly, Lorenzo needs to prove that there was something special about the *individual* circumstances of her case that required Western Pacific to do Lorenzo's homework for her and advise her where she could get a better deal. Even assuming Lorenzo could prove such an unlikely set of facts, proving those individual facts would prove nothing for any other putative class member.

Second, Lorenzo's theory presumes that she could have obtained a better loan if only she had bothered to look. *St. Paul Fire & Marine Ins. Co. v. American Bank*, 33 F.3d 1159, 1162 (9th Cir. 1994) (misrepresentation that caused insured not to search elsewhere for insurance coverage not actionable absent proof that insured could have obtained coverage elsewhere). Perhaps she could have, but that is hardly subject to class-wide proof. Unlike some products, mortgage loans are not available at uniform commodity prices for all comers. Rather, the terms of a mortgage loan – and the very availability of such a loan – depend heavily on individual credit scores and other underwriting guidelines of individual lenders. So, even assuming Lorenzo could have located a better loan terms than those offered by DHI Mortgage, it hardly follows that every putative class member could have done so. The need to individually prove the availability of a better deal is thus a further reason Lorenzo's concealment theory cannot be proven on a class-wide basis.

Third, because the terms of any alternative loan will vary from person to person, so will materiality. That is, even assuming a particular putative class member could have obtained a better loan elsewhere, "how much better?" is also a necessary question. A $500 price difference on a 30-year, $300,000 mortgage is probably of little consequence to most buyers, but a $5,000 difference may be.

**3. <u>Plaintiff Wilson's "Refusal to Deal" Claim</u>**

Plaintiff Wilson alleges that he tried to obtain a loan from Bank of America but was stymied by some unspecified refusal by Western Pacific to cooperate with Bank of America. (Complaint, ¶ 34.) None of the other plaintiffs make this claim – which is proof in itself that

///

Wilson's theory does not raise common issues. Beyond that, Wilson's theory leads directly to another quagmire of tough factual questions.

First, Wilson must prove that the alleged non-cooperation happened at a time when Western Pacific had a duty to cooperate. As shown in the accompanying motion to dismiss, if the alleged non-cooperation happened after Wilson's lender commitment date, Western Pacific would have been entirely within its rights to refuse to accommodate an eleventh-hour switch to Bank of America. (Motion to Dismiss, Section VI(G).)

Second, even apart from unique issues of timing, the non-cooperation theory will require Wilson to prove specific individual facts such as (i) what, if any, cooperation was requested from Western Pacific, (ii) did Western Pacific have a reasonable opportunity to respond to the request, (iii) what response did Western Pacific in fact provide, (vi) did the response fall short in any legally relevant way, and (v) did the non-cooperation in fact cause Wilson to have to use DHI Mortgage. Proof of these many facts will require individual testimony of the relevant Bank of America employees, the particular Western Pacific employees who allegedly failed to cooperate, and Wilson himself. Any proof resulting from this individual testimony will apply to Wilson only and prove nothing about other putative class members who dealt with other employees at other times in other housing developments.

**4. <u>The "Deposit Forfeiture" Theory</u>**

Four of the five plaintiffs (but not Wilson) allege that – at some unspecified time – somebody at Western Pacific told them that they would forfeit their deposit if they used a lender other than DHI Mortgage. (Complaint, ¶¶ 36, 38, 40, 42.) Again, for numerous reasons, this theory is likewise not susceptible to class-wide proof.

First, the theory depends upon proof of individual *oral* statements about the risk of forfeiting the deposit. Plaintiffs do not allege that any of these alleged statements were in writing, much less in any uniform writing. To the contrary, the purchase contracts themselves – which the Court may judicially notice – expressly gave buyers the right to use

///

///

the lender of their choice.[3] Accordingly, plaintiffs' theory is predicated upon showing that individual sales agents made individual oral representations that a buyer did not have the freedom promised in the contract.

A case premised upon individual oral representations, however, is uniquely ill-suited to class treatment. *See, e.g., Clark v. Watchie,* 513 F.2d 994, 1000 n. 13 (9th Cir. 1975) (observing that "courts have held that oral misrepresentations lead to individual questions because they are not standardized in the same sense as misrepresentations appearing in a prospectus or financial statement"); *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 882 (5th Cir. 1973) (explaining that "courts usually hold that an action based substantially, as here, on oral rather than written misrepresentations cannot be maintained as a class action"). Because plaintiffs need to individually prove whether a given sales agent made an alleged deposit forfeiture statement to an individual buyer, a class cannot be certified.

Second, plaintiffs' theory is further unsuited for class certification because liability depends on *when* the alleged statement was made. As shown by the purchase contracts themselves, the contracts required buyers to secure loan approval by a certain date and tell Western Pacific what lender they planned to use. After that date, the buyers were precluded from changing to a different lender. (*See* Motion to Dismiss at Section VI.)

Accordingly, any buyers who had agreed to proceed with DHI Mortgage as of the lender commitment date in fact *were* contractually-precluded from changing to another lender after that date. That type of voluntary contractual commitment, however, cannot serve as the basis for an antitrust tying claim. *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 440 (3d

[3] *See* Request for Judicial Notice, Exs. C-G at Section 7.2(a) ("Nothing set forth herein shall compel Buyer to accept any financing approved by Seller's Approved Lender that is not acceptable to Buyer."); *see also* RJN Ex. C at p. WILSON000019 ("You are **NOT** required to use [DHI Mortgage] as a condition of your purchase of the Property") and p. WILSON000066 ("Buyer acknowledges . . . that Buyer is not required to use [DHI Mortgage] as a condition of Buyer's purchase of the Property or Buyer's access to settlement services in connection with the purchase of the Property."); Ex. D at p. LORENZO000019 ("You are **NOT** required to use [DHI Mortgage] as a condition of your purchase of the Property"); Ex. E at p. KHAN000005 ("Nothing set forth herein shall compel Buyer to accept any financing approved by [DHI Mortgage] that is not acceptable to Buyer") and p. KHAN000016; Ex. F at p. LOPEZ000005; Ex. G at p. KHUU000005.

Cir. 1997) (enforcement of contractual provision knowingly entered into cannot support a tying claim).

Thus, to prove liability under the deposit forfeiture theory, a buyer would not merely have to show that an individual "DHI only" statement was made to him or her, but would also have to show *when* the statement was made. If made after the lender commitment date, a "DHI only" statement would be both true and legally appropriate.

### C. <u>The Need to Prove Causation and Reliance Individually Also Precludes Class Treatment</u>

"California law previously authorized 'any person acting for the interests of . . . the general public' to sue for relief for unfair competition notwithstanding lack of injury or damages." *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 852 (2008). But Proposition 64 changed that. Now, to have standing, a plaintiff must show that he or she "has suffered injury in fact," and "lost money or property *as a result of* the unfair competition." Bus. & Prof. Code § 17204 (emphasis added). In other words, to maintain a section 17200 (or section 17500) claim a plaintiff must now establish traditional causation and reliance elements. *Hall*, 158 Cal. App. 4th at 855. *See also Laster v. T-Mobile United States, Inc.*, 407 F. Supp. 2d 1181, 1194 (C.D. Cal. 2005); *Cattie v. Wal-Mart Stores,* 504 F. Supp. 2d 939, 947-48 (S.D. Cal. 2007).

These post-Proposition 64 standing requirements are yet another reason why plaintiffs' class action allegations are untenable. *See Gonzalez v. P&G Co.*, 247 F.R.D. 616, 625 (S.D. Cal. 2007). As illustrated by the allegations asserted by each of the named plaintiffs here, establishing the required elements of causation and reliance in this case will necessarily trigger individualized proof as to what statements and proposals were made and whether the particular customer relied on those statements, or not.

## IV.

## <u>NO FACTS ARE ALLEGED TO SUPPORT PLAINTIFFS' DEMAND FOR A NATIONWIDE CLASS</u>

In a brazen attempt to leverage their individual claims and run up attorney fees, plaintiffs seek to prosecute their Sherman Act tying claims on behalf of a purported national

class.[4] Yet, the complaint does not include any plaintiffs outside California. It does not describe any conduct or transactions outside California. Indeed, plaintiffs do not (and cannot) allege that Western Pacific even conducts operations outside California – yet Western Pacific is the only entity to which the complaint attributes any specific conduct. The complaint tacitly admits that D.R. Horton's home building operations outside California are handled by separate subsidiaries other than Western Pacific (Complaint, ¶ 1), yet the complaint makes no attempt even to identify any other subsidiaries (much less to allege facts showing misconduct by such other entities).

The individualized nature of the allegations provided with respect to the named plaintiffs makes clear that no inference of uniform conduct is warranted, particularly on a nationwide basis. If plaintiffs had information to support good faith allegations of wrongful conduct outside of California, they could have and should have alleged it. Plaintiffs should not get a free pass to pursue burdensome nationwide discovery based on the mere hope that they unearth transactions to challenge outside California.

For this additional reason, the Court should strike plaintiffs' nationwide claims alleged at page 1, lines 19-23 and page 16, lines 23-27 of the complaint.

## V.

## ALTERNATIVELY, THE COURT SHOULD REQUIRE PLAINTIFFS TO PROVIDE A MORE DEFINITIVE STATEMENT WITH RESPECT TO THE CLASS ALLEGATIONS

If the Court does not strike the class action allegations, it should at least require a more definite statement. Courts may grant a motion for a more definite statement "if a pleading is 'so vague or ambiguous that the party cannot reasonably prepare a response.'" *Raullerson v. City of El Cajon*, 2008 U.S. Dist. LEXIS 18324 (S.D. Cal. 2008) (granting motion for more definite statement); *see also Four Navy Seals & Jane Doe v. AP*, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) (same).

---

[4] Plaintiffs' counsel Patrick Missud has bragged that he expects this lawsuit to generate a $500 million recovery and that his goal is to bankrupt, or at least financially "financially ruin", D.R. Horton. See RJN at Exhibit H, pgs. 00018, 000022, 000032, 000034, 000038.

Plaintiffs' class allegations are so vague and amorphous that they fail to provide sufficient notice of how plaintiffs purport to meet the necessary elements for pursuing a class action. *Osborne v. County of Riverside*, 385 F. Supp. 2d 1048, 1052 (C.D. Cal. 2005) ("Rule 12(e) motions . . . are appropriate when 'a pleading fails to specify the allegations in a manner that provides sufficient notice' to a defendant."). Therefore, at a minimum, plaintiffs should be required to plead them more definitely.

## VI.

## CONCLUSION

For these reasons, the class action allegations in the Complaint should be stricken and/or dismissed in their entirety. Alternatively, the Court should require plaintiffs to provide a more definite statement with respect to the class claims.

DATED: May 5, 2008

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: s/Valentine S. Hoy
Valentine S. Hoy
Attorneys for Defendants D.R. Horton, Inc., Western Pacific Housing, Inc., and DHI Mortgage Company, Ltd.
E-mail: vhoy@luce.com

101090061.8

Valentine S. Hoy VIII, State Bar No. 121766
John T. Brooks, State Bar No. 167793
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
San Diego, California 92101-3372
Telephone No.: 619.236.1414
Fax No.: 619.232.8311

Attorneys for D.R. Horton, Inc., Western Pacific Housing, Inc., and DHI Mortgage Company, Ltd.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JAMES WILSON, REBECCA LORENZO, WAHEEDA KHAN, JORGE LOPEZ, and SUZIE KHUU, on behalf of themselves and All Others Similarly Situated,

Plaintiffs,

v.

D.R. HORTON, INC., WESTERN PACIFIC HOUSING, INC. d/b/a/ D.R. HORTON, AMERICA'S BUILDER, DHI MORTGAGE COMPANY, LTD., L.P. and DOES 1-10,

Defendants.

Case No. 08 CV 592 BEN RBB

The Hon. Roger T. Benitez
Dept. 3

**PROOF OF SERVICE**

Complaint Filed: March 28, 2008

I, the undersigned, declare as follows:

I am employed with the law firm of Luce, Forward, Hamilton & Scripps LLP, whose address is 600 West Broadway, Suite 2600, San Diego, California 92101-3372. I am over the age of eighteen years, and am not a party to this action.

On May 5, 2008, I served the following:

**ALL DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE CLASS ALLEGATIONS**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION NO. 2: ALL DEFENDANTS' MOTION TO STRIKE CLASS**

**ALLEGATIONS**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Norman B Blumenthal**
  norm@bamlawlj.com, bam@bamlawlj.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

☐ (No manual recipients)

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed at San Diego, California on May 5, 2008.

Tamara Siemers

Tamara Siemers

101092070.1