**BLUMENTHAL & NORDREHAUG**
Norman B. Blumenthal (State Bar #068687)
Kyle R. Nordrehaug (State Bar #205975)
Aparajit Bhowmik (State Bar #248066)
2255 Calle Clara
La Jolla, CA 92037
(858) 551-1223
Fax: (858) 551-1232

**GERARD & ASSOCIATES**
Robert B. Gerard, Esq. (State Bar #96296)
1516 Front St
San Diego, CA 92101
Telephone: (619) 232-2828
Facsimile: (619) 232-4219

**LAW OFFICES OF ROBERT FELLMETH**
Robert Fellmeth, Esq. (State Bar #49897)
5998 Alcala Park
San Diego, CA 92110
Telephone: (619) 260 4806
Facsimile: (619) 260 4753

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES WILSON, REBECCA LORENZO, WAHEEDA KHAN, JORGE LOPEZ, and SUSIE KHUU, on Behalf of Themselves and All Others Similarly Situated<br><br>Plaintiffs<br><br>v.<br><br>D.R. HORTON, INC., WESTERN PACIFIC HOUSING, INC. d/b/a D.R. HORTON, AMERICA'S BUILDER, DHI MORTGAGE COMPANY, LTD., L.P., and DOES 1-10,<br><br>Defendants. | CASE NO. **08 cv 0592 BEN RBB**<br><br>DECLARATION OF WAHEEDA KHAN IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS, STRIKE AND COMPEL ARBITRATION<br><br>Judge: Hon. Roger Benitez<br>Courtroom: 3<br><br>Hearing Date: June 9, 2008<br>Hearing Time: 10:30 a.m. |

I, Waheeda Khan, declare:

1. I have personal knowledge as to the facts stated in this declaration. If called as a witness, I could and would competently testify to the truth of the facts stated in this declaration. I make this declaration in opposition to the motion to compel arbitration, in opposition to the motions to dismiss, and in opposition to the motion to strike.

2. On or about December 11, 2005, I entered into a home purchase agreement to purchase a new home from Western Pacific Housing, Inc., a Delaware Corporation, dba D.R. Horton, America's Builder ("Horton"), located in Horton's "Valverde Villages" community at 10935 Cliffside Drive, in Stockton, California. The sales assistants who assisted me with this purchase were John Costello and Julie Branecki.

3. In or about December of 2005 I paid a $7,500 deposit towards the purchase price of the home. I also paid an upgrade deposit of $4,739. I was offered a $5,000 discount off of the closing costs. Ms. Julie Branecki, at that time, informed me that I would only be eligible for this "discount," if I obtained my home loan from Horton Mortgage. As required by ¶7.2 of my Purchase Agreement with Horton, I was required to and did apply for a home loan with DHI Mortgage, which reads in relevant part as follows:

> (a) Loan Application. Within 5 days after Buyer's Offer, Buyer shall submit a completed application for the New Loan to DHI Mortgage (**"Seller's Approved Lender"**), and a lender selected by Buyer, if any.

4. In or about March or April of 2006, Ms. Anna Pena from Horton Mortgage, informed me that I had been approved to obtain a loan from Horton Mortgage. When Ms. Pena presented me with the terms and conditions of the loan, I was so shocked by the high broker fees, and exorbitant charges that I decided to look for a loan from another lender.

5. With my high credit rating I was sure that I could obtain funding for my home purchase with another lender. Indeed, I was able to obtain a loan from Washington Mutual. Payments under the terms of this loan would have been approximately $1300 per month.

6. When I attempted to fund my home purchase with the loan from Washington Mutual, I was informed by Ms. Julie Branecki from Horton that I would be forfeiting both the $7,500 I paid as a deposit and the $4,739 I paid as an upgrade deposit, and that the sale of the home would be cancelled if I financed the home purchase with any provider other than Horton Mortgage, as set forth in ¶7.5 of the Purchase Agreement.

7. At the time I entered into the home purchase, I had no reason to foresee that I would not be permitted to use a lender of my choice. When I signed the purchase agreement, neither Ms. Julie Branecki nor Mr. John Costello explained to me that, upon being presented with approval to receive a loan from Horton Mortgage, I would be forever barred from seeking a loan with more favorable terms and conditions.

8. My understanding of ¶ 7.5 of my Purchase Agreement, when read with ¶7.2 and Addendum No. 1 thereto, was that ¶7.5 did not apply to a DHI Mortgage loan, as the DHI application did not "compel" me to accept the DHI Loan. This understanding is also supported by the clear language in the Affiliated Business Arrangement Disclosure document, contained in my Purchase Agreement, which discusses Horton's affiliation with DHI Mortgage and states:

> You are **NOT** required to use this company as a condition of your purchase of the Property from **Seller**. There are frequently other settlement service providers available with similar services. You are free to shop around to determine that you are receiving the best services and the best rate for these services.
> (Emphasis in original)

9. This freedom to shop was further reiterated in the Notice of Affiliated Business Arrangement Addendum, also contained in my Purchase Agreement, which also describes the relationship between Horton and Horton Mortgage as follows:

> You are **NOT** required to use these companies as a condition of your purchase of the Property from Seller. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

10. My understanding was that this statement allowed me to shop and compare services. Ms. Branecki, however, told me when I wanted to use Washington Mutual, that upon being told the terms and conditions of the loan offered by Horton Mortgage, I was immediately foreclosed from shopping. The possibility of determining if I am receiving the best rate and lowest fees is nonexistent if I cannot compare the actual rate and fees of the DHI loan to other rates and fees. This statement is inconsistent with the above reference language in the Purchase Agreement. This inconsistency is fostered by the fact that the Affiliated Business Arrangement Addendum contained in my Purchase Agreement states:

> If there is a conflict between the Purchase Agreement and the terms and provisions of this Addendum, the terms and provisions of this Addendum shall control.

11. At the time I was threatened with the forfeiture of my deposits I had paid, the home I was purchasing had not even been built and the estimated date of closing of May of 2006 was not scheduled to occur for at least one more month. As a result, I was shocked that I would not be permitted to fund my home purchase with the loan from Washington Mutual, for which I had already obtained approval and was ready and able to use to fund my home purchase.

12. The loan I felt coerced into obtaining from Horton Mortgage imposes a monthly payment of $1,738.80 with an interest rate at 5.4%. Unfortunately, the interest rate is adjustable and is supposed to adjust on July 1, 2011 to up to 10.4%. As a result, my payment will increase to over $3,000 per month, which is more than my net income. Finally, I never even received the $5,000 discount off the closing costs of this loan as I was promised.

13. The fees, interest rate, and closing costs of the mortgage loan I received from Horton Mortgage are substantially higher than the fees, interest rate, and closing costs offered to me in the loan from Washington Mutual. As a result of being coerced to accept such a loan, I have been financially devastated, I cannot afford the loan payments and I am constantly in fear of losing my home.

14. The Purchase Agreement for the unit was represented to me to be a standard form document, and I was never given any reason to believe that the terms of the arbitration agreement were negotiable. The agreement was presented on a take-it or leave-it basis, and there was no opportunity to negotiate any of the boilerplate terms of the agreement. I did not understand that as a result of the agreement that my rights against D.R. Horton, Inc., Horton or DHI Mortgage Company, LTD., L.P. ("Horton Mortgage") (collectively referred to herein as "Defendants") to enforce statutory remedies and/or California law as a result of their sales conduct were being forfeited through the agreement.

15. In signing the agreement I was not told, nor did I understand that by signing the agreement with the arbitration provision I would be waiving rights to receive attorney's fees as a prevailing party, which are guaranteed by Federal and/or California law. I also did not understand that I would be waiving statutory remedies or other rights provided by California law. I was not informed nor did I understand that I would be forced to pay for the costs of providing, at my sole expense, JAMS and all non-appealing parties with a certified copy of the hearing transcript and JAMS with copies of all documentary evidence and all other tangible evidence received by the arbitrator and that, while Defendants would not be similarly forced to pay for these fees, only Defendants are provided with a mechanism to recoup these fees in the form of an award of costs on appeal.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 22 day of May, 2008 at Stockton, California

Waheeda Khan

Waheeda Khan