**BLUMENTHAL & NORDREHAUG**
Norman B. Blumenthal (State Bar #068687)
Kyle R. Nordrehaug (State Bar #205975)
Aparajit Bhowmik (State Bar #248066)
2255 Calle Clara
La Jolla, CA 92037
(858) 551-1223
Fax: (858) 551-1232

**GERARD & ASSOCIATES**
Robert B. Gerard, Esq. (State Bar #96296)
1516 Front St
San Diego, CA 92101
Telephone: (619) 232-2828
Facsimile: (619) 232-4219

**LAW OFFICES OF ROBERT FELLMETH**
Robert Fellmeth, Esq. (State Bar #49897)
5998 Alcala Park
San Diego, CA 92110
Telephone: (619) 260 4806
Facsimile: (619) 260 4753

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES WILSON, REBECCA LORENZO, WAHEEDA KHAN, JORGE LOPEZ, and SUSIE KHUU, on Behalf of Themselves and All Others Similarly Situated<br><br>Plaintiffs<br><br>v.<br><br>D.R. HORTON, INC., WESTERN PACIFIC HOUSING, INC. d/b/a D.R. HORTON, AMERICA'S BUILDER, DHI MORTGAGE COMPANY, LTD., L.P., and DOES 1-10,<br><br>Defendants. | CASE NO. **08 cv 0592 BEN RBB**<br><br>DECLARATION OF SUSIE KHUU IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS, STRIKE AND COMPEL ARBITRATION<br><br>Judge: Hon. Roger Benitez<br>Courtroom: 3<br><br>Hearing Date: June 9, 2008<br>Hearing Time: 10:30 a.m. |

I, Susie Khuu, declare:

1. I have personal knowledge as to the facts stated in this declaration. If called as a witness, I could and would competently testify to the truth of the facts stated in this declaration. I make this declaration in opposition to the motion to compel arbitration, in opposition to the motions to dismiss, and in opposition to the motion to strike.

2. On or about July 26, 2007, I entered into a home purchase agreement to purchase a new condominium from Western Pacific Housing, Inc., a Delaware Corporation, dba D.R. Horton, America's Builder ("Horton"), located in Horton's "Valverde Villages" community at 3857 30th Street, Unit 207, in San Diego, California.

3. At this time, I paid an $8,000 deposit towards the purchase price of the home. I was also told, at that time, by Ms. Patricia Sugiyam, a Horton sales representatives that I would only have to pay $3,000 in closing costs. As required by ¶7.2 of my Purchase Agreement with Horton, I was required to and did apply for a home loan with DHI Mortgage, which reads in relevant part as follows:

> (a) Loan Application. Within 5 days after Buyer's Offer, Buyer shall submit a completed application for the New Loan to DHI Mortgage, LTD., LP (**"Seller's Approved Lender"**), and a lender selected by Buyer ("Buyer's Lender"), if any.

4. On or about September of 2007, Ms. Cynthia L. Brockway from Horton Mortgage, informed me that I had been approved to obtain a loan from Horton Mortgage. When Ms. Brockway presented me with the terms and conditions of the loan, I was so shocked by the closing costs of $7,000, which were more than double what I was quoted from Ms. Sugiyam, that I considered looking for a loan from another lender.

5. At that time, Ms. Sugiyam informed me that if I attempted to change lenders, fees incurred by Horton Mortgage in approving me for the Horton Mortgage loan would be assessed

against me. Ms. Sugiyam further informed me that my closing date would be delayed, which would cause further fees to be assessed against me and cause my deposit to be forfeited.

6. At the time I entered into the home purchase agreement, I had no reason to foresee that I would not be permitted to use a lender of my choice. When I signed the Purchase Agreement, Ms. Sugiyam did not explain to me that, upon being presented with approval to receive a loan from Horton Mortgage, I would be threatened with additional fees, delay of closing, and forfeiture of my deposit, if I sought out a loan with more favorable terms and conditions.

7. My understanding of ¶ 7.5 of my Purchase Agreement, when read with ¶7.2 and the Notice of Affiliated Business Arrangement Addendum thereto, was that ¶7.5 did not apply to a DHI Mortgage loan, as the DHI application did not "compel" me to accept the DHI Loan. This understanding is also supported by the clear language in the Notice of Affiliated Business Arrangement Addendum, contained in my Purchase Agreement, which discusses Horton's affiliation with DHI Mortgage and states:

> You are **NOT** required to use this company as a condition of your purchase of the Property from **Seller**. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATES FOR THESE SERVICES.
> (Emphasis in original)

8. My understanding was that this statement meant that I was free to shop and compare services. Ms. Sugiyam, however, threatened me with additional fees, delay of closing, and forfeiture of my deposit, if I sought out a loan with more favorable terms and conditions. As a result, I felt immediately foreclosed from shopping. The possibility of determining if I am receiving the best rate and lowest fees is nonexistent if I cannot compare the actual rate and fees of the DHI loan to other rates and fees. This statement is inconsistent with the above mentioned

language in the Purchase Agreement. This inconsistency is fostered by the fact that the Affiliated Business Arrangement Addendum contained in my Purchase Agreement states:

> If there is a conflict between the Purchase Agreement and the terms and provisions of this Addendum, the terms and provisions of this Addendum shall control.

9. The loan I felt coerced into obtaining from Horton Mortgage charged closing costs amounting to approximately $7,000. When I asked Ms. Brockway why the closing costs were more than doubled, she told me that the closing costs could never be as low as $3,000, as initially represented to me by Ms. Sugiyam. When I returned to Horton to confront Ms. Sugiyam about the discrepancy, I was told that the low closing cost of $3,000 was "mistakenly" quoted to me because Horton's computer system was old, needed updates, and because closing costs are "very complicated."

10. The closing costs of the mortgage loan I received from Horton Mortgage are substantially higher than the fees, interest rate, and closing costs than I would have paid if I obtained financing for my home purchase from another lender.

11. The Purchase Agreement for the unit was represented to me in the form of a standard form document, and I was never given any reason to believe that the terms of the arbitration agreement were negotiable. The agreement was presented on a take-it or leave-it basis, and there was no opportunity to negotiate any of the boilerplate terms of the agreement. I did not understand that as a result of the agreement that my rights against D.R. Horton, Inc., Horton or DHI Mortgage Company, LTD., L.P. ("Horton Mortgage") (collectively referred to herein as "Defendants") to enforce statutory remedies and/or California law as a result of their sales conduct were being forfeited through the agreements.

12. In signing the agreement I was not told, nor did I understand that by signing the agreement with the arbitration provision I would be waiving rights to receive attorney's fees as a

prevailing party, which are guaranteed by Federal and/or California law. I also did not understand that I would be waiving statutory remedies or other rights provided by California law. I was not informed nor did I understand that I would be forced to pay for the costs of providing, at my sole expense, JAMS and all non-appealing parties with a certified copy of the hearing transcript and JAMS with copies of all documentary evidence and all other tangible evidence received by the arbitrator and that, while Defendants would not be similarly forced to pay for these fees, only Defendants are provided with a mechanism to recoup these fees in the form of an award of costs on appeal.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct. Executed this 23 day of May, 2008 at SAN DIEGO, CA

Susie Khuu