**BLUMENTHAL & NORDREHAUG**
Norman B. Blumenthal (State Bar #068687)
Kyle R. Nordrehaug (State Bar #205975)
Aparajit Bhowmik (State Bar #248066)
2255 Calle Clara
La Jolla, CA 92037
(858) 551-1223
Fax: (858) 551-1232

**GERARD & ASSOCIATES**
Robert B. Gerard, Esq. (State Bar #96296)
1516 Front St
San Diego, CA 92101
Telephone: (619) 232-2828
Facsimile: (619) 232-4219

**LAW OFFICES OF ROBERT FELLMETH**
Robert Fellmeth, Esq. (State Bar #49897)
5998 Alcala Park
San Diego, CA 92110
Telephone: (619) 260 4806
Facsimile: (619) 260 4753

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES WILSON, REBECCA LORENZO, WAHEEDA KHAN, JORGE LOPEZ, and SUSIE KHUU, on Behalf of Themselves and All Others Similarly Situated<br><br>Plaintiffs<br><br>v.<br><br>D.R. HORTON, INC., WESTERN PACIFIC HOUSING, INC. d/b/a D.R. HORTON, AMERICA'S BUILDER, DHI MORTGAGE COMPANY, LTD., L.P., and DOES 1-10,<br><br>Defendants. | CASE NO. **08 cv 0592 BEN RBB**<br><br>DECLARATION OF JAMES WILSON IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS, STRIKE AND COMPEL ARBITRATION<br><br>Judge: Hon. Roger Benitez<br>Courtroom: 3<br><br>Hearing Date: June 9, 2008<br>Hearing Time: 10:30 a.m. |

I, James Wilson, declare:

1. I have personal knowledge as to the facts stated in this declaration. If called as a witness, I could and would competently testify to the truth of the facts stated in this declaration. I make this declaration in opposition to the motion to compel arbitration, in opposition to the motions to dismiss, and in opposition to the motion to strike.

2. On or about September 29, 2007, I entered into a home purchase agreement to purchase a new condominium from Western Pacific Housing, Inc., a Delaware Corporation, dba D.R. Horton, America's Builder ("Horton"), located in Horton's "La Boheme" community at 3950 Ohio Street, Unit 235, in San Diego, California.

3. On or about September 29, 2007, I attended an auction held by Horton where only registered bidders with $5,000 in cash or a cashier's check would be permitted to attend the sale of new units of the condominiums sold by Horton. I paid the $5,000 bid and was offered the opportunity to purchase a condominium from Horton.

4. At this time, I entered into a Purchase Agreement with Horton and paid an additional $15,000 as a deposit towards the purchase price of the condominium. I was assured that any closing costs charged by Horton would not exceed $4,000 and my monthly payment would be $2,500 or less. I was also told by the sales staff that the interest rate I would receive on a loan from Horton Mortgage would not exceed 6%. Mr. Brad Trembly, who worked for Horton, also informed me that if I used Horton Mortgage and I did not use a real estate agent, I would receive a discount off the purchase price equivalent to 2% of the total purchase price.

5. As required by ¶7.2 of my Purchase Agreement with Horton, I was required to and did apply for a home loan with DHI Mortgage, which reads in relevant part as follows:

> (a) Loan Application. Within 5 days after Buyer's Offer, Buyer shall submit a completed application for the New Loan to DHI Mortgage (**"Seller's Approved Lender"**), and a lender selected by Buyer, if any.

6. Mr. Trembly thereafter visited me in my home on at least three (3) separate occasions. I informed Mr. Trembly, during these visits, that I was interested in obtaining a home loan from Bank of America because I had always experienced a good business relationship with Bank of America. Mr. Trembly insisted that Horton Mortgage was competitive with any mortgage company and that Horton Mortgage would offer me a discount off of the purchase price equivalent to 2% of the total purchase price if I did not use my own real estate agent and used Horton Mortgage. Mr. Trembly repeated these same representations in telephone calls and messages.

7. Although several sales representatives from Horton and Horton Mortgage, including Mr. Trembly, had previously represented that my closing costs would not exceed $4,000, Mr. Trembly later informed me during one of his visits that the closing costs would amount to approximately $12,000. In order to avoid paying these high closing costs, I continued to attempt to obtain financing for my home purchase through Bank of America.

8. At Bank of America, I was offered a fixed interest rate of 5.875% and no closing costs. Despite the best efforts of my representative at Bank of America and myself, Horton would not cooperate with either my representative at Bank of America or with myself. These efforts were made within thirty (30) days of entering into the Purchase Agreement and before the lender commitment date specified in my Purchase Agreement. As a result, I was under a severe time constraint to either obtain alternative financing, commit to DHI Mortgage, or else cancel the purchase.

9. Although I had obtained a commitment from Bank of America, Horton refused to cooperate with Bank of America to finalize the commitment. As a result, I was, therefore, unable to obtain a formal commitment from Bank of America within the time frame specified by Horton.

10. After Horton Mortgage failed to cooperate with Bank of America, I had no choice but to accept the loan from Horton Mortgage in order to close the purchase. I felt that Horton's insistence on placing me with this loan was in conflict with the clear terms of the Affiliated Business Arrangement Addendum document, contained in my Purchase Agreement, which discusses DR Horton's affiliation with DHI Mortgage and states:

> You are **NOT** required to use these companies as a condition of your purchase of the Property from Seller. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

11. My understanding is that this statement meant that I was free to shop and compare services. Mr. Trembly, however, told me when I wanted to continue to use Bank of America, that I was foreclosed from shopping after thirty (30) days of entering into my Purchase Agreement. This statement is completely inconsistent with the above mentioned language in the Purchase Agreement. This inconsistency is fostered by the fact that the Affiliated Business Arrangement Addendum contained in my Purchase Agreement further stated:

> If there is a conflict between the Purchase Agreement and the terms and provisions of this Addendum, the terms and provisions of this Addendum shall control.

12. At closing, Horton Mortgage failed to provide me with the promised 2% discount for financing the home purchase with Horton Mortgage and for not using my own real estate agent. When I asked why I was not receiving the promised 2% discount off of the purchase price, Mr. Trembly replied, "I am just a messenger." When I insisted that I should at least receive the discount for using Horton Mortgage, Mr. Trembly ask me, "Do you want to get this over with or not?"

13. The fees, interest rate, and closing costs of the mortgage loan I actually received from Horton Mortgage are substantially higher than the fees, interest rate, and closing costs that I

expected to receive, based on the representations made to me by Brad Trembly. When I provided my $20,000 down payment, I was assured that my closing costs would not exceed $4,000 and my monthly payment would not exceed $2,500. After Defendants refused to fund my loan with Bank of America, however, Horton raised the closing costs to $14,000 and the monthly payments to $3,100 per month. As a result, the deal that they gave me was quite different from the deal I had agreed to when I put down my payment of $20,000.00. When I tried to refuse this deal, Horton threatened to withhold my $20,000 deposit because thirty ("30") days had elapsed since I entered into the purchase agreement. At that time, had Horton or Horton Mortgage actually disclosed to me that the loan would cost me over $4,000 in fees, with an interest rate of 7%, and with closing costs of over $14,000, I would never have entered into the purchase agreement.

14. The Purchase Agreement for the unit was represented to me to be a standard form document, and I was never given any reason to believe that the terms of the arbitration agreement were negotiable. The agreement was presented on a take-it or leave-it basis, and there was no opportunity to negotiate any of the boilerplate terms of the agreement. I did not understand that as a result of the agreement that my rights against D.R. Horton, Inc., Horton or DHI Mortgage Company, LTD., L.P. ("Horton Mortgage") (collectively referred to herein as "Defendants") to enforce statutory remedies and/or California law as a result of their sales conduct were being forfeited through the agreement.

15. In signing the agreement I was not told, nor did I understand that by signing the agreement with the arbitration provision I would be waiving rights to receive attorney's fees as a prevailing party, which are guaranteed by Federal and/or California law. I also did not understand that I would be waiving statutory remedies or other rights provided by California law. I was not informed nor did I understand that I would be forced to pay for the costs of providing, at my sole expense, JAMS and all non-appealing parties with a certified copy of the hearing

transcript and JAMS with copies of all documentary evidence and all other tangible evidence received by the arbitrator and that, while Defendants would not be similarly forced to pay for these fees, only Defendants are provided with a mechanism to recoup these fees in the form of an award of costs on appeal.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 22 day of May, 2008 at Escondido, CA.

James Wilson

James Wilson