**BLUMENTHAL & NORDREHAUG**
Norman B. Blumenthal (State Bar #068687)
Kyle R. Nordrehaug (State Bar #205975)
Aparajit Bhowmik (State Bar #248066)
2255 Calle Clara
La Jolla, CA 92037
(858) 551-1223
Fax: (858) 551-1232

**GERARD & ASSOCIATES**
Robert B. Gerard, Esq. (State Bar #96296)
1516 Front St
San Diego, CA 92101
Telephone: (619) 232-2828
Facsimile: (619) 232-4219

**LAW OFFICES OF ROBERT FELLMETH**
Robert Fellmeth, Esq. (State Bar #49897)
5998 Alcala Park
San Diego, CA 92110
Telephone: (619) 260 4806
Facsimile: (619) 260 4753

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES WILSON, REBECCA LORENZO, WAHEEDA KHAN, JORGE LOPEZ, and SUSIE KHUU, on Behalf of Themselves and All Others Similarly Situated<br><br>Plaintiffs<br><br>v.<br><br>D.R. HORTON, INC., WESTERN PACIFIC HOUSING, INC. d/b/a D.R. HORTON, AMERICA'S BUILDER, DHI MORTGAGE COMPANY, LTD., L.P., and DOES 1-10,<br><br>Defendants. | CASE NO. **08 cv 0592 BEN RBB**<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [MOTION NO. 3]<br><br>Judge: Hon. Roger Benitez<br>Courtroom: 3<br><br>Hearing Date: June 9, 2008<br>Hearing Time: 10:30 a.m. |

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. LEGAL STANDARD FOR MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV. LAW & ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. A Corporate Subsidiary That Supplies the Tied Product is Not Immune From Antitrust or UCL Liability for an Anti-competitive Tying Scheme . . . . . . 4

B. Liability for Violations of the UCL Extends to Anyone Who Directly Participates in the Acts of Unfair Competition or Aids and Abets in the Commission of Such Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF AUTHORITIES

**Cases:**


American Philatelic Soc. v. Claiborne, 3 Cal.2d 689 (1935) . . . . . . . . . . 2, 5

Brokerage Concepts v. U. S. Healthcare, 1996 U.S. Dist. LEXIS 1159 (E.D. Pa. 1996) . . . . . . . . . . 2, 5

Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661 (9th Cir. 2000) . . . . . . . . . . 1

Desaigoudar v. Meyercord, 223 F.3d 1020 (9th Cir. 2000) . . . . . . . . . . 4

Fortner Enters. v. United States Steel Corp., 394 U.S. 495 (1969) . . . . . . . . . . 4

HealthAmerica Pa. Inc. v. Susquehanna Health System, 143 F. Supp. 2d 496 (M.D. Pa. 2001) . . . . . . . . . . 1, 5

No.84 Employer- Teamster Joint Council Pension Fund v. Am. West Holding Corp., 320 F.3d 920, 938 (9th Cir. 2003) . . . . . . . . . . 4

Nursing Home Pension Fund v. Oracle Corp., 380 F.3d 1226, 1229 (9th Cir. 2004) . . . . . . . . . . 4

People v. Arthur Murray, Inc., 283 Cal. App.2d 333 (1965) . . . . . . . . . . 6

People v. Bestline Products, 61 Cal. App. 3d 879 (1976) . . . . . . . . . . 2, 5, 6

People v. Dell, 232 Cal. App.3d 248 (1991) . . . . . . . . . .

People v. Dollar Rent-A-Car Systems, Inc., 211 Cal.App.3d 119 (1989) . . . . . . . . . . 2. 5

People v. Rubin, 96 Cal. App.3d 968 (1979) . . . . . . . . . . 6

People v. Toomey, 157 Cal.App.3d 1 (1985) . . . . . . . . . . 2, 5, 6

Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F.Supp. 2d 1146 (C.D. Cal. 2002) . . . . . . . . . . 2, 5, 6

Sindell v. Abbott Laboratories, 26 Cal. 3d 588 (1980) . . . . . . . . . . 6

Spiegler v. Home Depot U.S.A., Inc.,
2008 U.S. Dist. LEXIS 33480 (C.D.Cal. April 9, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 5

Williamson v. Gen. Dynamics Corp.,
208 F.3d 1 144 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Statutes, Rules and Regulations:**

California Business & Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**I. <u>INTRODUCTION</u>**

In their third motion to dismiss, Defendants argue that Plaintiffs' claims against Defendant DHI Mortgage Company ("Horton Mortgage") under federal antitrust law and California's Business & Professions Code § 17200 *et seq.* (the "UCL") should be dismissed. This motion ignores the allegations of the complaint that Horton Mortgage is a wholly-owned subsidiary of D.H. Horton Inc. that actively and knowingly participated in the antitrust violations and unlawful, unfair and deceptive business practices alleged in this action.

As Plaintiffs allege in their Complaint, this case arises from an illegal tying scheme whereby purchasers of homes from Horton were coerced into also obtaining a mortgage from Horton as part of the purchase. Horton uses two wholly owned subsidiaries to accomplish this scheme: the Horton homes (the tying product) are sold by Western Pacific Housing, Inc. (dba D.R. Horton America's Builder's) and the mortgages are supplied by Horton Mortgage. Moreover, as the Complaint alleges, with respect to this scheme, each of the Horton Defendants acted as an agent, aider and abettor and alter ego of the other Horton companies.

Defendants argue that Horton Mortgage is immune from antitrust liability because it was the Horton subsidiary that supplied the tied product rather than the tying product. Defendants' inability to cite a single case holding that, where different subsidiaries of the same company are used as the instrumentalities for a tying scheme, the subsidiary that supplied the tied product is immune from antitrust liability is unsurprising, since that is not the law.

Horton Mortgage is the entity that charged Plaintiffs and the other Class Members supracompetitive prices and thereby reaped the profits from Horton's antitrust violations and UCL violations. The antitrust law treats a parent corporation and their subsidiaries as a single entity. A subsidiary that is used by the parent as the instrumentality for the tied product end of a tying scheme and receives the ill-gotten gains from the anticompetitive conduct cannot escape liability simply because the tying product was sold by a sister company. Indeed there are numerous antitrust cases upholding tying claims against different subsidiaries of the same parent that supplied the tied and tying product. *See e.g.* <u>HealthAmerica Pa. Inc. v. Susquehanna Health System</u>, 143 F. Supp. 2d 496,

497 (M.D. Pa. 2001) and Brokerage Concepts v. U. S. Healthcare, 1996 U.S. Dist. LEXIS 1159 *4-*5 (E.D. Pa. 1996).

Defendants' additional argument that Horton Mortgage cannot be liable under the UCL for unlawful, deceptive and unfair business practices is also manifestly incorrect. Since 1935, the law has remained unchanged that liability for violations of the UCL extends to anyone who directly participates in the acts of unfair competition or aids and abets in the commission of such acts. "[I]f the evidence establishes defendant's participation in the unlawful practices, either directly or by aiding and abetting the principal, liability under sections 17200 and 17500 can be imposed." People v. Toomey, 157 Cal.App.3d 1, 15 (1985). Thus, a defendant who participated in the deceptive, unfair or unlawful scheme is liable even if it had no direct relationship or contact with the adversely affected consumers. Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F.Supp. 2d 1146, 1183-7 (C.D. Cal. 2002) People v. Dollar Rent-A-Car Systems, Inc., 211 Cal.App.3d 119, 132 (1989); People v. Bestline Products, 61 Cal. App. 3d 879, 918-19 (1976); American Philatelic Soc. v. Claiborne, 3 Cal.2d 689 (1935).

Accordingly, Plaintiffs respectfully submit that Defendants' third motion to dismiss the claims against Horton Mortgage must also be denied.

## II. STATEMENT OF FACTS

The Complaint alleges that Horton Mortgage participated in a lending scheme that was devised to take advantage of the market of captive D.R. Horton, Inc. home-buyers.
(Complaint at ¶1 [Doc. No. 1].)

> While home loans with far better terms and conditions than the home loans offered by Horton Mortgage were available to the Class Members from Horton Mortgage's competitors, the Defendants were able to coerce each and every Class Member to finance their home purchases through Horton Mortgage through a concerted refusal to deal with Horton Mortgage's competitors and with tied-in market power which allowed Horton to threaten the Class Members with loss of their deposits and home purchase if they did not finance their Horton home purchase through Horton Mortgage. This market power was substantially enhanced by the taking of the deposit before the exercise of Defendants' coercive market power. Given the unique nature of a real property purchase, the market power of Defendants is further enhanced as to this unique market of Horton's home sales and tied-in financing.

(Complaint at ¶9 [Doc. No. 1].)

The anti-competitive and fraudulent scheme of the Defendants perpetrated on the members of the Class is described in detail throughout paragraphs 10 through 15 of the Complaint, and can be summarized as follows:

> In furtherance of their affiliated and consolidated financial relationship, Horton, as part of each purchase agreement, required each consumer seeking a loan for a Horton home purchase to apply to Horton Mortgage for the loan.... Defendants continued to combine their efforts to conceal the true cost of the mortgage product from each customer until such time as each Class Member was locked-in so that switching costs would be prohibitive. The true facts were that there was no true option to use alternative lenders, as any attempt to do business with alternative lenders was met with threats of loss of the home purchase and non-refundable deposit, along with stonewalling alternative lenders.

(Complaint at ¶10 [Doc. No. 1].)

> The Defendants' market power over the home purchasers was so strong that Defendants were able to successfully coerce the Class Members to use Horton Mortgage for their loan with threats of the loss of the deposit and/or other funds paid towards the purchase price of the home for any Class Member that wanted to use an alternate lender. The purpose of these threats by Horton's sales representatives was to cause these home buyers to use Horton Mortgage for their home loan, to the exclusion of the competitive lenders, so as to eliminate all competition. For those Class members who became so dissatisfied with the loan offered by Horton Mortgage before closing, that they were willing to accept the loss of the illusory $5,000-$10,000 "discount" in order to obtain financing from another lender, Horton refused to deal with the alternate lenders and threatened to have the Class Members' deposit forfeited and the sale cancelled if Horton Mortgage was not used for the loan.

(Complaint at ¶11 [Doc. No. 1].)

> The Defendants' concerted refusal to deal with other lenders and Defendants' use of market power over the home sale of this unique product and deposit loss allowed Horton Mortgage to unfairly and illegally capture a substantial percentage of the market for these financial services and deprived the Class members of an even and balanced playing field wherein all financial institutions were permitted the chance to compete fairly and honestly for the Class Members' business.... By virtue of unfairly preying on the locked-in and captive business market, Horton Mortgage was able to manufacture anti-competitive loans with unfairly high closing costs; above market fees and charges; and, higher than average interest rates and/or interest rates that were adjustable, rather than fixed...

(Complaint at ¶12 [Doc. No. 1].)

Finally the Complaint alleges that each Defendant, including Horton Mortgage, was the agent, alter ego and aider and abettor of each of the other Defendants. (Complaint at ¶¶ 17, 18 [Doc. No. 1].)

## III. LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss for failure to state a claim should be denied unless it "appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle him or her to relief."" Nursing Home Pension Fund v. Oracle Corp., 380 F.3d 1226, 1229 (9th Cir. 2004); Williamson v. Gen. Dynamics Corp., 208 F.3d 1 144, 1156 (9th Cir. 2000). In considering a motion to dismiss, the court accepts the plaintiff's allegations as true and construes them in the light most favorable to the plaintiff. Desaigoudar v. Meyercord, 223 F.3d 1020, 1021 (9th Cir. 2000); Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000). The sufficiency of the complaint must be determined considering the allegations in their entirety and viewing all facts in complaint as a whole. See No.84 Employer- Teamster Joint Council Pension Fund v. Am. West Holding Corp., 320 F.3d 920, 938 (9th Cir. 2003).

## IV. LAW & ANALYSIS

### A. A Corporate Subsidiary That Supplies the Tied Product is Not Immune From Antitrust or UCL Liability for an Anti-competitive Tying Scheme

Defendants cite no authority for their assertion that, where a tying scheme involves two subsidiaries of the same parent corporation, the subsidiary that supplies the tied product is immune from liability under the antitrust law and the UCL. Since a tying scheme is by definition a two stage process, the sale of the tied product is an integral part of the unlawful transaction and where, as here a corporate subsidiary is used to sell the tied product and reap the profits from the anticompetitive scheme, the subsidiary is not immune from antitrust liability simply because the coercion was applied by its parent or sister corporation.

The United States Supreme Court recognized that both a parent corporation and its subsidiary could be liable for a tying scheme involving houses and loans in Fortner Enters. v. United States Steel Corp., 394 U.S. 495 , 504-05 (1969). The Supreme Court treated the parent which sold prefabricated houses and the subsidiary which provided loans for those houses as a single entity for the purpose of tying analysis and held that both could be liable for the violation although one sold the tied product and the other the tying product.

In HealthAmerica Pa. Inc. v. Susquehanna Health System, 143 F. Supp. 2d 496, 497 (M.D. Pa. 2001), the district court denied a motion to dismiss a tying claim against Susquehanna Health System and its wholly owned subsidiary Susquehanna Physician Services, where the parent provided the tying service (hospital services) and the subsidiary supplied the tied service (physician services). The District Court held that the tying claim was properly alleged against both defendants. Id. at 500. HealthAmerica belies Defendants argument that a corporate subsidiary that participates in a tying scheme by supplying the tied product and reaping the profits from the concerted anticompetitive conduct of its parent and sister companies cannot be liable for tying conduct. *See also*, Brokerage Concepts v. U. S. Healthcare, 1996 U.S. Dist. LEXIS 1159 *4-*5 (E.D. Pa. 1996) (denying summary judgement in tying claim against numerous corporate affiliates including wholly owned subsidiaries who participated in the tying scheme by supplying the tied product). Therefore, in accordance with applicable case law, a parent and a subsidiary can be held liable for a tying scheme.

**B. Liability for Violations of the UCL Extends to Anyone Who Participates in the Acts of Unfair Competition or Aids and Abets in the Commission of Such Acts.**

"[I]f the evidence establishes defendant's participation in the unlawful practices, either directly or by aiding and abetting the principal, liability under sections 17200 and 17500 can be imposed." People v. Toomey, 157 Cal.App.3d 1, 15 (1985). Thus, a defendant who participated in the deceptive, unfair or unlawful scheme is liable even if it had no direct relationship or contact with the adversely affected consumers. Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F.Supp. 2d 1146, 1183-7 (C.D. Cal. 2002) People v. Dollar Rent-A-Car Systems, Inc., 211 Cal.App.3d 119, 132 (1989); People v. Bestline Products, 61 Cal. App. 3d 879, 918-19 (1976) American Philatelic Soc. v. Claiborne, 3 Cal.2d 689 (1935). Accordingly Defendants argument that Horton Mortgage cannot be liable because the deceptive representations were made by other Horton corporate affiliates cannot succeed.[1]

[1] Defendants reliance on Spiegler v. Home Depot U.S.A., Inc., 2008 U.S. Dist. LEXIS 33480 (C.D.Cal. April 9, 2008) is poorly placed. In Speiegler the complaint failed to allege any violation of any law or legislative policy, failed to allege "a single false or misleading oral or

In American Philatelic, the defendant supplied stamps to unscrupulous stamp dealers who fraudulently sold them to collectors. The California Supreme Court rejected the defendant's argument that it could not be liable under the UCL because all of the fraudulent statements to consumers had been made by the dealer not the defendant. Instead, the Court found the scheme to be actionable under the UCL because the "defendant has thereby obtained an advantage grounded in fraud and deceit and secured a benefit to himself to which he is not in honesty and fair dealing entitled." 3 Cal. 2d at 696. Here although the coercion was applied by different Horton entities, Horton Mortgage knowingly participated in the scheme and thereby secured financial benefits to which it was not lawfully entitled.

Since the decision in American Philatelic, the broad test for liability under the UCL has been consistently applied. See Toomey, 157 Cal. App. 3d 1,15; People v. Dell, 232 Cal. App.3d 248, 253-257 (1991); People v. Bestline Products Inc., 61 Cal. App. 3d 879, 918-19 (1976) People v. Arthur Murray, Inc., 283 Cal. App.2d 333, 340-41 (1965); People v. Rubin, 96 Cal. App.3d 968, 976 (1979); Barnett, 667 F.2d 835, 841; Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F.Supp. 2d 1146, 1183-7 (C.D. Cal. 2002). Further, this standard is also set forth in the Restatement 2d of Torts at §876 ("one is subject to liability if he... (b)knows that the other's conduct constitutes a breach of duty [§308(a)&(b)] and gives substantial assistance or encouragement to the other..."). Sindell v. Abbott Laboratories, 26 Cal. 3d 588, 604 (1980).

In People v. Bestline, the California Court of Appeal held that corporate officers were liable for unfair and deceptive corporate business practices and affirmed the rule that a company that knowingly profits from an unfair business practice is liable even where the conduct is committed by another entity: "The fact that respondent is satisfied to take a small profit, leaving to another the actual fraud, the doubledealing and palming off, is wholly immaterial." 61 Cal. App. 3d at 919 quoting American Philatelic, 3 Cal. 2d at 697.

Accordingly, the Complaint clearly alleges facts sufficient to establish UCL liability against

---

written representation" made by any defendant and failed to allege any conduct that could constitute deceit. *Id.* at *20. Here all three prongs of the UCL are properly alleged.

Horton Mortgage both as a direct participant in the unlawful unfair and deceptive business practices and as an aider and abettor.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that this Court should deny Defendants' motion to dismiss the claims against Horton Mortgage.

BLUMENTHAL & NORDREHAUG

DATED: May 27, 2008

By: *s/Norman B. Blumenthal*
Norman B. Blumenthal, Esq.

Robert Gerard, Esq.
GERARD & ASSOCIATES
1516 Front Street
San Diego, California 92101

Robert Fellmeth
LAW OFFICES OF ROBERT FELLMETH
5998 Alcala Park
San Diego, CA 92110

Attorneys for Plaintiffs